UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

**Docket Number(s):** 17- XXXX    In re Duke _____     _____  Caption [use short title] _____

**Motion for:** EMERGENCY MOTION FOR TEMPORARY IMMEDIATE ADMINISTRATIVE STAY

PENDING THE GOVERNMENT'S FILING OF A PETITION FOR WRIT OF MANDAMUS

_____

Set forth below precise, complete statement of relief sought:

We ask that this Court stay all discovery and related requirements

pending the filing of the government's petition for writ of mandamus

on Monday, October 23, 2017.

_____

_____

_____

**MOVING PARTY:** Defendants (petitioners for writ of mandamus)    **OPPOSING PARTY:** Plaintiffs (Martin Jonathan Batalla Vidal et al.)

☐ Plaintiff        ☑ Defendant

☑ Appellant/Petitioner   ☐ Appellee/Respondent

**MOVING ATTORNEY:** Mark B. Stern _____    **OPPOSING ATTORNEY:** _____ Lourdes Rosado _____

[name of attorney, with firm, address, phone number and e-mail]

U.S. Department of Justice                    Office of the NY State Attorney General

950 Pennsylvania N.W., Washington D.C. 20530        120 Broadway, 23rd Floor, New York, NY 10271

(202) 514-5089; Mark.Stern@usdoj.gov             (212) 416-6438; Lourdes.Rosado@ag.ny.gov

Court- Judge/ Agency appealed from: E.D.N.Y. Honorable Nicholas G. Garaufis, Nos. 16-CV-4756 & 17-CV-5228 (NGG) (JO)

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes  ☐ No (explain): _____
_____

Opposing counsel's position on motion:
☐ Unopposed ☑ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
☑ Yes  ☐ No  ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?         ☑ Yes ☐ No
Has this relief been previously sought in this court?    ☐ Yes ☑ No
Requested return date and explanation of emergency:  9am EST Friday,
October 20, to stay imminent discovery deadlines, including the deposition of an adviser to the
Acting Secretary on Friday, October 20, and the filing of a privilege log, which it is impossible
for the government to complete.
_____

Is oral argument on motion requested?   ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   ☐ Yes ☑ No If yes, enter date: _____

**Signature of Moving Attorney:**

s/ Mark B. Stern _____ **Date:** Oct. 19, 2017 _____ Service by: ☑ CM/ECF  ☐ Other [Attach proof of service]

Form T-1080 (rev.12-13)

# No. 17-_____

**Case Nos. 16-CV-4756 (NGG) (JO) (E.D.N.Y.), 17-CV-5228 (NGG) (JO) (E.D.N.Y.)**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

*In re* ELAINE DUKE, Acting Secretary of Homeland Security; JEFFERSON BEAUREGARD SESSIONS III, Attorney General of the United States, DONALD J. TRUMP, President of the United States; U.S. CITIZENSHIP AND MMIGRATION SERVICES; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; and the UNITED STATES OF AMERICA,

Petitioners.

## PETITION FOR WRIT OF MANDAMUS AND EMERGENCY MOTION
## FOR IMMEDIATE ADMINISTRATIVE STAY

CHAD A. READLER
*Acting Assistant Attorney General*

HASHIM M. MOOPPAN
*Deputy Assistant Attorney General*

MARK B. STERN
ABBY C. WRIGHT
THOMAS PULHAM
*Attorneys, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-2000*

# INTRODUCTION

Pursuant to the All Writs Act, 28 U.S.C. § 1651, and Rule 21 of the Federal Rules of Appellate Procedure, the federal government respectfully asks this Court to issue an immediate administrative stay by 9 a.m. EST this Friday, October 20, 2017, in order to allow time for this Court to consider the full petition for a writ of mandamus that the government intends to file by Monday, October 23.[1] The district court and the Magistrate Judge both issued orders on October 19 that underscore the need for immediate relief.

In this case under the Administrative Procedure Act, plaintiffs challenge the decision of the Acting Secretary of the Department of Homeland Security (DHS) to wind down of the policy known as Deferred Action for Childhood Arrivals (DACA). The district court has not yet received a single page of briefing on dispositive threshold questions or on the merits of plaintiffs' legal arguments. Nevertheless, in addition to extensive discovery, the government is required, under orders issued by the Magistrate Judge, to assemble an "administrative record" that extends far beyond materials considered by the Acting Secretary. In the view of the Magistrate Judge, that record may include deliberative, privileged materials, and the Magistrate Judge has, accordingly, required the government to submit a privilege log. Various orders have

---

[1] The All Writs Act provides authority both for the stay and for the ultimate grant of mandamus relief. We were informed by the Clerk's office that it is necessary to style this document as a mandamus petition because there is no other case-opening document.

set out the parameters of the new record and the due dates for various filings. Add. 40-54. Although the district court narrowed some of the Magistrate Judge's original parameters, *see* Add 51-53, it has not relieved the government of the duty to assemble a sweeping record and an accompanying privilege log.

Although the orders issued today create some uncertainty as to the precise dates, it appears that the government may be required to produce an extensive privilege log on October 20 covering all documents that were considered by the Acting Secretary of DHS or the Attorney General in connection with the decision to wind down DACA and all privileged materials that the "first-tier subordinates" of these officials considered in formulating recommendations with respect to the termination of DACA. *See* Add. 52-53. The magistrate judge has stated previously that the failure to produce a timely privilege log could result in a waiver of privilege. Add. 13.

An immediate stay is required to avoid significant ongoing burden and intrusion into the deliberative processes of the agency decisionmaker. A brief stay to permit consideration of our mandamus petition will result in no comparable harm to plaintiffs. As well discuss at greater length in our petition for a writ of mandamus, the rulings disregard fundamental principles of administrative law and inter-branch comity that warrant this Court's exercise of its mandamus authority.

**THE COURT SHOULD ISSUE AN IMMEDIATE STAY OF
DISCOVERY AND RECORD SUPPLEMENTATION PENDING
CONSIDERATION OF THE GOVERNMENT'S MANDAMUS PETITION**

1. Under the DACA policy, DHS previously determined, as an exercise of prosecutorial discretion, to forbear from seeking removal of a certain category of undocumented aliens.[2] In the decision at issue here, the Acting Secretary decided, in September 2017, that DHS would wind down the DACA policy.[3]

2. The government's mandamus petition will demonstrate that the orders at issue here run afoul of bedrock legal principles. In reviewing the Acting Secretary's decision, "[t]he task of the reviewing court is to apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). The district court has not undertaken that analysis. Instead, it has deferred briefing on the legal issues raised by plaintiffs' challenges and threshold issues to be raised by the government, while permitting depositions of government officials to proceed and permitting the magistrate to impose an onerous and improper privilege log

---

[2] See Memorandum from Janet Napolitano, Secretary, DHS to David Aguilar, Acting Commissioner, U.S. Customs and Border Prot., Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children (June 15, 2012), https://go.usa.gov/xnqY4.

[3] See Memorandum from Elaine C. Duke, Acting Secretary of Homeland Security, to Citizenship & Immigration Servs. Immigration & Customs Enf't, and Customs & Border Prot., Rescission of Deferred Action for Child Arrivals (Sept. 5, 2017), https://go.usa.gov/xnqYQ.

3

requirement without even resolving whether the government has produced a proper administrative record.

The district court's failure to correct the magistrate judge's orders appears to turn on the mistaken premise that the court's role is to review not what the Acting Secretary said in her decision, but what she and her subordinates thought or said during deliberations before the final decision was made. But as the Supreme Court has long made clear, it is "not the function of the court to probe the mental processes" of the agency. *United States v. Morgan*, 304 U.S. 1, 18 (1938); *N.L.R.B. v. County Waste of Ulster, LLC*, 455 Fed. Appx. 32 (2d Cir. 2012).[4]

Before even considering intrusions of this kind, it was incumbent on the district court to address threshold legal issues that might obviate the need to consider the administrative record at all. It will be necessary to determine whether the district court's exercise of jurisdiction over this suit is altogether barred by 8 U.S.C. § 1252(g), which provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to

---

[4] In permitting the magistrate judge to require the government to provide a privilege log of "pre-decisional and deliberative documents," the district court relied on the recent district court decision in *Institute for Fisheries Res. v. Burwell*, No. 16-CV-01574 (VC), 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017). *See* Add. 5 n.5. But the district court in the *Institute of Fisheries* case correctly recognized that its ruling was extraordinary and contrary to D.C. Circuit precedent, and thus stayed its order pending the Ninth Circuit's consideration of the government's petition for a writ of mandamus. *See* No. 16-01574, Dkt. 108 (N.D. Cal); *In re Thomas E. Price*, No. No. 17-71121 (filed Apr. 19, 2017)

commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The Supreme Court held in *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999) (*AADC*), that this provision specifically applies to decisions concerning the denial of deferred action, precisely what the Acting Secretary's decision does. *Id.* at 485; *see also id.* at 485 n.9 (§ 1252(g) was aimed at "attempts to impose judicial constraints upon prosecutorial discretion"). If the district court were somehow to find the specific jurisdictional bar inapplicable, it would need to determine whether the decision to rescind DACA is an unreviewable exercise of prosecutorial discretion.

And even if the district court were to reject these threshold grounds for dismissal, it could not properly determine the adequacy of the administrative record without briefing on the legal issues raised by the plaintiffs that would allow a reasoned determination as to why any additional material is necessary. The rescission and winding down of DACA is an exercise of policy judgment and discretion that does not require or call for the creation of an evidentiary or factual record to begin with, much less permit inclusion in an administrative record of deliberative or other privileged materials.[5]

---

[5] The district court may have believed that departure from this well-settled principle is permissible because plaintiffs have included a claim of discriminatory enforcement. That conclusion would be incorrect, as the Supreme Court's decisions in *United States v. Armstrong*, 517 U.S. 456, 464 (1996), and *AADC* make clear.

3.  The district court's justifications for requiring record supplementation underscore the absence of any basis for permitting supplementation or discovery at this time, and given the immediate burdens and the serious issues that will be presented in the government's petition, an immediate stay by this Court is appropriate. *See* Add. 20 (government's stay motion filed Oct. 18, 2017). As explained in our district court stay motion, the initial searches conducted by DHS components have yielded over 1 million documents from over 100 custodians, and searches at DOJ have, to date, yielded over 90,000 documents from 70 custodians. *Id.* The orders at issue here enormously exacerbate the burden to identify documents and assert privileges, and do so immediately. Moreover, plaintiffs are proceeding with depositions of high-level advisers to the Acting Secretary—including one scheduled for Friday, October 20 at 9:00 a.m. EST—that will almost certainly call for testimony regarding sensitive privileged matters.

This Court commonly grants stays pending disposition of a writ of mandamus, including in cases involving challenges to discovery orders. *See, e.g., In re The City of New York*, 607 F.3d 923, 932 (2d Cir. 2010); *In re Steinhardt Partners, L.*P., 9 F.3d 230, 233 (2d Cir. 1993). The Ninth Circuit recently granted a stay of similarly overbroad discovery in a case where plaintiffs asserted claims that present threshold legal questions that must be answered before such discovery is necessary and appropriate. *See* Order, *In re United States of America*, No. 17-71692 (July 25, 2017) (staying all proceedings in district court), and that court has recognized that one of the issues

6

presented here—the requirement to compile a privilege log in an APA action—warrants mandamus review. *See* Order, *In re Thomas E. Price*, No. 17-71121 (July 27, 2017) (noting that the petition "raises issues that warrant an answer"). The government asks that this Court grant a similar stay here so that the Court can exercise its mandamus jurisdiction to correct the multiple serious errors that underlie the district court's orders and to prevent the harm caused by ongoing discovery. The brief stay required to permit consideration of the government's mandamus petition will result in no comparable harm to plaintiffs.

A temporary immediate administrative stay is necessary to prevent these ongoing intrusions into the functioning of the Executive Branch while this Court considers the government's forthcoming petition for a writ of mandamus. As explained, the government has diligently attempted to obtain relief from the district court, but onerous and improper obligations remain intact. Indeed, in its October 19 order, the district court failed even to provide even the temporary relief the government requested to permit the consideration of the government's forthcoming mandamus petition, necessitating this emergency stay motion.

## CONCLUSION

For the foregoing reasons, this Court should grant an immediate administrative stay by 9 a.m. EST Friday October 20 to permit it to consider the full petition for writ of mandamus to be filed by Monday, October 23.

7

Respectfully submitted,

CHAD A. READLER
   *Acting Assistant Attorney General*

BRIDGET M. ROHDE
   *Acting United States Attorney*

HASHIM M. MOOPPAN
   *Deputy Assistant Attorney General*

MARK B. STERN
ABBY C. WRIGHT
THOMAS PULHAM
   *Attorneys, Appellate Staff*
   *Civil Division*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-2000*

OCTOBER 2017

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the word limit of Federal Rule of Appellate Procedure 21(d)(1) because the motion contains 1,787 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f). I further certify that this motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared using Microsoft Word 2013 in a proportionally spaced typeface, 14-point Garamond font.


s/ Mark B. Stern
MARK B. STERN

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2017, I electronically filed the foregoing with the Clerk of the Court by emailing the petition to newcases@ca2.uscourts.gov. A copy will also be delivered to the district court. Service in compliance with Federal Rule of Appellate Procedure 21(a)(1) will be accomplished by e-mail to the following recipients: 'lourdes.rosado@ag.ny.gov'; 'diane.lucas@ag.ny.gov'; 'abigail.taylor@state.ma.us'; 'Genevieve.Nadeau@MassMail.State.MA.US'; 'ColleenM1@ATG.WA.GOV'; 'MarshaC@ATG.WA.GOV'; 'Jerome Frank Legal Servs. Org.' <BatallaVidal_LSO@mailman.yale.edu>; 'Batalla' <Batalla@nilc.org>; 'Amy Taylor' <amy.taylor@maketheroadny.org>; 'Scott Foletta' <scott.foletta@maketheroadny.org>; 'Alexa Schapira' <Alexia.Schapira@maketheroadny.org>; 'Justin Cox' cox@nilc.org.


                                    s/ Mark B. Stern
                                    MARK B. STERN

# ADDENDUM

# TABLE OF CONTENTS

Dkt. 86............................................................................................................Add. 1

Dkt. 46..........................................................................................................Add. 12

Dkt. 87..........................................................................................................Add. 17

Dkt. 89..........................................................................................................Add. 40

Dkt. 90..........................................................................................................Add. 43

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

MARTIN JONATHAN BATALLA VIDAL et al.,

               Plaintiffs,

     -against-

ELAINE C. DUKE, Acting Secretary, Department of
Homeland Security, et al.,

               Defendants.
-------------------------------------------------------------------------X

STATE OF NEW YORK et al.,

               Plaintiffs,

     -against-

DONALD TRUMP, President of the United States, et al.,

               Defendants.
-------------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**16-CV-4756 (NGG) (JO)**

**MEMORANDUM & ORDER**

**17-CV-5228 (NGG) (JO)**

NICHOLAS G. GARAUFIS, United States District Judge.

On September 27, 2017, Magistrate Judge James Orenstein issued a case management

and scheduling order that authorized and set a schedule for discovery in the above-captioned

actions, which challenge the Government's decision to end the Deferred Action for Childhood

Arrivals ("DACA") program. (Sept. 27, 2017, Case Management and Scheduling Order (the

"Order") (Dkt. 67)[1].) Defendants timely objected, arguing that (1) discovery is inappropriate in

---

[1] Except as otherwise noted, all docket citations refer to the docket in Batalla Vidal v. Duke, No. 16-CV-4756
(E.D.N.Y.), and all record citations refer to the Administrative Record ("A.R.") (Dkt. 77-1). For convenience, the court
refers to the Plaintiffs in Batalla Vidal v. Duke as the "Batalla Vidal Plaintiffs," the Plaintiffs in New York v. Trump, No.
17-CV-5228, as the "State Plaintiffs," and the Department of Homeland Security as "DHS."

this case because the court's review is limited to the administrative record ("A.R.") (Dkt. 77-1);

(2) discovery should be stayed pending resolution of their anticipated motion to dismiss; (3) the

court should vacate Paragraph II(c) of the Order, which requires them to compile a privilege log

with respect to documents withheld from the administrative record on privilege grounds, because

that paragraph is vague, overbroad, and raises separation-of-powers concerns;[2] and (4) they

could not possibly compile a privilege log within nine days, as the Order required. (Defs. Sept.

22, 2017, Ltr. Regarding Discovery ("Defs. Sept. 22 Ltr.") (Dkt. 65); Defs. Sept. 29, 2017, Mot.

to Vacate the Case Management Order ("Defs. Mot.") (Dkt. 69).)

In order to give the court the opportunity to review the administrative record before

ruling on Defendants' remaining objections, and in light of Defendants' protests that they could

not compile the privilege log before it was due, the court ordered the deadline for producing the

privilege log extended by two weeks. (Oct. 3, 2017, Order (Dkt. 72) at 3-4.) The court

otherwise reserved ruling on the motion. (Id. at 4.) After the court issued this order, Defendants

submitted a 256-page administrative record, composed of documents "actually considered by

Elaine C. Duke, the Acting Secretary of Homeland Security, in connection with her September 5,

2017 decision" to rescind the 2012 memorandum that created the DACA program. (Notice of

Filing of A.R. (Dkt. 77), ECF at p.3; A.R.) Plaintiffs have moved Judge Orenstein to compel

---

[2] The disputed paragraph reads in full as follows:

> The privilege log to be produced by October 6, 2017, shall include a description
> of every document considered within any component of the executive branch as
> part of the process of determining the policy and actions at issue in these actions
> that are not being produced and as to which the defendants would assert a claim
> of privilege, regardless of whether the defendants deem such that [sic] record to
> be part of the official administrative record. Failure to describe a pertinent
> document in the privilege log due on October 6, 2017, will waive any later
> assertion of privilege absent a showing of good cause. See Loc. Civ. R. 26.2,
> 26.3.

Order ¶ II(c).

Add. 2

Defendants to complete production of the administrative record. (Oct. 11, 2017, Order (Dkt. 81);

Oct. 13, 2017, Pls. Mot. to Compel Defs. to Produce a Complete A.R. (Dkt. 84).)

## I.    EXTRA-RECORD DISCOVERY

The bulk of Defendants' objections turn at least in part on whether the administrative

record is complete. Defendants argue that the "thrust" of Plaintiffs' suits are challenges to

DHS's decision to end the DACA program, and thus that judicial review of these actions is

limited to the administrative record compiled by the agency, which the court must presume is

complete. See Nat'l Audubon Soc'y v. Hoffman, 132 F.3d 7, 14 (2d Cir. 1997). (Defs. Sept. 22

Ltr. at 1-2; Defs. Reply (Dkt. 80).) This argument is unavailing for two reasons.

First, in addition to asserting claims under the Administrative Procedure Act, 5 U.S.C.

§ 500 et seq., Plaintiffs also assert (among other claims) constitutional and equitable claims

challenging certain collateral decisions affecting DACA beneficiaries. Plaintiffs contend that

Defendants violated the Due Process Clause of the Fifth Amendment by failing to provide

individualized notice to DACA recipients who were eligible to renew their deferred action and

work authorization that they needed to do so prior to October 5, 2017, not just "as soon as

possible."[3] (Second Am. Compl. (Dkt. 60) ¶¶ 103-105, 160-66; Am. Compl. ("State Pls. Am.

Compl.") (New York v. Trump Dkt. 54) ¶¶ 91-99, 274-80.) Those claims do not challenge the

decision to end the DACA program, but instead challenge how Defendants communicated that

decision to DACA beneficiaries. The State Plaintiffs also contend that Defendants violated the

---

[3] The State Plaintiffs also contend that Defendants violated the Due Process Clause by failing to provide individualized notice to DACA recipients who, under Acting Secretary Duke's September 5, 2017, memorandum terminating the DACA program, were ineligible to renew their deferred action and work authorization, that they were ineligible to renew their DACA benefits. (Memorandum from Elaine C. Duke, Acting Sec'y, DHS, to James W. McCament et al., Rescission of the June 15, 2012 Memorandum Entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children" (Sept. 5, 2017) (AR 252); Am. Compl. ("State Pls. Am. Compl.") (New York v. Trump Dkt. 54) ¶¶ 97-99, 276-77.)

3

Fifth Amendment Due Process Clause and principles of equitable estoppel by changing the Government's policy regarding how information derived from DACA applications would be used for immigration-enforcement purposes. (State Pls. Am. Compl. ¶¶ 39-44, 87-90, 240-52.) Those claims, too, do not challenge the decision to end the DACA program itself, but challenge the Government's alleged withdrawal of protections against the use of DACA beneficiaries' personal information to facilitate deportations. So far, Defendants have provided no reason why the court's review of these claims, all of which challenge agency actions other than the decision to end the DACA program, should be limited to an administrative record that documents the decision to end the DACA program and sheds no light on why the Government allegedly made these collateral decisions. Accordingly, the court finds no error in Magistrate Judge Orenstein's decision that discovery should proceed with respect to these claims, and it denies Defendants' motion to permanently stay discovery with respect to those claims.[4]

Second, the general rule that review of agency action is limited to the administrative record compiled by the agency is not absolute. Inquiry outside the administrative record is appropriate in certain circumstances, including when plaintiffs make a "strong showing in support of a claim of bad faith or improper behavior on the part of agency decisionmakers or where the absence of formal administrative findings makes such investigation necessary in order

---

[4] Because the court concludes that discovery is not inappropriate with respect to Plaintiffs' individualized-notice and information-policy claims, it need not decide at this point whether its review of constitutional challenges to agency action is, like its review of challenges under the APA that an agency acted arbitrarily and capriciously, necessarily limited to the administrative record prepared by the agency. See 5 U.S.C. § 706 (permitting review of agency action "contrary to constitutional right" and limiting review to "the whole record or those parts of it cited by a party"). Compare Chiayu Chang v. U.S. Citizenship & Immigration Servs., ___ F. Supp. 3d. ___, 2017 WL 2480749 (D.D.C. 2017) (constitutional challenges to agency action not necessarily exempt from the rule that review of agency action is limited to the administrative record), and Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Service, 58 F.Supp.3d 1191, 1237-41 (D.N.M. Oct. 22, 2014) (same), with Tafas v. Dudas, 530 F. Supp. 2d 786, 802 (E.D. Va. 2008) (noting that "in adjudicating constitutional claims under the APA, courts have permitted plaintiffs to submit evidence that was not part of the administrative record"), and Puerto Rico Pub. Hous. Admin. v. U.S. Dep't of Hous. & Urban Dev., 59 F. Supp. 2d 310, 328 (D.P.R. 1999) (authorizing discovery on constitutional claims brought alongside APA claims). (Batalla Vidal Pls. Sept. 22, 2017, Ltr. Regarding Discovery (Dkt. 66) at 3, 5.)

Add. 4

to determine the reasons for the agency's choice." Nat'l Audubon, 132 F.3d at 14; see also Camp v. Pitts, 411 U.S. 138, 142-43 (1973) (per curiam) (inquiry outside the administrative record appropriate when "there was such failure to explain administrative action as to frustrate effective judicial review"); cf. Am. Wildlands v. Kempthorne, 530 F.3d 991, 1002 (D.C. Cir. 2008) (identifying circumstances in which supplementation of the administrative record is appropriate). Moreover, the presumption that the agency produced the complete administrative record may be rebutted by "clear evidence" that the record omits relevant materials, see Bar MK Ranches v. Yuetter, 994 F.2d 735, 740 (10th Cir. 1993), and does not apply where there is a "strong suggestion that the record before the [c]ourt [is] not complete," in which case limited discovery may be authorized as to the completeness of the administrative record, see Dopico v. Goldschmidt, 687 F.2d 644, 654 (2d Cir. 1982).

Whether the administrative record is complete is clearly relevant to the question of whether discovery relating to Plaintiffs' challenges to the decision to end the DACA program should be stayed. In light of the ongoing dispute before Judge Orenstein as to whether Defendants should be compelled to produce a complete administrative record, the court declines to address in the first instance the question of whether the administrative record is complete. Accordingly, pending Judge Orenstein's resolution of Plaintiffs' motion to compel, the court reserves ruling on whether discovery relating to Plaintiffs' challenges to the decision to end the DACA program should be temporarily or permanently stayed, except as noted above.

## II. THE PRIVILEGE-LOG REQUIREMENT

Relatedly, Defendants also argue that they should not be required to compile a privilege log because privileged documents are not part of the administrative record. (Defs. Mot. at 4-5; Defs. Reply at 2-3.) That contention, too, is premised on the presumption that the agency correctly designated the administrative record. See Nat'l Ass'n of Chain Drug Stores v. U.S.

5

Add. 5

Dep't of Health & Human Servs., 631 F. Supp. 2d 23, 28 (D.D.C. 2009) (rejecting plaintiffs'

argument that defendants should be required to produce a privilege log so that plaintiffs and the

court could test defendants' claims of privilege as inconsistent with the "standard presumption

that the agency properly designated the [a]dministrative [r]ecord" (quoting Amfac Resorts,

L.L.C. v. U.S. Dep't of the Interior, 143 F. Supp. 2d 7, 12 (D.D.C. 2001))); Tafas v. Dudas, 530

F. Supp. 2d 786, 800 (E.D. Va. 2008) ("Once a court has determined that a plaintiff has provided

enough evidence for the court to conclude that the agency has omitted otherwise relevant

material from the administrative record, the agency must explain its decision to do so.").[5]  (Defs.

Mot. at 4-5 (arguing that the requirement that Defendants produce a privilege log "upends the

presumption of regularity that typically applies to the question of whether an administrative

record has been properly compiled").)  If Defendants did not produce a complete administrative

record in the first instance, however, the court does not see why it should presume that they

correctly withheld privileged materials from the record; if the administrative record is

incomplete, Defendants will be required to assert privilege specifically with respect to any such

materials.  See Gill v. Dep't of Justice, No. 14-CV-03120-RS (KAW), 2015 WL 9258075, at *6

(N.D. Cal. Dec. 18, 2015).

Again, the court declines to address this question in the first instance while the dispute

over the completeness of the administrative record is before Judge Orenstein.  The court

therefore also reserves ruling on Defendants' motion to vacate Paragraph II(c) of the Order in its

entirety.

---

[5]  Additionally, the court notes that, although the U.S. District Court for the District of Columbia has held that
agencies do not need to provide a privilege log in Administrative Procedure Act cases because, absent a "strong
showing of bad faith or improper behavior," pre-decisional and deliberative documents are legally immaterial, see,
e.g., Oceana, Inc. v. Pritzker, 217 F. Supp. 3d 310, 318-19 (D.D.C. 2016), not all courts have reached the same
conclusion, see, e.g., Inst. for Fisheries Res. v. Burwell, No. 16-CV-01574 (VC), 2017 WL 89003, at *1 (N.D. Cal.
Jan. 10, 2017).

Add. 6

## III.    THE SCOPE OF THE PRIVILEGE-LOG REQUIREMENT

The court will, however, narrow the scope of Paragraph II(c) of the Order.  The Order requires Defendants to identify and assert privilege with respect to any documents "considered within any component of the executive branch as part of the process of determining the policy and actions at issue in these actions that are not being produced and as to which the defendants would assert a claim of privilege."  (Order ¶ II(c) (emphasis added).)  Defendants raise two objections to the scope of this part of the Order.  First, they argue that, on its face, the Order requires the identification and assertion of privilege with respect to White House communications that are "likely subject to a strong claim of executive privilege," which "raises substantial separation-of-powers concerns."  (Defs. Mot. at 3.)  Second, they argue that, notwithstanding the two-week extension previously granted by the court, compliance with the Order remains impossible "if [the Order is] taken literally."  (Reply at 2.)  Accordingly, Defendants request that, if the court does not vacate Paragraph II(c) of the Order in its entirety, it should at least narrow that paragraph to "apply only to records that were actually considered by the Acting Secretary of Homeland Security as part of her decision to rescind the DACA policy but were omitted from the administrative record because they are privileged."  (Id. at 3.)  The court will limit the privilege-log requirement to DHS and the Department of Justice ("DOJ"), but it sees no reason to narrow that requirement further at this time.

### A.    The Privilege-Log Requirement Only Applies to DHS and the DOJ

The court agrees that, on its face, Paragraph II(c) of the Order raises potential separation-of-powers problems.  As the Supreme Court observed in Cheney v. U.S. District Court for the District of Columbia, 542 U.S. 367 (2004), courts must narrow overly broad and intrusive discovery requests directed at the highest levels of the Executive Branch, lest "vexatious litigation . . . distract [the Executive Branch] from the energetic performance of its constitutional

7

Add. 7

duties." Id. at 382; see id. at 381-85. In Cheney, the Court specifically rejected the D.C.

Circuit's reasoning that mandamus was unwarranted because the defendants could invoke

privilege with respect to specific documents. See id. at 383, 388-89. By requiring the White

House to identify and assert privilege with respect to specific documents or risk waiving

privilege over those documents, Paragraph II(c) of the Order potentially raises constitutional

concerns akin to those at issue in Cheney.

The court need not consider the full scope of these constitutional concerns, or whether

these concerns are offset by the court's need to obtain information necessary to fulfill its own

"constitutional responsibility to resolve cases and controversies within its jurisdiction." Id. at

385. At this point, Plaintiffs only seek materials considered by DHS and DOJ in connection with

the decision to end the DACA program, and argue that the Order's reference to the "executive

branch" need not be read to include other agencies or the White House. (Batalla Vidal Pls. Resp.

in Opp'n to Defs. Mot. to Vacate ("Batalla Vidal Pls. Opp'n") (Dkt. 70), at 2 & n.2; State Pls.

Resp. in Opp'n to Defs. Mot. to Vacate (New York v. Trump Dkt. 49) at 6-8 & n.6.) Indeed, the

Batalla Vidal Plaintiffs specifically suggest, without conceding that the Order is inappropriate as

written, that the reference to "any component of the executive branch" could be replaced with

"the Department of Homeland Security and the Department of Justice." (Batalla Vidal Pls.

Opp'n at 2 n.2.) Because Defendants have raised separation-of-powers objections only with

respect to the discovery of White House documents (Defs. Mot. at 3; Defs. Reply at 3-4), the

court sees no reason why limiting Paragraph II(c) of the Order to require Defendants to compile

a privilege log only with respect to DHS and DOJ documents would not cure any separation-of-

powers problems with the original Order.

The court therefore grants Defendants' motion in part by limiting Paragraph II(c) of the Order to relevant documents considered within DHS or DOJ as part of the process of determining the policy and actions at issue in these cases.

### B. The DOJ Is Not Exempt from the Privilege-Log Requirement

The court rejects Defendants' contention, however, that Paragraph II(c) should be limited to only those materials that Acting Secretary Duke "actually considered . . . as part of her decision to rescind the DACA policy but were omitted from the administrative record because they are privileged."[6] (Defs. Reply at 3.) Defendants argue that DOJ materials pertaining to the decision to rescind the DACA program are irrelevant, because DHS has sole responsibility for ending the program. (Id. at 4.) Indeed, while Defendants acknowledge that DOJ "participated in deliberations regarding the rescission of DACA (most, but not all of which remain privileged)," they aver that it is "nonsensical as a matter of law" to suggest that DOJ was even partially legally responsible for the decision to end the DACA program. (Id.)

Ordinarily, Defendants' argument might have some force. Regardless of which Executive Branch officials played a role in ending the DACA program, Acting Secretary Duke implemented that decision by issuing the memorandum that rescinded the 2012 memorandum that created the DACA program. (Memorandum from Elaine C. Duke, Acting Sec'y, DHS, to James W. McCament et al., Rescission of the June 15, 2012 Memorandum Entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as

---

[6] As an initial matter, it is not clear that Defendants correctly define the scope of the administrative record, which includes, at the very least, all materials that Acting Secretary Duke considered "directly or indirectly," Comprehensive Cmty. Dev. Corp. v. Sebelius, 890 F. Supp. 2d 305, 309 (S.D.N.Y. 2012) (quoting Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps. of Eng'rs, 448 F.Supp.2d 1, 4 (D.D.C. 2006)), including any non-privileged "work and recommendations of subordinates" on which [she] based . . . her decision," Amfac Resorts, 143 F. Supp. 2d at 12. The court will reserve ruling on the adequacy of Defendants' certification of the administrative record, however, pending the resolution of Plaintiffs' motion to compel Defendants to complete the administrative record.

Children" (Sept. 5, 2017) (AR 252).) The problem with Defendants' argument, however, is that

they have repeatedly represented to this court that Attorney General Jeff Sessions and Acting

Secretary Duke jointly decided to rescind the DACA program. As Defendants explained at the

September 14, 2017, status conference, "[t]he Attorney General and DHS both decided that

[DACA] is an unlawful program, and what they decided was—it was a decision based on

litigation risk. . . . So in their judgment, what they decided to do is . . . have a responsible way to

wind this program down . . . ." (Sept. 14, 2017, Hr'g Tr. (Docket Number Pending) 13:17-14:06

(emphasis added).) Likewise, when Judge Orenstein probed Defendants' position that the

DACA program was unconstitutional but that they nonetheless had authority to continue

renewing certain individuals' DACA status, Defendants explained that "the Attorney General

decided that it would be harsh—we'd be in a much different situation if the Attorney General

had decided we need to end this program now" (id. 24:21-24) (emphasis added), later adding that

"[t]hese are decisions that are committed to the executive branch[,] and the Attorney General and

DHS decided that, in the exercise of their discretion, they're going to wind down this program

that had substantial litigation risk" (id. 26:1-6) (emphasis added). Neither the Government's

Motion nor its Reply acknowledge—let alone explain—this apparent reversal in position.

In light of the Defendants' conflicting statements about which agencies were responsible

for ending the DACA program, the court declines, at this point in the proceedings, to narrow

Paragraph II(c) of the Order to only materials considered within DHS.[7]

---

[7] Indeed, it is not clear that, even if DHS were exclusively legally responsible for the decision to end the DACA program, DOJ materials could properly be excluded from the administrative record and associated privilege log. As discussed above, the whole administrative record considers all materials "directly or indirectly" considered by the agency decisionmaker. Because Acting Secretary Duke's stated rationale for rescinding the DACA program relied heavily on Attorney General Sessions's recommendations that she do so, materials on which the Attorney General relied in formulating his recommendation may be properly included in the administrative record on the grounds that Acting Secretary Duke "indirectly" considered them. The court need not decide this question in the first instance and without the benefit of fuller briefing by the parties or reference to specific documents.

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS in part, DENIES in part, and RESERVES

RULING in part on Defendants' motion to vacate the Order (Dkt. 69).

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      October 17, 2017

NICHOLAS G. GARAUFIS
United States District Judge

11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARTÍN JONATHAN BATALLA VIDAL, et al.,      CASE MANAGEMENT
               Plaintiffs,            AND SCHEDULING ORDER
      -against-
ELAINE C. DUKE, et al.,                    16-CV-4756 (NGG) (JO)
               Defendants.
------------------------------------------------------------------X
------------------------------------------------------------------X
STATE OF NEW YORK, et al.,             17-CV-5228 (NGG) (JO)
               Plaintiffs,
      -against-
DONALD TRUMP, et al.,
               Defendants.
------------------------------------------------------------------X

James Orenstein, Magistrate Judge:

       At a conference before the court on September 26, 2017, the court set a briefing schedule
for dispositive motions, and, over the defendants' objection, I ordered discovery to proceed as set
forth below:

I.      <u>DEADLINES AND COURT APPEARANCES</u>

       Joint proposal for schedule of bi-weekly status
       conferences to address outstanding discovery
       disputes due by:                           September 29, 2017

       Deadline for all Rule 26(a)(1) disclosures:       October 4, 2017

       Deadline for defendants' production of
       administrative record and privilege log:       October 6, 2017

       Objections to discovery requests due by:       1 week after service of requests

       Responses to discovery requests due by:       2 weeks after service of requests

       Deposition errata due by:                  1 week after deposition

       Joint status report due by:               1 week before each status conference

       All expert disclosures due by:           November 15, 2017

       All discovery to be completed by:        December 15, 2017

## II.    DISCOVERY

a.    <u>No stays of discovery absent an explicit court order.</u>  Discovery is not automatically stayed by the pendency of a dispositive motion, settlement discussions between the parties, referral to mediation, or an agreement between the parties to suspend discovery.  Any application for a stay of discovery must show good cause why such relief should be granted.

b.    <u>Written discovery.</u>  Unless otherwise agreed to by the parties or so ordered by the court, responses to any request for written discovery pursuant to Rules 33, 34, and 36 of the Federal Rules of Civil Procedure are due no later than 14 days after service of the request.  All such requests and responses must conform to Local Civil Rules 26.3 (uniform definitions in discovery requests), 26.5 (cooperation among counsel in discovery), 26.6 (attorney review of form discovery requests), and 26.7 (discovery requests to be read reasonably).

c.    <u>Privilege</u>. The privilege log to be produced by October 6, 2017, shall include a description of every document considered within any component of the executive branch as part of the process of determining the policy and actions at issue in these actions that are not being produced and as to which the defendants would assert a claim of privilege, regardless of whether the defendants deem such that record to be part of the official administrative record. Failure to describe a pertinent document in the privilege log due on October 6, 2017, will waive any later assertion of privilege absent a showing of good cause. *See* Loc. Civ. R. 26.2, 26.3.

d.    <u>Depositions.</u>  Pursuant to Local Civil Rule 26.5, counsel should cooperate, consistent with their clients' legitimate interests, in scheduling and conducting depositions.

i.    If counsel cannot agree on a schedule for a given deposition, the deponent must appear at the date, time, and place set forth in a notice properly served pursuant to Fed. R. Civ. P. 30 unless excused by the party that served the notice or by the court.

ii.    Counsel are obligated to attempt in good faith to resolve any dispute that arises during a deposition before seeking judicial intervention.

e.    <u>Expert discovery.</u>  Unless specific deadlines for expert discovery are set forth above, the deadline for completing all discovery includes the production of all expert reports, including any rebuttal reports.  The parties must ensure that they have completed underlying fact discovery, and that they have produced initial expert reports, in sufficient time for any rebuttal reports to have been served by the deadline.  Unless otherwise ordered, or unless the parties agree to proceed otherwise, expert depositions may take place at any time before trial.

f.    <u>Discovery disputes.</u>  Parties are obligated to attempt in good faith to resolve discovery disputes before seeking judicial intervention.  Any unresolved dispute must be brought to my attention in sufficient time for the dispute to be resolved and discovery to be completed according to the deadlines set forth above.  Motions to resolve discovery disputes shall be litigated in accordance with my Individual Practice Rules and Local Civil Rules 37.3 and 6.4.  Failure to submit a timely opposition in compliance with applicable rules may result in the motion being granted as unopposed.

g.      _Timeliness of requests._  To be timely, a request for written discovery, deposition notice, or subpoena must be served in sufficient time for the responding party to comply with the request in full before the relevant discovery deadline.  In the event that any such discovery demand is untimely, I may decide not to enforce it.

## III.      REQUIREMENTS FOR STATUS CONFERENCES

a.      No later than seven days before each status conference, the parties are directed to file a joint report on the status of the case, the nature of any pending disputes (including the parties respective arguments on such disputes), and whether discovery is proceeding on schedule.  If there are no pending disputes requiring court intervention, I will entertain a joint application to adjourn or cancel the conference.  If the parties agree to discuss settlement at the status conference, the parties should also submit _ex parte_ statements of their respective settlement positions.

b.      All conferences will be in person unless otherwise ordered.  Any request to conduct a conference by telephone must be made at least 48 hours before the scheduled start of the conference.

c.      All conferences will start on time.  Any attorney who does not arrive on time may be directed to obtain a transcript of the proceeding and provide it to the represented party to avoid prejudice to that party arising from proceedings conducted in its absence.

d.      Counsel for each party must be fully familiar with the case and prepared to discuss the status of discovery, the party's current settlement position, and any unresolved issue in the case.  A party's counsel of record may send substitute counsel only if the latter is fully prepared to discuss all of the matters described above.

e.      If a conference cannot proceed due to counsel's failure to appear on time or unpreparedness to discuss the case, I will reschedule the conference and consider an order requiring the attorney responsible for the delay to reimburse the other participants' costs, including reasonable attorneys' fees.

f.      Only a party's counsel of record, or an attorney personally authorized to appear by the party (and not simply by the party's counsel of record) may appear on behalf of a party. If a law firm has appeared as counsel of record for a party, any attorney actually employed by that law firm may appear. An attorney acting "of counsel" for a party's counsel of record may not appear without the represented party's explicit authorization, as such an attorney has no authority to make binding representation on behalf of any party. _See_ N.Y. Rules of Prof'l Conduct 1.2(c), 22 N.Y.C. R.R. § 1200 (requiring client to give "informed consent" before an attorney may make a limited appearance on the client's behalf).

## IV.      POST-DISCOVERY MATTERS

a.      _Dispositive Motions Deadline._  The deadline for commencing dispositive motions is the date by which the _first_ action must be taken to commence such a motion pursuant to the individual practices of the district judge to whom this case is assigned.  As specified in the individual

practice rules of the assigned district judge (available at www.nyed.uscourts.gov), that action will be either (a) submitting a letter requesting a pre-motion conference, (b) requesting an oral argument date from the district judge, (c) initiating the exchange of statements pursuant to Local Civil Rule 56.1, or (d) filing the notice of motion together with supporting papers.

      b.    <u>Joint Pretrial Order Deadline.</u>  The deadline for submitting a joint pretrial order is the date by which the parties must file a single document that reflects input from all parties and that fully complies with the individual practice requirements of the district judge to whom the case is assigned (not my individual practice requirements, unless the parties have unanimously agreed to refer the case to a magistrate judge for all purposes including the entry of judgment pursuant to 28 U.S.C. § 636(c)).  If one party has completed its portion of the proposed pretrial order but cannot obtain input from an adversary, it must so advise me before the deadline.

      c.    <u>Generally, no extension due to the pendency of summary judgment motions.</u>

      i.    In cases that are assigned to a district judge whose individual practice rules require the submission of a joint pretrial order no later than 60 days after the close of discovery (as do most judges in this district, *see* www.nyed.uscourts.gov), I will <u>not</u> extend this deadline based on the anticipation or pendency of a summary judgment motion absent an order from the assigned district judge.

      ii.    The fact that a party intends to seek summary judgment will not be considered good cause to postpone a discussion of settlement at the pretrial conference or the submission of *ex parte* statements of the parties' respective settlement positions in advance.

V.    <u>EXTENSIONS OF DEADLINES.</u>

      a.    <u>The deadlines in this order will be enforced, and in light of the history and circumstances of these actions will be modified only upon a timely showing of the most compelling and unforeseeable of extraordinary circumstances.</u>  Failure to comply with a deadline may result in the imposition of appropriate sanctions pursuant to Rules 16 and 37 of the Federal Rules of Civil Procedure, including a recommendation of dispositive relief.

      b.    While the parties are encouraged to cooperate with each other in conducting discovery, they must not agree among themselves to any extensions or suspensions of discovery that will render them unable to meet any deadline set forth above; any such agreement requires court approval.  Similarly, an agreement among the parties to discuss settlement will not excuse failure to comply with any deadline set forth above.  Parties wishing to suspend discovery or adjourn a deadline to promote settlement discussions must seek permission from the court.

      c.    A request for an extension of any deadline submitted less than 14 days before that deadline will be considered untimely and will not be granted, absent extraordinary circumstances.

      d.    A request for modification of any deadline in this scheduling order must be in writing, and submitted in accordance with Rule II.A of my individual practice rules.

## VI.     <u>ELECTRONIC FILING AND CONTACT INFORMATION</u>

     a.     <u>Mandatory electronic filing.</u> Pursuant to Administrative Order 2004-08, <u>all documents must be submitted electronically.</u> Except as set forth in my Individual Practice Rules or in an order, any document submitted to chambers by mail or fax will be discarded.

     b.     <u>Attorney appearance and registration.</u> The attorney for each party with primary responsibility for the matter must, as soon as possible and in no event later than the attorney's first appearance in court:

          i.     file a Notice of Appearance on behalf of <u>each</u> represented party; and

          ii.     register to receive electronic notification of every filing in the case via the court's ECF docketing system.

     c.     <u>Current contact information.</u> The attorney representing each party is under a continuing obligation to keep the court apprised of any changes in contact information – including mailing addresses, email addresses, and daytime telephone numbers – by filing the appropriate Notice on ECF.

     d.     <u>Redaction or deletion of personal data identifiers.</u> All public filings on the electronic docket must omit or redact personal data identifiers, pursuant to Fed. R. Civ. P 5.2. Where an otherwise public document must include such information, the filing party must file a redacted version on the public docket and an unredacted version under seal.

     SO ORDERED:

Dated: Brooklyn, New York
       September 27, 2017

                          _____/s/_____
                          JAMES ORENSTEIN
                          U.S. Magistrate Judge



**U.S. Department of Justice**
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530

October 18, 2017

**By ECF and Fax**
The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

     Re:  *Batalla Vidal, et al., v. Baran, et al.*, 16-cv-4756 (NGG) (JO)
          *State of New York, et al., v. Donald Trump, et al.*, 17-cv-5228 (NGG) (JO)

Dear Judge Garaufis:

     Yesterday, the Court issued a Memorandum & Order ("Oct. 17 Order"), *Vidal* ECF No. 86, which granted in part, denied in part, and reserved a ruling in part on Defendants' September 29, 2017 letter motion ("Defs.' Mot."), *Vidal* ECF No. 69, seeking relief from Magistrate Judge Orenstein's September 27, 2017 case-management and scheduling order, *Vidal* ECF No. 67. The October 17th Order was the Court's second order in response to Defendants' September 29th letter motion. *See* Oct. 3, 2017 Memorandum & Order, *Vidal* ECF No. 72. That order reserved decision on Defendants' arguments that neither extra-record discovery nor an administrative-record privilege log should be required because the administrative record that Defendants produced is complete, but the order did not stay the discovery or the privilege log requirements that will be due before this Court rules on whether the administrative record is complete. In short, the order formally reserved decision on Defendants' arguments while failing to protect Defendants in the interim.

     Defendants thus respectfully request that the Court either stay all discovery and privilege log requirements until it rules on whether the administrative record is complete, or else make clear that it is rejecting Defendants' arguments. In the absence of the requested stay, Defendants have been authorized by the Solicitor General of the United States to file a petition for a writ of mandamus with the U.S. Court of Appeals for the Second Circuit, and Defendants intend to seek immediate relief from the Second Circuit after 2 p.m. on Thursday in furtherance of mandamus review. In the event that this Court rejects Defendants' requested stay, Defendants respectfully request, in accordance with Federal Rule of Appellate Procedure 8(a)(1), that this Court grant a stay of discovery and privilege-log requirements pending the filing and disposition of their mandamus petition in the Second Circuit or, if that request is denied, that this Court grant an administrative stay pending the Second Circuit's disposition of a stay motion to be presented to that Court under Rule 8(a)(2). Defendants are also filing today a motion seeking a stay pending mandamus review of an order issued in another DACA-rescission matter in the Northern District of California, in which the Solicitor General has also authorized the filing of a mandamus petition

concerning the proper scope of an administrative record and discovery and the consideration of privileged documents as part of judicial review of agency action.[1]

Defendants also respectfully notify the Court that full compliance with the Court's order to produce a broad privilege log along with the administrative record—even after the Court's narrowing of Magistrate Judge Orenstein's original order to that effect—remains impossible to comply with in the time allotted, and so Defendants respectfully request that that order be stayed for that reason as well.[2]

## I. Defendants Respectfully Request Relief From All Pending Discovery And Privilege-Log Obligations Raised In Defendants' September 29, 2017 Letter Motion.

In Defendants' September 29, 2017 letter motion, in addition to requesting vacatur of Paragraph II(c) of Magistrate Judge Orenstein's case-management order (which had required the production of a broad privilege log along with the administrative record), Defendants also made several more general arguments, requesting that any further discovery in this matter be stayed permanently, or at least until the Court had an opportunity to resolve the forthcoming dispositive motions. *See* Defs.' Mot. § II(d); Defs.' Reply Ltr. § III, *Vidal* ECF No. 80. But other than the decision to narrow Paragraph II(c) of Magistrate Judge Orenstein's case-management order, the Court's order of yesterday—in substance, even if not in form—will have the practical effect of denying Defendants the remainder of the relief requested in the September 29, 2017 letter motion.

The Court has explicitly denied a small portion of Defendants' requested relief from discovery. *See* Oct. 17 Order at 4 ("[T]he court finds no error in Magistrate Judge Orenstein's decision that discovery should proceed with respect to [certain of Plaintiffs'] claims."). As for (at least) the claims that Plaintiffs style as arising under the Administrative Procedure Act ("APA"), the Court formally reserved decision on the question of whether discovery should continue.

Unfortunately, however, by reserving decision on the bulk of Defendants' argument, the Court has effectively (if not formally) denied the relief requested by Defendants. As Magistrate Judge Orenstein made clear at a status conference last week, discovery will proceed in this matter unless and until this Court issues an order to the contrary. *See* Oct. 11, 2017 Tr. at 30:8-21 ("THE COURT: You understand that discovery is proceeding now and will continue to proceed unless otherwise ordered by Judge Garaufis on claims other than just the APA claims; you understand that, correct? MR. PEZZI: Understood, your Honor."). And, in fact, over Defendants' continued objection, discovery has been proceeding apace: Defendants have already served hundreds of pages of written discovery objections and responses, have begun rolling production of extra-record

---

[1] A district court in the Northern District of California recently granted a stay of the compilation of the administrative record pending mandamus review under similar circumstances. In that case the district court held that deliberative materials should be included in the administrative record and should be recorded in a privilege log. *See* Order Granting Motion to Compel Completion of the Administrative Record, *Institute for Fisheries Resources v. Burwell*, No. 16-cv-1574 (N.D. Cal., January 10, 2017). The district court recognized, however, that a stay was appropriate pending review of the government's mandamus petition. *See* Order Granting Motion To Stay, *Institute for Fisheries Resources v. Price*, No. 16-cv-1574 (N.D. Cal., May 3, 2017).

[2] Before filing this letter motion, undersigned counsel for Defendants contacted counsel for Plaintiffs, who reported that Plaintiffs do not consent to the relief requested by Defendants.

documents in response to broad requests for production, and have responded to dozens of interrogatories and requests for admission. Defendants have already offered their witnesses for hours of deposition testimony, including depositions today, and other depositions currently scheduled to proceed this week and next. These obligations will only multiply in the coming days and weeks. And that is all separate and apart from the obligation, discussed in more detail *infra*, Section II, to produce a DOJ-specific privilege log along with the administrative record, *see* Oct. 17 Order at 9-10, notwithstanding the fact that the Court's order appears to reserve decision on the question of whether DOJ is obligated to produce any separate administrative record at all, *see id.* at 10 n.7.

Respectfully, the Court's ruling has placed Defendants in an untenable position—it forecloses any realistic chance of success on these arguments in district court, but without the certainty of a final order to that effect. Defendants, of course, would still welcome a ruling that permanently or temporarily stayed any further discovery or obligation to produce an administrative-record privilege log (by DHS or DOJ) in this matter. Short of that, however, if this Court is inclined to disagree with Defendants' broader arguments on the proper scope of judicial review and the propriety of any discovery in this matter (let alone discovery before resolution of the parties' dispositive motions), or any privilege log to go along with the administrative record, Defendants respectfully request that the Court promptly enter an order to that effect.

## II.     Full Compliance With The Court's October 17 Order Remains Impossible.

Separate and apart from Defendants' request for a stay of Defendants' general objections to discovery and the privilege-log requirement, the Court's October 17th Order imposes an impossible burden on Defendants with respect to the privilege-log requirement even as narrowed. Although Defendants appreciate this Court's decision to narrow the Magistrate Judge's original order requiring the creation of an Executive-Branch-wide privilege log, this Court's order now requires, by Friday, the production of a privilege log identifying all "relevant documents considered within DHS or DOJ as part of the process of determining the policy and actions at issue in these cases." Oct. 17 Order at 9. Defendants submit that full compliance with the text of the Court's October 17 order remains impossible, and therefore respectfully submit that as an additional reason for that order to be stayed—not for Defendants to continue working toward completion of an effectively impossible task—but to allow a meaningful opportunity for Defendants to pursue mandamus relief on an expedited basis, as part of the same petition discussed above with respect to the need for discovery generally and the proper scope of judicial review.

As Defendants have explained in their prior filings to this Court, it would be impossible to comply with the Court's order to produce a privilege log of the sort contemplated by the Court by this Friday, October 20. Although the Court specifically acknowledged this argument, Oct. 17 Order at 7, it did not directly address the issue, instead narrowing the Magistrate Judge's order only to the extent necessary to avoid constitutional concerns and consistent with Plaintiffs' concessions, *id.* at 8. But that narrowing (to exclude the White House, and to explicitly apply the privilege-log requirement only to DHS and DOJ) did not sufficiently reduce the burden on Defendants, and full compliance within the time allotted remains impossible.

The scope of the privilege log contemplated by this Court's order—covering all "relevant documents considered within DHS or DOJ as part of the process of determining the policy and

actions at issue in these cases," Oct. 17 Order at 9, without requiring any nexus to the Acting Secretary of Homeland Security or other senior officials at DHS or DOJ—overlaps substantially with the discovery sought by Plaintiffs, which Defendants have made extraordinary efforts to respond to on an expedited basis.  As explained in the attached declarations, the searches at DHS alone—including of U.S. Customs and Immigration Services ("USCIS"), Immigration and Customs Enforcement ("ICE"), and U.S. Customs and Border Protection ("CBP")—have collected more than 1.2 million documents from more than 100 different custodians.  *See* Palmer Decl. (DHS) ¶ 5; McCament Decl. (USCIS) ¶ 5; Milani Decl. (ICE) ¶ 5; Chellappa Decl. (CBP) ¶ 3-4. That collection effort alone has taken hundreds of man-hours.  *See* Palmer Decl. (DHS) ¶ 6; McCament Decl. (USCIS) ¶ 5; Milani Decl. (ICE) ¶ 6; Chellappa Decl. (CBP) ¶ 5.  Review for responsiveness and privilege is underway, but will require hundreds of hours more to complete. DHS and its components have diverted significant resources from other mission priorities to attempt to meet these demands in good faith.  As just one example, ICE has devoted "1 out of every 14 attorneys in [its] legal offices across the country" to handle discovery obligations in lawsuits challenging DACA's rescission, pulling them from immigration court appearances and other duties.  Milani Decl. (ICE) ¶ 7; *see also* Palmer Decl. (DHS) ¶ 6; McCament Decl. (USCIS) ¶ 6; Chellappa Decl. (CBP) ¶ 5.

The Court's decision to require a privilege log that also includes DOJ documents will necessarily compound these burdens.  The searches conducted within DOJ have collected more than 90,000 documents from approximately 70 custodians. Stanton Decl. ¶ 3.  These efforts, to date, have already required more than 500 hours of attorney and non-attorney time, and DOJ has been forced to reassign both attorney and non-attorney staff from other matters to assist with the discovery burdens imposed in this and the related DACA-rescission matters.  *Id.* ¶ 4.  And these burdens on DOJ are particularly disproportionate, given the likelihood that the overwhelming majority of these documents will be fully privileged.  Such a requirement is also particularly inappropriate where, as here, the Court has not yet decided whether a separate administrative record from DOJ is necessary at all.

In addition, the October 17th Order also remains overbroad, and lacks sufficient clarity. The phrase "as part of the process of determining the policy and actions at issue in these cases" remains potentially massive in its reach, and is challenging to limit with any clarity.  Precise numbers are impossible to estimate at this point, but Defendants' expectation is that the universe of documents that are at least potentially "relevant" to those "polic[ies]" and "actions"—and thus will require careful review for both responsiveness and privilege—numbers at least in the hundreds of thousands.  And that is all setting aside the tedious and labor-intensive process of compiling an accurate privilege log that complies with this Court's local rules.

Defendants and their counsel have been working around the clock, in good faith, to overcome these massive burdens to the best of their ability, and will continue in those efforts until (and beyond) Friday.  Absent the full stay of the privilege-log requirement requested in Part I above, Defendants intend to produce on Friday, at a minimum, a privilege log identifying all privileged documents that were actually considered by the Acting Secretary of Homeland Security as part of her decision to rescind the DACA policy (a document Defendants have already created and produced, over Defendants' objection, for the Northern District of California DACA-rescission matters).  In addition, Defendants are working diligently to prepare a similar privilege log identifying privileged documents that were actually considered by the Attorney General of the

United States as part of his decision to send a September 4, 2017 letter to the Acting Secretary regarding DACA.  *See* Administrative Record at AR 251, *Vidal* ECF No. 77-1.  If it can be completed in time, Defendants intend to produce that Attorney-General-specific privilege log on Friday.  Beyond that, Defendants and their counsel will continue working diligently, in good faith, to meet this deadline to the best of their ability.

*      *      *

Defendants thank the Court for the prompt attention it has already shown in addressing Defendants' prior filings in these matters, and for its consideration of the issues raised in this letter.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

BRIDGET M. ROHDE
Acting United States Attorney

BRETT A. SHUMATE
Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Director, Federal Programs Branch

JOHN R. TYLER
Assistant Branch Director

BRAD P. ROSENBERG
Senior Trial Counsel

*/s/ Stephen M. Pezzi*
STEPHEN M. PEZZI (D.C. Bar #995500)
KATE BAILEY
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel.:  (202) 305-8576
Fax:  (202) 616-8470
Email:  stephen.pezzi@usdoj.gov

JOSEPH A. MARUTOLLO
Assistant U.S. Attorney
United States Attorney's Office
Eastern District of New York

271-A Cadman Plaza East, 7th Floor
Brooklyn, NY 11201
Tel: (718) 254-6288
Fax: (718) 254-7489
Email: joseph.marutollo@usdoj.gov

*Counsel for Defendants*

CC:

The Honorable James Orenstein (by ECF)
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

All Counsel of Record (by ECF)

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| REGENTS OF UNIVERSITY OF CALIFORNIA and JANET NAPOLITANO, in her official capacity as President of the University of California,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY and ELAINE DUKE, in her official capacity as Acting Secretary of the Department of Homeland Security,<br><br>Defendants. | Hon. William Alsup<br><br>Case No. 17-cv-05211-WHA |

## DECLARATION OF DAVID J. PALMER

I, David J. Palmer, do hereby declare and state:

1.      I am the Chief of Staff for the Office of the General Counsel in the United States Department of Homeland Security.  In this capacity, I supervise attorneys and other professional staff who are coordinating efforts at DHS Headquarters to respond to court orders and discovery requests in this case and other related actions.  I make the following statements based on my personal knowledge and upon information furnished to me in the course of my official duties.

2.      I am aware of the Court Order dated October 10, 2017, Dkt. No. 67, Order Shortening Time for Briefing Motion to Complete the Administrative Record.

3.      I have reviewed the Plaintiff's Motion to Complete the Administrative Record (*Regents of University of Cal. v. U.S. Dep't of Homeland Security*), Case No. 17-cv-5211, Dkt.

No. 65) ("Motion") and their interpretation of the "administrative record," on pages 9 and 10 of Plaintiffs' motion.

    4.     If DHS Headquarters were required to search, review, and compile documents based on Plaintiffs' interpretation of the contents of the proposed administrative record as defined in their Motion, DHS Headquarters would not have been able to search, collect, review, or provide the documents by October 6, 2017, nor would it be able to do so by October 12, 2017, due to the level of effort necessary and the complexity of the undertaking.

    5.  In response to the discovery requests served in the various DACA cases pending here and in the Eastern District of New York, DHS Headquarters is in the process of searching, collecting, reviewing and analyzing documents from more than 30 custodians which includes a collection of at least 30,118 documents from DHS Headquarters custodians alone, and likely far more given potential DHS Headquarters equities in documents that may be in the possession, custody or control of its component agencies. Similar burdens would likely be incurred to locate the materials Plaintiffs assert should be part of the administrative record.

    6.  We have dedicated a significant number of staff and hours to the efforts. For example, to date we have already expended more than 150 hours on compiling documents for potential discovery in the various DACA cases. We would experience impacts to agency functions and mission, as resources and personnel would have to be reassigned and diverted to address compiling the administrative record pursuant to Plaintiff's interpretation. For example, we have already diverted staff from normal operational duties such as preventative maintenance of information technology systems and resolving customer issues. Litigation attorneys recruited to review and analyze documents in this action and other related actions also have full dockets of other litigation matters with pending briefing and discovery deadlines. All full time employees

Add. 24

on the DHS Headquarters litigation team have been assigned to review documents in the various DACA cases and there is no prospect of reassigning or rebalancing their work in other cases. In order to accomplish the review and analysis of documents, DHS Headquarters has also diverted attorney resources from five other legal practice areas.

7.     Even with these diverted resources, given the careful review that must be conducted, the volume of the records, and prevalence of privilege issues, the agency would require substantial time and a significant expenditure of resources to identify and assess properly documents within the Plaintiffs' definition of administrative record.

8.     The agency, however, is taking extraordinary steps to devote the resources necessary to accelerate the total time needed to respond to pending discovery. Given the number and complexity of documents at issue, the multiple layers of review required, and the difficulty of the issues presented, the agency's best, good faith analysis is that the agency would not have been able to search, collect, review, or provide the documents by October 6, 2017 nor by October 12, 2017 that would fit Plaintiffs' definition of an administrative record.


I declare that to the best of my current knowledge the foregoing is true and correct. Executed on this 12 day of October 2017.

DAVID J. PALMER

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| REGENTS OF UNIVERSITY OF CALIFORNIA and JANET NAPOLITANO, in her official capacity as President of the University of California, | |
| | Hon. William Alsup |
| Plaintiffs, | |
| | Case No. 17-cv-05211-WHA |
| v. | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY and ELAINE DUKE, in her official capacity as Acting Secretary of the Department of Homeland Security, | |
| Defendants. | |

## DECLARATION OF JAMES W. McCAMENT

I, James W. McCament, do hereby declare and state:

1.      I am the Deputy Director of U.S. Citizenship and Immigration Services.  I make the following statements based on my personal knowledge and upon information furnished to me in the course of my official duties.

2.      I am aware of the Court Order dated October 10, 2017, Dkt. No. 67, Order Shortening Time for Briefing Motion to Complete the Administrative Record.

3.      I have reviewed the Plaintiff's Motion to Complete the Administrative Record (*Regents of University of Cal. v. U.S. Dep't of Homeland Security*, Case No. 17-cv-5211, Dkt. No. 65) ("Motion") and their interpretation of the "administrative record," on pages 9 and 10 of Plaintiffs' motion.

4.    If we were required to search, review, and compile documents in our agency based on Plaintiffs' interpretation of the contents of the administrative record as defined in their Motion, our agency would not have been able to search, collect, review, or provide the documents by October 6, 2017 nor by October 13, 2017 due to the level of effort and complexity of the undertaking.

5.    In response to the discovery requests served in the various DACA cases pending here and in the Eastern District of New York, USCIS is in the process of searching, collecting, reviewing and analyzing documents from more than approximately 70 custodians, including more than 260,000 emails in addition to documents from approximately 30 shared drives or hard drives. We have dedicated significant staff and hours to the efforts and thus have diverted staff from meeting critical agency goals. For example, to date, I understand that we have already expended more than an estimated 290 hours on identifying and coordinating with custodians, and searching and compiling documents for potential discovery in this and related matters. Similar burdens would likely be incurred to locate the materials Plaintiffs assert should be part of the administrative record.

6.    We would experience impacts to agency function and mission as resources and personnel would have to be reassigned and diverted to address compiling Plaintiff's interpretation of the administrative record. For example, as part of the ongoing efforts to respond to discovery requests in the various pending DACA cases, the Office of Information Technology (OIT) team has made responding to discovery requests in the various pending DACA cases its exclusive focus to meet the Court deadline. As a result, OIT postponed several other jobs, including three projects and two investigations that have been put on hold to support this and related case matters. The U.S. Citizenship and Immigration Services Office of the Chief

2

Counsel had to shift personnel to respond to discovery requests and the majority of assigned Counsels time is dedicated to discovery, whereas in their normal course of business, they would have been providing legal guidance on a wide array of issues. Finally, various reporting requirements and requests have had to be delayed so that resources could be reallocated to the discovery in this case and related case matters.

7. Even with these diverted resources, given the careful review that must be conducted and the volume of the records at issue, the agency would require substantial time and a significant expenditure of resources to find documents within the Plaintiffs' definition of administrative record.

9. The agency, however, is taking extraordinary steps to devote the resources necessary to accelerate the total time needed to respond to pending discovery. Given the number and complexity of documents at issue, the multiple layers of review required, and the difficulty of the issues thereby presented, the agency's best, good faith analysis is that the agency would not have been able to search, collect, review, or provide the documents by October 6, 2017 nor by October 13, 2017 that would fit Plaintiffs' definition of administrative record.

I declare that to the best of my current knowledge the foregoing is true and correct. Executed on this _12_ day of October 2017.

James W. McCament

3

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| REGENTS OF UNIVERSITY OF CALIFORNIA and JANET NAPOLITANO, in her official capacity as President of the University of California, | |
| | Hon. William Alsup |
| Plaintiffs, | |
| v. | Case No. 17-cv-05211-WHA |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY and ELAINE DUKE, in her official capacity as Acting Secretary of the Department of Homeland Security, | |
| Defendants. | |

### DECLARATION OF RAYMOND MILANI

I, Raymond Milani, do hereby declare and state:

1.     I am an Associate Legal Advisor with the Office of the Principal Legal Advisor (OPLA), U.S. Immigration and Customs Enforcement (ICE), U.S. Department of Homeland Security (DHS).  OPLA is charged by statute with representing the agency in civil immigration proceedings before the nation's immigration courts and with providing specialized legal advice to agency personnel.  6 U.S.C. § 252(c).  I make the following statements based on my personal knowledge and upon information furnished to me in the course of my official duties.

2.     In my position, I assist OPLA's legal divisions during the entire eDiscovery lifecycle, to include the distribution and monitoring of preservation notices, coordinating with ICE's Office of the Chief Information Officer (OCIO) to collect electronically stored data in a defensible manner, process, analyze, and search electronically stored information, set up

documents for review and redaction, and produce reviewed documents in a format and manner agreed to by opposing counsel/parties and in compliance with the Federal Rules of Civil Procedure. I am also involved in all aspects of the acquisition process for eDiscovery software and supporting systems (market research, statement of work, proposal evaluations, contract awards); responsible for the administration and configuration of eDiscovery software; am a liaison to OCIO on all issues related to eDiscovery and the support and maintenance of the application; and a point of contact assisting other DHS components with their eDiscovery implementation and acquisition. I have performed these functions since February 2008.

3. I am aware of the Court Order dated October 10, 2017, Dkt. No. 67, Order Shortening Time for Briefing Motion to Complete the Administrative Record.

4. I have reviewed Plaintiffs' Motion to Complete the Administrative Record (*Regents of University of Cal. v. U.S. Dep't of Homeland Security*), Case No. 17-cv-5211, Dkt. No. 65) ("Motion") and their interpretation of the "administrative record," on pages 9 and 10 of Plaintiffs' motion.

5. In the course of responding to discovery requests in this and related litigation initiated against the federal government related to Deferred Action for Childhood Arrivals (DACA), ICE is in the process of searching, collecting, reviewing, and analyzing documents from 26 custodians, including more than 872,000 documents.

6. For context, in less than five days, ICE has already expended more than 220 hours on compiling documents for potential discovery in this and related DACA litigation. Similar burdens would likely be incurred to locate the materials Plaintiffs assert should be part of the administrative record.

7.    Consequently, an effort to satisfy Plaintiffs' "administrative record" interpretation would impose severe impacts upon agency function and mission, with resources and personnel reassigned and diverted to address compiling Plaintiff's interpretation of the administrative record. For example, ICE has delayed and put at risk other case deadlines in an effort to respond to discovery requests in the various pending DACA matters. Work on those non-DACA matters had to be halted to address discovery in this and related matters. ICE has pulled agency counsel and personnel from immigration court appearance responsibilities and other regular duties, essentially, having to devote 1 out of every 14 attorneys in ICE's legal offices across the country to handle the discovery in this and related DACA lawsuits filed against the federal government. And, even with such diverted resources, which are currently focused on general discovery obligations arising incident to such litigation, the careful review required to comb through the volume of records at issue and identify those that specifically satisfy Plaintiffs' "administrative record" interpretation would likely require substantial additional time.

8.    Based on my experience, the efforts ICE has undertaken to respond to this and related DACA litigation is completely unprecedented, in terms of devotion of resources necessary to accelerate discovery production efforts. In responding to DACA-related discovery, ICE began its collection late Wednesday, October 4, and all potentially responsive records were assembled for processing by Friday morning, October 6. ICE's OCIO assigned 2 Active Directory Exchange (ADEX) personnel to work on the collection of documents from 26 custodians. ICE personnel spent a combined total of 220 hours on the project from early Wednesday evening, October 4, until late Monday afternoon, October 9. These efforts included substantial overnight and (holiday) weekend work. This size of this data pull was approximately 872,000 documents and 196 GB of data.

9.      The agency has also devoted 82 individuals, the vast majority of whom are attorneys, to review the data collected to date. The discovery responses alone have impacted ICE's mission. One example is the delay in document review in another important district court class action suit.  ICE placed that entire discovery project on hold for more than three business days to accommodate the DACA litigation discovery effort.


I declare that to the best of my current knowledge the foregoing is true and correct.  Executed on this 12th day of October 2017.

Raymond Milani

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| REGENTS OF UNIVERSITY OF CALIFORNIA and JANET NAPOLITANO, in her official capacity as President of the University of California,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY and ELAINE DUKE, in her official capacity as Acting Secretary of the Department of Homeland Security,<br><br>Defendants. | Hon. William Alsup<br><br>Case No. 17-cv-05211-WHA |

## DECLARATION OF VIJAI CHELLAPPA

I, Vijai Chellappa, do hereby declare and state:

1.      I am an E-Discovery Digital Forensic Analyst with U.S. Customs and Border

Protection (CBP), E-Discovery Team, Security Operations, Cyber Security Directorate, Office of

Information Technology (OIT).  I have 15 years of experience in the Information Technology

field, and I have worked for CBP, OIT since 2009.  I have been an E-Discovery Digital Forensic

Analyst since 2011.

2.      I am aware of the Court Order dated October 10, 2017, Dkt. No. 67, Order

Shortening Time for Briefing Motion to Complete the Administrative Record. I make the

following statements based on my personal knowledge and upon information furnished to me in

the course of my official duties.

3.      In CBP's efforts to respond to discovery requests in this and related cases, I have

assisted in the ongoing process of searching, collecting, reviewing, and analyzing documents

based on searches of more than 70 GB of data (90,219 electronic files) acquired from searches of 12 network drives and approximately 29 workstations.

4.      Additionally, I developed and executed the search of CBP's e-mail mailbox journal servers which consisting of approximately 200 TB of data from CBP e-mail mailboxes to locate potentially responsive e-mail messages.

5.      CBP, OIT has dedicated significant hours and all of the E-Discovery computer search resources to accelerate the total time needed to respond to pending discovery.  To date, I have already expended approximately 48 hours in this effort, to include the searches, data transfers, and refining process for potential discovery material in this and related matters. Additionally, the Agency has experienced impacts to agency function and mission, as all E-Discovery computer server resources were reassigned and diverted to address the search for documents responsive to current discovery requests in the various pending DACA cases. Specifically, all of our work for other cases and court deadlines was put on hold to perform discovery tasks in this and related matters in order to expend the entire resource of E-Discovery's computer server in response to production of this discovery request.  As a result, the agency is already more than a week behind in other litigation obligations and has also fallen behind on an ongoing critical surveillance operation.

6.      Similar burdens would likely be incurred to immediately locate any additional materials that I understand Plaintiffs assert should be part of the administrative record.

I declare that to the best of my current knowledge the foregoing is true and correct. Executed on this 12<u>th</u> day of October 2017.

_____
Vijai Chellappa

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTÍN JONATHAN BATALLA VIDAL, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ELAINE C. DUKE, Acting Secretary, Department of Homeland Security, *et al.*,<br><br>Defendants. | Case No. 16-cv-4756 (NGG) (JO)<br><br>(Garaufis, J.)<br>(Orenstein, M.J.) |
| STATE OF NEW YORK, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, President of the United States, *etal.*,<br><br>Defendants. | Case No. 17-cv-5228 (NGG) (JO)<br><br>(Garaufis, J.)<br>(Orenstein, M.J.) |

## DECLARATION OF ALLISON C. STANTON

I, Allison C. Stanton, do hereby declare and state:

1.        I am the Director of E-Discovery, FOIA, and Records in the Office of the Assistant Attorney General, Civil Division, Department of Justice ("Department"). I joined the Department in October 2010. In this capacity, I am assisting in coordinating efforts at the Department to respond to court orders and discovery requests in this case and other related actions. Throughout my fifteen-year career I have supervised response efforts for numerous high-profile and complicated discovery matters. I have broad experience assessing discovery resources needs and plans for both private organizations and governmental agencies. I make the

following statements based on my personal knowledge and upon information furnished to me in the course of my official duties.

2.      I am aware of the Order entered in this case on October 17, 2017 ("Order"), in which the Court ordered the Department to produce by October 20 a privilege log identifying all "relevant documents considered within DHS or DOJ as part of the process of determining the policy and actions at issue in these cases." Oct. 17 Order at 9. I explain herein the volume and complexity of the documents collected within the Department to date in response to discovery requests served in this and related matters at issue as I currently understand them. Given the task at hand, meeting the October 20, 2017 deadline presents a practical impossibility.

3.      The steps necessary to collect the materials the Court has ordered to be located, reviewed, and logged by October 20 are similar to those we have undertaken to respond to the discovery requests in this and related cases. To date, we have had to search, collect, review, and analyze documents from more than 70 custodians at the Department. These efforts are ongoing. More than 90,000 documents need to be analyzed for potential responsiveness to discovery and privilege in this and related litigation. We are already devoting significant staff and hours to the efforts. For example, to date we have already expended more than 500 hours on compiling documents for potential discovery in this and related matters. The review, analysis, and privilege logging efforts cannot be completed by October 20, despite the Department's best efforts, because of the complexity of the review and privilege assertion process as well as the volume of documents to be reviewed.

4.      The Department has already pulled counsel and personnel from other duties to handle the discovery due to its breadth and extremely expedited response timeline. Across the

2

Department, attorneys, information technology, litigation support, and other professional staff
were reassigned to work on discovery in this case and the related matters.

5.        Even with these diverted resources, careful review must be conducted given the
information and the volume of the records at issue. The Department would require substantial
time and a significant expenditure of resources to analyze and log the documents specified in the
Court's October 17th Order.

6.        Given the identities of the potential custodians and the breadth of discovery,
analyzing more than 90,000 documents for not only potential responsiveness but attorney client
privilege, attorney work product protection, deliberative process privilege, law enforcement
privilege, and other governmental privileges will require considered analysis. For example, each
reviewer assigned to this task must learn the context and background of the documents in order
to accurately determine the documents' deliberative nature and the deliberative process or
processes to which individual documents potentially relate. The Department's review may also
require consultation, as appropriate, with other Executive Branch entities that have equities,
knowledge, or expertise in the underlying information to assist in determining privilege.

7.        The Department, however, is taking many steps to devote the resources necessary
to accelerate the total time needed to review the documents at issue and comply with the Court's
Order to the best of its ability. In light of the Department's understanding that this Court has
asked for the review and privilege log to be completed in an expedited fashion, we are moving
the complicated and detailed process ordered by the Court faster than normally possible.
However, due to the number and complexity of documents at issue, the multiple layers of review
required, and the difficulty of the issues thereby presented, the Department would not be able to
complete production by the Court's October 20, 2017 deadline.

3

I declare that to the best of my current knowledge the foregoing is true and correct.

Executed on this 18 day of October 2017.

Allison C. Stanton

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MARTÍN JONATHAN BATALLA VIDAL, et al.          MEMORANDUM
                                Plaintiffs,                          AND ORDER
                - against -
ELAINE C. DUKE, et al.,                                      16-CV-4756 (NGG) (JO)
                                Defendants.
---------------------------------------------------------------X
---------------------------------------------------------------X
STATE OF NEW YORK, et al.                                    17-CV-5228 (NGG) (JO)
                                Plaintiffs,
                - against -
DONALD TRUMP, et al.,
                                Defendants.
---------------------------------------------------------------X

James Orenstein, Magistrate Judge:

In a letter motion filed on October 13, 2017, the plaintiffs seek to compel the defendants to complete their production of the administrative record. *See* Docket Entry ("DE") 84 ("Motion").[1] The defendants submitted a letter opposing the motion on October 16, 2017. DE 85 ("Opp."). On October 17, 2017, the Honorable William Alsup, United States District Judge, granted a similar motion in a series of parallel cases pending in the Northern District of California. *See Regents of the University of California, et al. v. United States Department of Homeland Security, et al.*, 17-CV-5235 (WHA) ("*Regents*"), DE 79 (Order re Motion to Complete Administrative Record) (N.D. Cal. Oct. 17, 2017) ("*Regents* Opinion"). As briefly explained below, and for essentially the same reasons as those set forth in Judge Alsup's opinion, I grant the motion to compel.

I assume the reader's familiarity with the proceedings in this case, as well as with Judge Alsup's opinion in *Regents*. In short, the plaintiffs contend that the defendants have applied the wrong legal standard to define the contours of the administrative record; that the record before the

---

[1] Unless otherwise noted, citations to docket entry numbers refer to the docket in *Batalla Vidal*.

Add. 40

court suffices to rebut the presumption of regularity normally afforded the government in reviewing

an administrative decision, thereby warranting an order to complete the record over the defendants'

protestation of completeness; and that the defendants improperly conflate distinct legal standards in

opposing an order to complete the record rather than to supplement it. Motion at 2-6. The

defendants do not quibble with the plaintiffs' unassailable identification of the legal standard for

defining the record, but contend that the unquestionably different formulation that they used in

compiling the record is its functional equivalent; that they have adhered to that standard, and that

notwithstanding the explicit request for relief to the contrary, the plaintiffs are actually seeking

discovery beyond the record, rather than merely all of what is properly within it. In each instance,

the facts before the court and applicable law plainly support the plaintiffs' arguments and refute

those proffered by the defendants.

The parties now agree that the administrative record includes all information "*directly or*

*indirectly* considered by the final decision makers in making their decision." Motion at 2 (citing, *inter*

*alia*, *Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 308 (S.D.N.Y. 2012) (internal

citations omitted) (emphasis in original), Opp. at 2 (quoting Motion at 2). That standard goes well

beyond the specific documents that Acting Secretary Duke personally reviewed before issuing the

memorandum that formally effected the administrative decision at issue in this litigation. To the

contrary, it also encompasses all documents and materials that were before the decision makers'

agencies and the non-privileged work and recommendations' of the decision makers' subordinates.

*See, e.g.*, *Regents* Opinion at 3; *Bar MK Ranches v. Yuetter*, 994 F.2d 735 (10th Cir. 1993); *Amfac Resorts,*

*L.L.C. v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001).[2]

---

[2] I refer to "decision makers" in the plural, rather than to Acting Secretary Duke alone, because as
the Honorable Nicholas G. Garaufis, United States District Judge, observed in his Memorandum
and Order dated October 17, 2017, DE 86, the defendants "have repeatedly represented to this

The plaintiffs, like their counterparts in *Regents* (where the defendants produced the same materials as the purported administrative record), have adequately established that the administrative record produced to date is manifestly incomplete. *See generally Regents* Opinion at 5-8. I concur with Judge Alsup's conclusion that the defendants have "excluded highly relevant materials from the administrative record[.]" *Id.* at 7. Even if Acting Secretary Duke can properly be considered the sole relevant decision maker, "[i]t is evident that [she] considered information directly, or indirectly, through the advice of other agencies and others within her own agency." *Id.* at 8; *see also* DE 86 (Judge Garaufis's Memorandum and Order) at 10.

Accordingly, for the reasons set forth above, I grant the motion to compel and respectfully direct the defendants to complete production of the administrative record by 3:00 p.m., Eastern Daylight Time, on October 27, 2017.

SO ORDERED.

Dated:  Brooklyn, New York
        October 19, 2017

_____/s/_____
James Orenstein
U.S. Magistrate Judge

court that Attorney General Jeff Sessions and Acting Secretary Duke jointly decided to rescind the DACA program." *See* DE 86 at 10 (citing examples). Moreover, as Judge Alsup pointed out in *Regents*, the White House has issued official statements that "repeatedly emphasized the President's direct role in decisions concerning DACA." *Regents* Opinion at 6 (citing examples). In addition, the President himself has taken time away from his official duties to make public statements about the decision at issue here in which he unambiguously characterized himself as the decision maker. *See, e.g.*, Donald J. Trump, status update dated September 5, 2017 (the same day as the administrative decision challenged here) ("Congress now has 6 months to legalize DACA …. If they can't, *I will revisit this issue!*"), https://twitter.com/realDonaldTrump/status/905788459301908480 (emphasis added).

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MARTIN JONATHAN BATALLA VIDAL et al.,

               Plaintiffs,

      -against-

ELAINE C. DUKE, Acting Secretary, Department of
Homeland Security, et al.,

               Defendants.
------------------------------------------------------------------X

STATE OF NEW YORK et al.,

               Plaintiffs,

      -against-

DONALD TRUMP, President of the United States, et al.,

               Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**16-CV-4756 (NGG) (JO)**

**MEMORANDUM & ORDER**

**17-CV-5228 (NGG) (JO)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Before the court is Defendants' renewed motion to stay discovery and the requirement

that it compile a privilege log with respect to documents omitted from the administrative record

in the above-captioned actions, which challenge various aspects of the Government's decision to

end the Deferred Action for Childhood Arrivals ("DACA") program. (Defs. Oct. 18, 2017,

Motion to Stay ("Defs. Oct. 18 Stay Mot.") (Dkt. 87) at 1.[1]) For the reasons described below, the

court GRANTS in part and DENIES it in part Defendants' October 18 Stay Motion.

---

[1] Except as noted, all docket citations refer to the docket in <u>Batalla Vidal v. Duke</u>, No. 16-CV-4756 (E.D.N.Y.).
For convenience, the court refers to the Plaintiffs in <u>Batalla Vidal v. Duke</u> as the "<u>Batalla Vidal</u> Plaintiffs," the

1

## I.    BACKGROUND

Following the Government's well-publicized September 5, 2017, decision to end the DACA program, Plaintiffs filed these suits, which challenge that decision and certain other decisions made by Defendants in connection therewith.[2]  The court anticipates providing a fuller description of that program, along with the actions taken by Defendants to end it, in a later order. For now, the court provides only a brief summary of the procedural history of the case, to the extent it is relevant to Defendants' October 18 Stay Motion.

On September 22, 2017, Magistrate Judge James Orenstein entered a case management and scheduling order, which authorized discovery to proceed over Defendants' objections and set a schedule for discovery.  (Sept. 22, 2017, Case Management and Scheduling Order (the "Case Management Order") (Dkt. 67).)  As part of that schedule, the Case Management Order required Defendants, by October 6, 2017, to produce both an administrative record and a privilege log identifying and asserting privilege with respect to documents "considered within any component of the executive branch as part of the process of determining the policy and actions at issue in these actions that are not being produced and as to which the defendants would assert a claim of privilege, regardless of whether the defendants deem such . . . record to be part of the official administrative record."  (Case Management Order ¶ II(c) (the "Privilege-Log Requirement").)

Defendants promptly objected to the Case Management Order.  (Defs. Sept. 29, 2017, Mot. to Vacate ("Defs. Sept. 29 Mot.") (Dkt. 69).)  In doing so, Defendants reprised their

---

Plaintiffs in New York v. Trump, No. 17-CV-5228 (E.D.N.Y.) as the "State Plaintiffs," the U.S. Department of Homeland Security as "DHS," and the U.S. Department of Justice as "DOJ."

[2]  Technically, the State Plaintiffs filed suit after the Government initiated the rescission of the DACA program (Compl. (New York v. Trump Dkt. 1), while the Batalla Vidal Plaintiffs amended their existing complaint, which had previously challenged the nationwide injunction issued by Judge Andrew Hanen of the U.S. District Court for the Southern District of Texas, see Texas v. United States, 86 F. Supp. 3d 591 (S.D. Tex. 2015), to instead challenge the decision to end the DACA program and the means by which Defendants communicated that decision to DACA recipients (Compl. (Dkt. 1); Am. Compl. (Dkt. 29); Second Am. Compl. (Dkt. 60)).

2

previous objections to discovery in these cases (Defs. Sept. 22, 2017, Ltr. Regarding Discovery ("Defs. Sept. 22 Ltr.") (Dkt. 65); Defs. Sept. 29 Mot. at 1) and specifically objected to the Privilege-Log Requirement, which they argued (1) raised "substantial separation-of-powers concerns," to the extent it applied to White House communications; (2) was vague and overbroad, and required the logging of documents outside the scope of the administrative record; (3) and could not possibly be compiled before the deadline set by the Case Management Order. (Defs. Sept. 29 Mot. at 1-5.) Defendants also argued that these cases should be dismissed because their actions are not subject to judicial review. (Id. at 5-6.)

In response to these concerns, the court issued two orders modifying the Case Management Order. The first order, recognizing that the propriety of the Privilege-Log Requirement might depend in part on the adequacy of the administrative record, extended the deadline for complying with that requirement by two weeks, to October 20, 2017, to permit the court to review the administrative record prior to ruling on Defendants' objections to discovery and the Privilege-Log Requirement. (Oct. 3, 2017, Order (Dkt. 72).) The second order, in light of Defendants' well-founded separation-of-powers arguments and Plaintiffs' corresponding concessions, limited the Privilege-Log Requirement to DHS and DOJ materials. (Oct. 17, 2017, Mem. & Order ("Oct. 17 M&O") (Dkt. 86) at 7-9.) The court denied, however, Defendants' motion to stay discovery relating to Plaintiffs' challenges to actions collateral to the decision to end the DACA program (namely, Defendants' alleged changes to the policy regarding the use of information obtained from DACA applications for immigration-enforcement purposes (the "information-policy claims") and Defendants' alleged failure to provide individualized notice of the change in renewal eligibility and deadlines to DACA recipients (the "individualized-notice claims")). (Id. at 3-4.) The court concluded that Defendants had offered no reason why the

3

court's review of these collateral claims should be confined to an administrative record documenting the decision to end the DACA program.  (Id. at 3-4.)  The court reserved ruling on Defendants' objections to discovery regarding Plaintiffs' direct challenges to the decision to end the DACA program and to the Privilege-Log Requirement pending Judge Orenstein's resolution of Plaintiffs' challenges to the adequacy of the administrative record.  (Id. at 4-6.)  Lastly, the court declined to narrow the scope of the Privilege-Log Requirement to exclude DOJ documents, in light of Defendants' unexplained reversal of their previously stated position that Attorney General Sessions and Acting Secretary Duke jointly decided to end the DACA program.  (Oct. 17 M&O at 9-10.)

Defendants again move the court to stay all discovery and the Privilege-Log Requirement until the court rules on whether the administrative record is complete, or, alternatively, pending the filing and disposition of a mandamus petition or stay motion in the Second Circuit.  (Defs. Oct. 18 Stay Mot. at 1.)  Defendants argue that the court's orders have left them in limbo, exposed to discovery but lacking the certainty of a final order.  (Id. at 1, 3.)  Defendants also contend that compliance with the Privilege-Log Requirement remains impossible in the time period specified, notwithstanding the court's previously ordered extension of time and the narrowing of that requirement to DHS and DOJ materials.  (Id. at 3-5.)

## II.    THE COURT WILL NOT STAY DISCOVERY OR THE PRIVILEGE-LOG REQUIREMENT

The court first considers whether Defendants are entitled to a temporary or permanent stay of discovery and the Privilege-Log Requirement.  Defendants argue variously that discovery should be stayed pending resolution of the parties' dispute over the adequacy of the administrative record (Defs. Oct. 18 Stay Mot. at 1), that discovery should be stayed pending resolution of Defendants' anticipated dispositive motions (id. at 2; Defs. Sept. 22 Ltr. at 2-3), and

4

that discovery is generally inappropriate in these cases because the court's review is confined to the administrative record prepared by DHS (Defs. Sept. 22 Ltr. at 1; Defs. Sept. 29 Mot. at 1-2). Defendants raise similar arguments with respect to the Privilege-Log Requirement, which they contend they should not be required to compile absent some showing that they acted in bad faith in compiling the administrative record. (Defs. Oct. 10, 2017, Reply in Supp. of Sept. 29 Mot. (Dkt. 80) at 2.)

Discovery will proceed with respect to Plaintiffs' information-policy and individualized-notice claims. Defendants suggest that the court has left them on uncertain footing by reserving decision on whether discovery should proceed pending resolution of the parties' dispute over the adequacy of the administrative record. (Defs. Oct. 18 Stay Mot. at 1.) To the contrary, the court expressly denied Defendants' motion for a temporary or permanent stay with respect to discovery regarding Plaintiffs' information-policy and individualized-notice claims. (Oct. 17 M&O at 3-4.) Defendants still have yet to offer any reason why the court's review of these claims should be confined to an administrative record that only purports to document Acting Secretary Duke's decision to rescind the DACA program. The administrative record, the court notes, also sheds no light on whether or why Defendants allegedly (1) removed protections on the use of DACA beneficiaries' information for immigration-enforcement purposes; and (2) failed to provide DACA beneficiaries with written notice that they had only a narrow window within which to reapply for deferred action or work authorization, or that they were no longer entitled to do so. (Id.)

The court also denies Defendants' motion for a stay of discovery and the Privilege-Log Requirement with respect to Plaintiffs' direct challenges to the decision to end the DACA program. As for Defendants' argument that discovery should be stayed pending resolution of

Add. 47

their anticipated dispositive motion, the court observes that courts in this district do not automatically stay discovery pending resolution of a motion to dismiss. Doe v. New York City Dep't of Educ., No. 16-CV-1684 (NGG) (RLM), 2016 WL 7165953, at *1 (E.D.N.Y. Dec. 7, 2016). Courts will, however, stay discovery, when the party seeking the stay shows "good cause." Fed. R. Civ. P. 26(c)(1). In considering whether such party has shown good cause, the court considers "1) whether a defendant has made a strong showing that the plaintiff's claim is unmeritorious, 2) the breadth of discovery and the burden of responding to it, and 3) the risk of unfair prejudice to the party opposing the stay." Negrete v. Citibank, N.A., No. 15-CV-7250 (RWS), 2015 WL 8207466, at *1 (S.D.N.Y. Dec. 7, 2015). Based on its consideration of these factors, the court concludes that Defendants have not carried their burden of showing that discovery should be stayed.

First, Defendants have not shown that Plaintiffs' claims are unmeritorious. In their September 22 Letter and their September 29 Motion, Defendants argued, in a combined total of eight sentences, that the decision to end the DACA program was a presumptively unreviewable exercise of prosecutorial discretion and that it was reasonable in light of the litigation risk posed by maintenance of the DACA program.[3] (Defs. Sept. 22 Ltr. at 2-3; Mot. at 5-6.) The court does not fault Defendants for this cursory briefing at this point in the proceedings—Defendants' dispositive motion is not due for several months. (Oct. 2, 2017, Min. Entry.) But it cannot be said that, at this point in the proceedings, Defendants have made a "strong showing" that Plaintiffs' claims lack merit. To the extent that Defendants can argue that certain of Plaintiffs' claims are unmeritorious, and thus that discovery with respect to those claims is unwarranted, Defendants are free to raise those arguments with Judge Orenstein in the first instance.

---

[3] By the court's count, these arguments amount to three sentences in the September 22 Letter and five sentences in the September 29 Motion.

6

Nor have Defendants established that discovery should be stayed because the court's review is limited to the administrative record produced on October 6, 2017. First, Defendants have still not explained why the court's review of Plaintiffs' information-policy and individualized-notice claims should be restricted to an administrative record that documents the decision to rescind DACA without addressing those collateral decisions. Second, although Plaintiffs' motion to compel is not properly presented here, the court notes that it is not at all clear that Defendants applied the correct standard when compiling the administrative record, which properly includes all documents "directly or indirectly" considered by the relevant agency decisionmaker(s) when deciding to end the DACA program. See Comprehensive Cmty. Dev. Corp. v. Sebelius, 890 F. Supp. 2d 305, 308 (S.D.N.Y. 2012). (Oct. 17 M&O at 3-5.)

Second, Defendants have not shown that Plaintiffs' requested discovery is especially broad or burdensome, particularly in light of the stakes of this case. Although Defendants have indicated they will oppose deposition discovery targeting cabinet-level officials and any discovery requests directed at the White House (Defs. Sept. 22 Ltr. at 3), Plaintiffs have indicated that they intend to seek only limited deposition discovery, which does not target cabinet-level officials (Batalla Vidal Pls. Sept. 22 Ltr. Regarding Discovery (Dkt. 66) at 3; State Pls. Oct. 3, 2017, Resp. in Opp'n to Defs. Mot. to Vacate (New York v. Trump Dkt. 49) at 7 n.6; Oct. 6, 2017, Joint Status Report (Dkt. 78); Oct. 18, 2017, Joint Status Report (Dkt. 88)). The court is sensitive to Defendants' concerns about subjecting senior government officials to discovery and the prospect that Plaintiffs may burden the government with open-ended requests for production. (See Defs. Oct. 18 Stay Mot. at 2-3.) At this point in the proceedings, however, Defendants have not shown that the discovery sought by Plaintiffs warrants a stay (particularly in

7

light of the prejudice that Plaintiffs would experience as a result of a stay, discussed in the following section).[4]

Defendants' arguments are particularly unavailing when considering the third and most important factor, the prejudice that Plaintiffs would suffer as a result of a stay. Defendants ask the court to stay all discovery (as well as the Privilege-Log Requirement) pending the resolution of their forthcoming dispositive motion. (Pls. Sept. 29 Mot. to Vacate at 5.) The court will not, however, receive Defendants' fully briefed dispositive motion until January 13, 2018. Even if the court were to resolve that motion immediately, less than two months would remain before the March 5, 2018, deadline, on which existing DACA benefits not subject to renewal would begin to expire. If Defendants' arguments for dismissal were unmeritorious, and Plaintiffs' suits were to proceed, insufficient time would remain for Plaintiffs to conduct any necessary discovery and to seek relief from this court, and for this court to rule on such a motion for relief, prior to the March 5 deadline. While the court is mindful of the burden that the expedited discovery schedule may place on the Government, this urgency is the unavoidable result of Defendants' own decision to terminate, on relatively short notice, a program directly benefiting hundreds of thousands of individuals. Discovery must proceed in advance of the resolution of Defendants' anticipated dispositive motions for the court to effectively adjudicate these cases in an appropriately expedition manner, if Defendants' motions are unavailing.

The court is also mindful that allowing discovery to proceed pending resolution of the parties' dispute about the adequacy of the administrative record may cause Defendants some discomfort. Defendants may be required, as a result of this discovery schedule, to disclose

---

[4] As discussed below, the court will, however, narrow the scope of the Privilege-Log Requirement in order to address Defendants' objection that the requirement applies to documents outside the scope of the administrative records and cannot be complied with in any reasonable amount of time.

8

information that may not be relevant to the adjudication of certain of Plaintiffs' claims, if the administrative record that they have already produced is ultimately determined to be complete. Defendants' complaints that allowing discovery to proceed in the interim places them "in an untenable position" and "forecloses any realistic chance of success on these arguments in district court," are, however, overstated. (Defs. Oct. 18 Stay Mot. at 3.) If the court concludes that the administrative record is complete, and thus that discovery outside the record is unwarranted, it can confine its review to that record. Likewise, if the court concludes that no privilege log is required with respect to documents withheld from the administrative record, the court can simply disregard that log. The court is, however, mindful that overbroad discovery could inappropriately interfere with agencies' day-to-day workings, and thus will narrow the Privilege-Log Requirement as stated in the following section.

## III. THE COURT WILL NARROW THE SCOPE OF THE PRIVILEGE-LOG REQUIREMENT

In addition to arguing generally that they should not be required to compile a privilege log, Defendants also argue that the Privilege-Log Requirement remains overbroad, and imposes an impossible-to-meet deadline. (Defs. Oct. 18 Stay Mot. at 3-4.) They contend that the Privilege-Log Requirement improperly covers documents that would not have been included within the administrative record (id. at 4) and—offering some substantiation to their heretofore-conclusory claims that the requirement imposes an impossible burden on the Government—assert that approximately 1.2 million DHS documents and another 90,000 DOJ documents may fall within the scope of the Privilege-Log Requirement. (Id. at 4.) In light of these concerns, which Defendants have also presented in affidavits submitted to the U.S. District Court for the Northern District of California in connection with related challenges pending there before Judge William Alsup, the court agrees that the Privilege-Log Requirement should be narrowed further.

9

Defendants are required to identify and assert privilege with respect to documents withheld from the administrative record on privilege grounds. The "full" or "whole" administrative record includes all materials "directly or indirectly" considered by an agency decisionmaker at the time he or she made the challenged decision. See Comprehensive Cmty. Dev., 890 F. Supp. 2d at 308. Thus, the administrative record considers not only materials directly considered by the agency decisionmaker, but also "all materials that 'might have influenced the agency's decision,'" including any "work and recommendations of subordinates" on which the agency decisionmaker based his or her decision. Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) (quoting Bethlehem Steel v. EPA, 638 F.2d 994, 1000 (7th Cir. 1980)); see also Order re Motion to Complete Administrative Record (Dkt. 12) at 3-8, 11-12, Regents of the University of California v. U.S. Dep't of Homeland Sec., No. C-17-05211 (Oct. 17, 2017). While Defendants appear to argue that the administrative record includes only materials immediately before the top-level administrative decisionmaker, this reading fails to account for cases holding that the administrative record also includes materials that the agency decisionmaker "indirectly" or "constructively" considered. See Wildearth Guardians v. U.S. Forest Serv., 713 F. Supp. 2d 1243, 1256 (D. Colo. 2010) (administrative record includes materials "so heavily relied on in . . . recommendations that the decision maker constructively considered" them).

To clarify that the Privilege-Log Requirement aligns with the proper scope of the administrative record, the court narrows that requirement as follows: Defendants are required to produce a privilege log that identifies and asserts privilege with respect to materials withheld from the administrative record on privilege grounds that (1) Attorney General Sessions or Acting Secretary Duke actually considered, as part of their decision to terminate the DACA program;

Add. 52

and (2) their first-tier subordinates—i.e., anyone who advised them on the decision to terminate

the DACA program—considered in connection with formulating those recommendations. If

Defendants correctly designated the administrative record, Defendants presumably already

identified and analyzed claims of privilege with respect to those documents prior to the October

6, 2017, deadline for submitting the administrative record, minimizing the burden associated

with the production of this privilege log. By Monday, October 23, 2017, the parties are directed

to file supplemental letter briefs, not to exceed five pages each, discussing whether Defendants

should be required to identify and assert privilege with respect to any materials considered by

second-tier subordinates (i.e., anyone who advised any first-tier subordinates to Attorney General

Sessions or Acting Secretary Duke) in this matter.

The court reiterates that DOJ documents fall within the scope of the Privilege-Log

Requirement. Defendants have not explained their conflicting representations to the court as to

whether Attorney General Sessions was partly responsible for the decision to end the DACA

program. Until they do so, forthrightly and with citations to legal authority, the court will

continue to treat DHS and DOJ as joint decisionmakers for these purposes.

## IV. THE COURT DENIES DEFENDANTS' MOTION FOR A STAY PENDING MANDAMUS

Lastly, the court denies Defendants' motion for a stay pending mandamus. In

considering a motion for a stay pending mandamus, the court considers the same factors as it

considers on a motion for a stay pending appeal. Hoop v. Andrews, No. 1:06-CV-603, 2009 WL

2431285 (S.D. Ohio Aug. 6, 2009). In this circuit, those are "(1) whether the stay applicant has

made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will

be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the

other parties interested in the proceeding; and (4) where the public interest lies." In re World Trade Ctr. Disaster Site Litig., 503 F.3d 167, 170 (2d Cir. 2007) (footnote omitted).

Balancing those factors, the court finds that a stay pending mandamus is not warranted. With respect to the first factor, Defendants offer no separate grounds for that stay, nor do they cite any controlling or persuasive case law in support of a stay. It is thus difficult to say that they have made any showing of likelihood of success on the merits. Nor does the court find that they are likely to succeed on the merits of their argument that they should not be subject to discovery or required to produce a privilege-log, for the reasons stated in this order, the court's prior orders, and Judge Alsup's well-reasoned order granting plaintiffs' motion to compel completion of the administrative record in Regents of the University of California v. U.S. Department of Homeland Security, No. C-17-05211 (N.D. Cal. Oct. 17, 2017). With respect to the third factor, in light of the expedited discovery schedule for this case, the court finds that any delay of discovery would prejudice plaintiffs, for the reasons discussed above. The court concludes that these factors, taken together, outweigh the relatively minor harm to Defendants of permitting discovery to continue and considerations of public interest, some version of which both sides in this case have claims to advance.

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion for a stay of discovery and the Privilege-Log Requirement is GRANTED in part and DENIED in part, and Defendants' motion for a stay pending mandamus is DENIED.

SO ORDERED.

/s Nicholas G. Garaufis

Dated: Brooklyn, New York
      October 19, 2017

NICHOLAS G. GARAUFIS
United States District Judge

12

Add. 54