# No. 17-3345

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

In re ELAINE DUKE, Acting Secretary of Homeland Security; JEFFERSON BEAUREGARD SESSIONS III, Attorney General of the United States; DONALD J. TRUMP, President of the United States; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; and the UNITED STATES OF AMERICA, Petitioners.

**FULL PETITION FOR A WRIT OF MANDAMUS
TO THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

CHAD A. READLER
  *Acting Assistant Attorney General*

HASHIM M. MOOPPAN
  *Deputy Assistant Attorney General*

MARK B. STERN
ABBY C. WRIGHT
THOMAS PULHAM
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2000*

## INTRODUCTION AND SUMMARY

Pursuant to the All Writs Act, 28 U.S.C. § 1651, and Rule 21 of the Federal Rules of Appellate Procedure, the federal government respectfully asks this Court to issue a writ of mandamus with respect to district court orders refusing to stay discovery and requiring the government to file a privilege log for documents to be added to an expanded administrative record in this case challenging agency action under the Administrative Procedure Act (APA). Because the effect of the district court's orders is immediate and irreparable, the government sought, and this Court granted, a stay pending consideration of this petition. *See* Order (Oct. 20, 2017). In parallel litigation, the United States Court of Appeals for the Ninth Circuit has ordered a response to the government's petition for writ of mandamus. *See* Order, *In re United States*, No. 17-72917 (9th Cir. Oct. 20, 2017).

Plaintiffs in these related APA cases challenge the decision of the Acting Secretary of Homeland Security to wind down the discretionary policy under the Immigration and Nationality Act (INA) known as Deferred Action for Childhood Arrivals (DACA). Under that policy, DHS had previously determined, as an exercise of prosecutorial discretion, to forbear from seeking removal of a certain group of undocumented aliens. Judicial review of that discretionary policy determination is barred by both the INA itself and the APA. But even if the Acting Secretary's decision were reviewable at all, the mode of judicial review in an APA action is well-established. "[T]he focal point for judicial review should be the administrative record

1

already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 142 (1973). And this Court has recognized that if "the record before the agency does not support the agency action . . . or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course . . . is to remand to the agency for additional investigation or explanation." *State of New York Dep't of Soc. Servs. v. Shalala*, 21 F.3d 485, 493 (2d Cir. 1994) (omissions in original) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

The district court has veered sharply from this well-marked path. Instead, it has permitted extraordinarily burdensome and intrusive discovery as plaintiffs hunt for subjective motivations behind the challenged administrative action—discovery that will require the government to process and assert privilege over an enormous number of documents and provide high-ranking government officials to sit for deposition. The court has also ordered production of a privilege log for documents that are not part of the administrative record because they are deliberative and pre-decisional— including documents that were not even considered by the agency decisionmaker—in order to add them to the administrative record submitted by the agency in support of the challenged action. The district court has proceeded on the erroneous assumptions that, first, the lawfulness of the agency's action is judged on the basis of a record to be "completed" by the district court, and second, that the court's role is to review not what the Acting Secretary said in her decision, but what she and her subordinates

2

thought or said during their internal deliberations. Both premises are fundamentally flawed. As both the Supreme Court and this Court have repeatedly explained, "a court reviewing an agency decision is confined to the administrative record compiled by that agency when it made the decision." *National Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997) (citing *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985), and *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). And in carrying out that review, it is "not the function of the court to probe the mental processes" of the agency. *United States v. Morgan*, 304 U.S. 1, 18 (1938). For that reason, the en banc D.C. Circuit has held that deliberative materials are simply not part of the administrative record at all. *San Luis Obispo Mothers for Peace*, 789 F.2d 26 (D.C. Cir. 1986) (en banc). An order to log materials "withheld" from the administrative record on the basis of privilege is thus clearly erroneous.

Moreover, before even considering such intrusions into governmental function and privilege, it was incumbent on the district court to address threshold legal issues that might obviate the need to consider the administrative record at all. The court's exercise of jurisdiction over this suit is barred by 8 U.S.C. § 1252(g), which prohibits actions challenging "'deferred action' decisions and similar discretionary decisions" concerning removal "outside the streamlined process that Congress has designed." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 & n.9 (1999) (*AADC*). And even if jurisdiction were found to exist, the decision to rescind DACA is an unreviewable exercise of prosecutorial discretion. *See* 5 U.S.C. § 701(a)(2); *see also*

3

*AADC*, 525 U.S. at 489-90; *Heckler v. Chaney*, 470 U.S. 821, 831-32 (1985). Only if the court were somehow to conclude that those threshold bars are inapplicable could the court properly even undertake to consider whether the Acting Secretary's decision was arbitrary and capricious, including with respect to the administrative record submitted to support that decision. And if the record is insufficient to sustain the challenged action, the proper disposition is to remand to DHS for further action. *See, e.g., Camp v. Pitts*, 411 U.S. at 143.

This discovery and expansion of the administrative record are particularly improper at this juncture, before the court has considered whether dismissal is required on threshold legal grounds and before the court has offered any reason to conclude that the Acting Secretary's identification of the administrative record on which to base her decision was arbitrary and capricious. The district court has disregarded longstanding doctrine and basic tenets of inter-branch comity, and has unnecessarily set the Judicial and Executive Branches on a "collision course." *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 390 (2004). If accepted as precedent for challenges to agency action, this approach would threaten the separation of powers and make standard a manner of litigation that is both unduly intrusive and practically impossible for the government. Accordingly, this Court should direct the district court to stay all discovery and supplementation of the administrative record pending the resolution of threshold legal questions, including whether this suit is justiciable.

4

## STATEMENT

### A.    Overview of Deferred Action and the DACA Policy

**1.** The INA charges the Secretary of Homeland Security "with the administration and enforcement" of the INA and "all other laws relating to the immigration and naturalization of aliens." 8 U.S.C. § 1103(a)(1). Individuals are subject to removal if, *inter alia*, "they were inadmissible at the time of entry, have been convicted of certain crimes, or meet other criteria set by federal law." *Arizona v. United States*, 567 U.S. 387, 396 (2012); *see* 8 U.S.C. §§ 1182(a), 1227(a).

As a practical matter, the federal government cannot remove every removable alien, and a "principal feature of the removal system is the broad discretion exercised by immigration officials." *Arizona*, 567 U.S. at 396. DHS officials must first "decide whether it makes sense to pursue removal at all." *Id.* Once removal proceedings begin, officials may decide to grant certain forms of discretionary relief expressly authorized by statute, such as asylum, parole, or cancellation of removal. 8 U.S.C. §§ 1158(b)(1)(A), 1182(d)(5)(A), 1229b. And "[a]t each stage" of the process, "the Executive has discretion to abandon the endeavor." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999). Like other agencies exercising enforcement discretion, DHS must engage in "a complicated balancing of a number of factors which are peculiarly within its expertise." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985).

Deferred action is a practice in which the Acting Secretary exercises discretion "for humanitarian reasons or simply for [her] own convenience," to notify an alien of a non-binding decision to forbear from seeking his removal for a designated period. *See AADC*, 525 U.S. at 483-84; 8 C.F.R. § 274a.12(c)(14) (describing "deferred action" as "an act of administrative convenience to the government which gives some cases lower priority"). Although originally "developed without express statutory authority," individualized deferred action has been accepted by Congress, *see e.g.*, 8 U.S.C. § 1154(a)(1)(D)(i)(II), (IV), and recognized by the Supreme Court as a permissible exercise of administrative discretion, *AADC*, 525 U.S. at 484. In addition to temporary relief from removal, other consequences may flow from a grant of deferred action under DHS regulations not challenged here, including the ability to apply for work authorization in certain circumstances. *See, e.g.*, 8 C.F.R. § 247a.12(c)(14).

A grant of deferred action does not, however, confer lawful immigration status or provide any defense to removal. *Cf. Chaudhry v. Holder*, 705 F.3d 289, 292 (7th Cir. 2013) (discussing the difference between "unlawful presence" and "unlawful status"). Thus, DHS has the discretion to revoke deferred action unilaterally, and an individual with deferred action remains removable at any time. *See AADC*, 525 U.S. at 484-85.

**2.** On June 15, 2012, DHS announced the policy that has since become known as DACA. *See* Memorandum from Janet Napolitano, Secretary, DHS to David Aguilar, Acting Commissioner, U.S. Customs and Border Prot., *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* (June 15,

6

2012) (DACA Memo), https://go.usa.gov/xnqY4. DACA makes deferred action available to "certain young people who were brought to this country as children." *Id.* at 1. Following successful completion of a background check and other review, and alien would receive deferred action for a period of two years, subject to renewal. *Id.* at 2-3. The DACA Memo made clear that it "confer[red] no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights." *Id.* at 3. DHS later expanded DACA and created a new, similar policy known as Deferred Action for Parents of Americans and Lawful Permanent Residents (DAPA).

DAPA and the expansion of DACA were challenged in court. The District Court for the Southern District of Texas issued a nationwide preliminary injunction based on its finding of a likelihood of success on the claim that the policy violated the notice-and-comment requirements of the APA. *Texas v. United States,* 86 F. Supp. 3d 591 (S.D. Tex. 2015). The Fifth Circuit affirmed, holding that the policy violated both the APA and the INA. *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015). The Supreme Court affirmed the judgment by an equally divided Court, *United States v. Texas,* 136 S. Ct. 2271 (2016), leaving the nationwide injunction in place. In June 2017, Texas threatened to amend its complaint to challenge the original DACA policy.

**3.** On September 5, 2017, DHS decided to wind down the remaining DACA policy in an orderly fashion. *See* Memorandum from Elaine C. Duke, Acting Secretary of Homeland Security, to Citizenship & Immigration Servs., Immigration & Customs

Enf't, and Customs & Border Prot., *Rescission of Deferred Action for Child Arrivals* (Sept. 5, 2017) (Duke Memo), https://go.usa.gov/xnqYQ. The Duke Memo provides that DHS will "adjudicate—on an individual, case by case basis—properly filed pending DACA renewal requests and associated applications for Employment Authorization Documents . . . from current beneficiaries whose benefits will expire between the date of this memorandum and March 5, 2018 that have been accepted by the Department as of October 5, 2017." *Id.* The memorandum further provides that the government "[w]ill not terminate the grants of previously issued deferred action or revoke Employment Authorization Documents solely based on the directives in this memorandum" for the remaining periods of deferred action, which may be as late as 2019. *Id.*

**B.    Factual and Procedural Background**

**1.** A number of suits were filed following the September 5 decision to wind down DACA. As relevant here, two groups of plaintiffs brought suit in the Eastern District of New York. *See New York v. Trump*, No. 17-cv-5228 (filed Sept. 6, 2017); *Batalla Vidal v. Duke*, No. 16-cv-4756 (originally filed Aug. 25, 2016; second amended complaint filed Sept. 19, 2017). Challenges to the wind down of DACA have also been brought in district courts in California, Maryland, and the District of Columbia. Plaintiffs in the cases at issue here are various States, individuals who were recipients of DACA, and Make the Road New York, on behalf of itself, its members, and

clients. *New York v. Trump*, No. 17-cv-5228, Dkt. 1, at 4-37; *Batalla Vidal v. Duke*, No. 16-cv-4756, Dkt. 60, at 3-10, 28-30.

Plaintiffs here allege that the termination of DACA is unlawful because it violates the APA's notice-and-comment provision; is arbitrary and capricious; violates the Regulatory Flexibility Act; denies DACA recipients procedural due process; violates the Equal Protection Clause; and permits the government to use information obtained from DACA requestors in a manner allegedly inconsistent with principles of substantive due process and equitable estoppel.

**2.** On September 15, 2017, the magistrate judge asked the parties for their positions as to whether discovery should be stayed pending resolution of the government's anticipated motion for dismissal. *Batalla Vidal v. Duke*, No. 16-cv-4756, Dkt. 58. The government urged that no discovery was appropriate at all in this litigation under the APA, and that if any discovery were to take place, it should be postponed until after resolution of the government's motion to dismiss and the filing of the administrative record. Dkt. 65. Plaintiffs argued that discovery should not be stayed, but they acknowledged that "the amount and nature of the discovery Plaintiffs seek on their administrative claims will largely depend on the content of the administrative record." Dkt. 66, at 4. They asked the court to require the government to produce a privilege log on October 6, 2017, "[i]f the administrative record includes materials that Defendants believe are privileged." *Id.* at 4, 6. At a status conference on

September 26, the district court questioned the government's "hurry" to enact a "heartless" policy. Tr. 9/26/2017, at 8.

On September 27, 2017, the magistrate judge issued an order requiring that the administrative record be filed on October 6, 2017, and also setting various deadlines for discovery. As particularly relevant here, paragraph II(c) of that order required the production of a privilege log including "a description of every document considered within any component of the executive branch as part of the process of determining the policy and actions at issue in these actions . . . as to which the defendants would assert a claim of privilege, regardless of whether the defendants deem . . . that record to be part of the official administrative record." Add. 13.[1] That order provided that "[f]ailure to describe a pertinent document in the privilege log due on October 6, 2017, will waive any later assertion of privilege absent a showing of good cause." *Id.* The magistrate judge also directed that, notwithstanding the government's objection, discovery would begin immediately, even before the filing or consideration of the government's threshold dispositive motion. Add. 12.

**3.** The government filed objections to the magistrate judge's order with the district court. In an order dated October 3, the district court agreed that the government should not be required to file a privilege log until after it had filed the administrative record and the record had been found insufficient. *Batalla Vidal*, No.

---

[1] Add. refers to the addendum filed by the government with its October 19 emergency stay motion.

16-cv-4756, Dkt. 72. The judge therefore extended the due date for the privilege log to October 20, and announced its intent to rule on the remainder of the government's objections by that date. On October 6, the government filed the administrative record, which consisted of documents considered by Acting Secretary Duke. Dkt. 77. Plaintiffs then asserted that the record was "deficient" and moved the court to compel the government to "complete" the administrative record. Dkt. 84, at 1.

On October 17, the district court issued a further order. Add. 1. The court agreed that the magistrate judge's order with respect to the privilege log was inappropriate to the extent that it included documents from the White House, but the district court did not otherwise meaningfully narrow the order, leaving it in place for both DHS and the Department of Justice. Add. 7. The court also denied the government's motion to stay discovery with respect to plaintiffs' due process and equitable estoppel claims. Add. 4. With respect to all other relief requested by the government, however, the district court reserved judgment. Thus, the court did not rule on the government's argument that neither extra-record discovery nor a privilege log to be produced alongside the administrative record should be allowed because any judicial review must be limited to the administrative record already submitted. Nor did the court relieve the government from the ongoing obligations imposed by the magistrate judge's order, which remain in place.

On October 18, the government moved the district court to "stay all discovery and privilege log requirements until it rules on whether the administrative record is

11

complete," or, in the alternative, to stay discovery obligations pending the government's petition for writ of mandamus. Add. 17.

On October 19, the magistrate judge ruled on the plaintiffs' motion to "complete" the record. Add. 40. Relying on the district court judge's reasoning in parallel California litigation, *Regents of the University of California, et al. v. United States Department of Homeland Security, et al.*, 17-CV-5235 (N.D. Cal.) (WHA),[2] the magistrate judge ordered the record to be "completed," to include "all documents and materials that were before the decision makers' agencies and the non-privileged work and recommendations of the decision makers' subordinates." Add. 40-41. In a footnote, the magistrate judge opined that the relevant decisionmakers were not just the Acting Secretary of DHS, but also the Attorney General. Add. 41-42 n.2. The "completed" administrative record is currently due on October 27. Add. 41.

On the same day that the magistrate judge issued this order, the district court issued a ruling denying the government's previously filed motion to stay discovery and privilege-log requirements. Add. 43. The court held that discovery may proceed, Add. 48, and refused to relieve the government of its obligation to prepare a burdensome privilege log. The district court purported to "align" the "Privilege-Log Requirement" with what the it regarded as "the proper scope of the administrative record." Add. 52. Specifically, the court ordered the government to produce a log "that identifies and

---

[2] As explained, the government has filed a petition for writ of mandamus from that decision. *See In re United States*, No. 17-72917 (9th Cir. filed Oct. 20, 2017).

asserts privilege with respect to materials withheld from the administrative record" for materials considered by (1) Acting Secretary Duke or Attorney General Sessions "as part of their decision to terminate the DACA program," and (2) "their first-tier subordinates," meaning "anyone who advised them on the decision to terminate the DACA program." Add. 51-52. The court ordered further briefing on whether materials considered by "second-tier subordinates" (defined as "anyone who advised any first-tier subordinates") should also be included in the privilege log. Add. 53.

In attempting to comply with the district court and magistrate judge orders, the government has faced extremely burdensome discovery demands. The initial searches conducted by DHS components have yielded over 1 million documents from over 100 custodians, and searches at DOJ have, to date, yielded over 90,000 documents from 70 custodians. *See* Add. 20; *see also* Add. 51 (acknowledging the burden on the government). Every full-time lawyer on the litigation team at DHS headquarters has been assigned to review documents in the various DACA cases, and lawyers have also been diverted from other legal practice areas. Add. 24-25. Customs and Border Protection has put on hold all of its electronic discovery computer resources ordinarily used for other cases, and Immigrations and Customs Enforcement has pulled agency counsel and personnel from immigration court appearances and other regular duties, to assist with discovery in these cases. Add. 34. These efforts are already compromising DHS's ability to meet its other legal and programmatic

obligations. *See, e.g., id.* (describing delays to "other litigation obligations" and "an ongoing critical surveillance operation").

On October 19, the government sought emergency relief in this Court because of imminent discovery deadlines. On October 20, this Court (per Cabranes, J.) granted a stay of all discovery and record supplementation contingent upon government filing a full petition for writ of mandamus by 3:00 p.m. EST on October 23, 2017.

## ARGUMENT

**I.** **The Court Should Exercise Its Mandamus Authority to Correct Orders That Disregard Established Principles of Judicial Review of Agency Decisions.**

### A. Mandamus Review Is Appropriate.

Although a writ of mandamus is an extraordinary remedy, it "has been used 'both at common law and in the federal courts . . . to confine the court against which mandamus is sought to a lawful exercise of its prescribed jurisdiction.'" *In re City of New York*, 607 F.3d 923, 932 (2d Cir. 2010) (alteration in original) (citing *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004)). This Court has recognized that "mandamus provides a logical method by which to supervise the administration of justice within the Circuit" in cases in which "a discovery order present[s] an important question of law." *In re von Bulow*, 828 F.2d 94, 97 (2d Cir. 1987).

This Court will, for example, exercise its mandamus authority "to cure a defective pretrial discovery order if the petitioner demonstrates (1) the presence of a

14

novel and significant question of law; (2) the inadequacy of other available remedies; and (3) the presence of a legal issue whose resolution will aid in the administration of justice." *In re SEC ex rel. Glotzer*, 374 F.3d 184, 187 (2d Cir. 2004) (quotation marks omitted). These factors are not exclusive. This Court has explained that the ultimate question is whether exercise of mandamus authority is "'appropriate under the circumstances,'" and may thus "be appropriate, for example, if a district court ruling flagrantly misapplies a well-settled principle of law." *In re City of New York*, 607 F.3d at 940 n.17 (quoting *Cheney*, 542 U.S. at 381).

For the reasons discussed below, the district court's orders plainly deviate from settled legal principles governing judicial review of agency action. Correcting the district court's extraordinary departure from these basic principles is necessary to preserve the appropriate relationship between the Judiciary and the Executive Branch in this case and in agency litigation generally. The burden in this case alone is severe, and it would be unmanageable if district courts generally felt free to disregard fundamental precepts of administrative law. *See In re von Bulow*, 828 F.2d at 99 (noting that mandamus may be appropriate to "forestall future error in trial courts, eliminate uncertainty and add importantly to the efficient administration of justice") (quoting *Colonial Times, Inc. v. Gasch*, 509 F.2d 517, 524 (D.C. Cir. 1975)).

The orders below depart from established principles of administrative law and raise "new and important problems" not directly addressed by this Court. The orders

15

disregard the Supreme Court's repeated admonitions that review should be based upon the administrative record created by the agency, and not on a record created in district court. The orders are particularly egregious because they require the government to catalog deliberative materials and to invoke specific privileges to justify their withholding. The orders contravene the rule against probing the mental process of the decisionmaker and are directly at odds with the decision of the *en banc* D.C. Circuit in *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Commission*, 789 F.2d 26, 44-45 (D.C. Cir. 1986), holding that deliberative, pre-decisional documents do not form part of the administrative record. And they do so in disregard of the existence of threshold bars, to be fully litigated in a motion to dismiss, to judicial review of the Acting Secretary's exercise of enforcement discretion. *Cf. Cheney*, 542 U.S. at 390.

**B.      The Court Should Vacate the Orders, Which Constitute Clear and Significant Error, and Direct the District Court To Stay Discovery and Supplementation of the Administrative Record.**

**1.** The conduct of this litigation upends fundamental principles of judicial review of agency action. In agency review cases, "[t]he APA specifically contemplates judicial review on the basis of the agency record." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). A court typically reviews the administrative record in considering a dispositive motion to determine whether the agency decision is adequately supported. In so doing, "[t]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the

16

reviewing court." *Florida Power*, 470 U.S. at 743-44. Rather than permit wide-ranging discovery, "the task of the reviewing court is to apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court." *Id.*; *see also Estate of Landers v. Leavitt*, 545 F.3d 98, 113 (2d Cir. Jan. 15, 2009) (as revised) (holding that interrogatories could not be considered because the court "must uphold or set aside the agency's action on the grounds that the agency has articulated"). If the agency's action "is not sustainable on the administrative record made," then the administrative "decision must be vacated and the matter remanded to [the agency] for further consideration." *Camp v. Pitts*, 411 U.S. 138, 143 (1973).

Moreover, before even considering the merits of an agency decision or the adequacy of the record submitted to support of that decision, a court should first resolve any threshold issues such as justiciability. The Supreme Court in *Cheney* admonished that district courts should "explore other avenues" before "forcing the Executive to invoke privilege." 542 U.S. at 390. The principles from *Cheney* apply with equal force here. Thus, the district court should have addressed dispositive threshold issues, rather than set "coequal branches of the Government . . . on a collision course." *Id.* at 389.

The district court's order contravenes each of these principles. As the government informed the court, it will be moving to dismiss each case on threshold grounds that, if accepted, will obviate any need to consider the adequacy of the

administrative record. Thus, before even considering expansion of the record or allowing discovery to proceed, basic principles of comity and conditions on the government's waiver of sovereign immunity required the court to determine whether doing so is permissible or necessary to the resolution of the case. First, the district court must determine whether its exercise of jurisdiction over this suit is altogether barred by 8 U.S.C. § 1252(g), which provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The Supreme Court held in *AADC* that this provision specifically applies to decisions concerning the denial of deferred action. *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 & n.9 (1999). Moreover, even if the district court were to find this deferred-action jurisdictional bar inapplicable, it would need to determine whether the decision to rescind DACA is an unreviewable exercise of prosecutorial discretion that is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see also, e.g., Heckler v. Chaney*, 470 U.S. 821, 837-38 (1985); *AADC*, 525 U.S. at 489-490 ("[T]he decision to prosecute is particularly ill-suited to judicial review." (quoting *Wayte v. United States*, 470 U.S. 598, 607-08 (1985)). As the Supreme Court has explained, an unreviewable agency action does not become subject to judicial review simply because the agency "gives a 'reviewable reason'" to explain it. *I.C.C. v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987).

18

Only if the district court were to reject all threshold grounds for dismissal could the court consider whether the Acting Secretary's decision was arbitrary and capricious, including with respect to the administrative record on which she supported her decision. And if it then appeared that supplementation of the record was necessary, the proper course would be to remand to the agency. *Brodsky v. U.S. Nuclear Regulatory Comm'n*, 704 F.3d 113, 119 (2d Cir. 2013) ("[W]hen an administrative record is insufficient to permit a court to discern an agency's reasoning or to conclude that the agency has considered all relevant factors, a court may remand the matter to the agency to allow for supplementation of the record."); *National Audubon Soc'y*, 132 F.3d at 14 (same).

Upending these familiar procedures, the district court here has required the government to produce a privilege log that "aligns" with the court's view of "the proper scope of the administrative record" for the purpose of expanding that record. Add. 52. Specifically, the government has been directed to file privilege log "that identifies and asserts privilege" with respect to materials the court characterizes as "withheld from the administrative record" and that were considered by Acting Secretary Duke or Attorney General Sessions or "anyone who advised them on the decision to terminate the DACA program." Add. 52-53. The order rests on the flawed assumption that the appropriate record in APA litigation is one that the district court "completes" on judicial review. As this Court has explained, however, "a court reviewing an agency decision is confined to the administrative record compiled by that

19

agency when it made the decision." *National Audubon Soc'y*, 132 F.3d at 14. An

exception to this "general 'record rule'" may be made "when there has been a strong

showing in support of a claim of bad faith or improper behavior on the part of agency

decisionmakers or where the absence of formal administrative findings makes such

investigation necessary in order to determine the reasons for the agency's choice." *Id.*

But here the Acting Secretary explained the reasons for her action in a memorandum

that was both publicly released and included in the administrative record, *see* Duke

Memo, https://go.usa.gov/xnqYQ, and neither the district court nor the magistrate

judge has made a finding that would justify an "extra-record investigation." *National*

*Audubon Soc'y*, 132 F.3d at 14.

Review based on the record created by the agency is inherent in the framework

established by the APA. In formal administrative proceedings, the APA provides that

the "exclusive record for decision" consists of "[t]he transcript of testimony and

exhibits, together with all papers and requests filed in the proceeding." 5 U.S.C.

§ 556(e). The administrative record is composed "exclusive[ly]" of the materials that

are affirmatively admitted by the agency in the course of the proceeding. Materials

that are not "filed in the proceeding" pursuant to the agency's own procedures, such

as internal agency documents memorializing the agency's own deliberations, are

categorically outside the scope of the administrative record under section 556(e)—just

like deliberative materials in the Judicial Branch such as draft opinions, bench

memoranda, and communications among judges are not part of the record in a case in

court. *See also* 28 U.S.C. § 2112; Fed. R. App. P. 16 & note (imposing the same rule).

Although the APA does not contain a parallel provision prescribing the scope of the

administrative record for informal agency actions (such as the statement of agency

policy here), there is no reason why materials should be treated any differently than

when they are created in a formal proceeding. Indeed, the APA's lack of instruction

and the informal character of the action give the agency more, rather than less,

latitude in deciding what if material to its decision and thus belongs in the record. *See*

*Vermont Yankee Nuclear Power Corp. v. Natural Res. Defense Council*, 435 U.S. 519, 549

(1978) (court may "not stray beyond the judicial province . . . to impose upon the

agency its own notion of which procedures are 'best'").

The district court's efforts to expand the record are particularly anomalous

because of the nature of the decision at issue—a policy determination by the Acting

Secretary to wind down, in an orderly fashion, a previous policy of prosecutorial

discretion that itself created no substantive rights. The decision at issue here, as

explained above and as the government will elaborate upon in its forthcoming

dispositive motion, is an unreviewable exercise of prosecutorial discretion. But even

assuming that the decision is reviewable, it is a policy determination that does not

require the development of any particular evidentiary basis or detailed administrative

record. As this Court has long recognized, "[w]hat will constitute an adequate record

for meaningful review may vary with the nature of the administrative action to be

reviewed." *United States v. Nova Scotia Food Prod. Corp.*, 568 F.2d 240, 249 (2d Cir.

21

1977). Thus, for example, an "agency's obligation to explain its reasoning on the record is less extensive for an interpretive rule." *Yale-New Haven Hosp. v. Leavitt*, 470 F.3d 71, 82 (2d Cir. 2006). The burden is lesser still in cases like this, where there is no "rule" at all, but rather formulation of a policy with respect to prosecutorial discretion.

By insisting at the outset of litigation that components of the Executive Branch compile and review documents that the deciding agency has determined are *not* part of the administrative record on which it rests its decision, the approach taken by the district court here would effectively transform administrative record preparation into an elaborate, judicially supervised discovery process rife with potential disputes, and would require an extraordinary expenditure of time and resources on the part of the Executive and Judicial Branches. It also disregards the "presumption of regularity" that attaches to agency action. *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993) ("[T]he designation of the Administrative Record, like any established administrative procedure, is entitled to a presumption of administrative regularity.").

**2.** The district court compounded its errors by requiring the creation of a privilege log for the purpose of including in the record privileged, deliberative documents. The Supreme Court has emphasized that it is "not the function of the court to probe the mental processes" of the agency. *United States v. Morgan*, 304 U.S. 1, 18 (1938) (*Morgan I*). "Just as a judge cannot be subjected to such a scrutiny . . . so the integrity of the administrative process must be equally respected." *United States v.*

*Morgan*, 313 U.S. 409, 422 (1941) (*Morgan II*). Thus, in *Morgan II*, the Supreme Court emphasized that the trial court had erred in permitting the deposition of the Secretary of Agriculture "regarding the process by which he reached the conclusions of his order, including the manner and extent of his study of the record and his consultation with subordinates." *Id.* The Court concluded: "[T]he short of the business is that the Secretary should never have been subjected to this examination." *Id.*

Here, the *only* apparent purpose of the record expansion is to examine the mental processes of the decisionmaker—to investigate what the Acting Secretary (and her subordinates) thought rather than what she decided. But "agency officials should be judged by what they decided, not for matters they considered before making up their minds." *National Sec. Archive v. CIA*, 752 F.3d 460, 462 (D.C. Cir. 2014). Indeed, as the *en banc* D.C. Circuit has explained, deliberative materials are not merely protected from disclosure—they do not form part of the administrative record at all. *See San Luis Obispo Mothers for Peace*, 789 F.2d 26 (D.C. Cir. 1986). The D.C. Circuit thus denied a motion to supplement the administrative record with transcripts of a closed-door agency meeting regarding the license application at issue. The court explained that "[j]udicial examination of these transcripts would represent an extraordinary intrusion into the realm of the agency," and that the petitioners must make a "'strong showing of bad faith or improper behavior'" before the court would be "warranted in examining the deliberative proceedings of the agency." *Id.* at 44 (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971)). The court

23

analogized an agency's deliberations to the deliberative processes of a court and stated that, "[w]ithout the assurance of secrecy, the court could not fully perform its functions." 789 F.2d at 45; *see also Town of Norfolk v. U.S. Army Corps of Eng'rs*, 968 F.2d 1438, 1455-58 (1st Cir. 1992) (upholding the exclusion of documents from administrative record on attorney-client and deliberative-process privilege grounds); *Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 312-13 (S.D.N.Y. 2012) ("[C]ourts have consistently recognized that, for the purpose of judicial review of agency action, deliberative materials antecedent to the agency's decision fall outside the administrative record."). [3]

The exclusion of deliberative materials from the administrative record is also supported by the considerations akin to those that justify the existence of the privilege for such materials. The purpose of the deliberative process privilege "is to prevent injury to the quality of agency decisions" by ensuring that the "frank discussion of legal or policy matters" in writing, within the agency, is not inhibited by the prospect of public disclosure. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-51 (1975). By exempting deliberative documents from disclosure, the privilege "allow[s] agencies freely to explore possibilities, engage in internal debates, or play devil's advocate

---

[3] This Court's suggestion in *County of Suffolk v. Secretary of Interior*, 562 F.2d 1368 (2d Cir. 1977), that deliberative material outside the administrative record might be properly considered where it was not duplicated somewhere in the record was expressly limited to actions under the National Environmental Policy Act. *See id.* at 1384.

24

without fear of public scrutiny." *Assembly of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992). These goals would be undermined if agencies could be required to include deliberative materials in an administrative record every time an agency action was challenged.

**3.** The limitations on intruding into the decisionmaking process have particular force where, as here, a suit raises claims of discriminatory motive. In *United States v. Armstrong*, 517 U.S. 456, 463-64 (1996), the Supreme Court considered whether criminal defendants could obtain discovery to support a "selective prosecution" claim. The Court recognized that such claims "ask[] a court to exercise judicial power over a 'special province' of the Executive," specifically the "constitutional responsibility to 'take Care that the Laws be faithfully executed.'" *Id.* at 464 (quoting first *Heckler v. Chaney*, 470 U.S. at 832, and U.S. Const. art. II, § 3). The Court explained that a "presumption of regularity supports" prosecutorial decisions and, "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." 517 U.S. at 464 (quoting *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14-15 (1926)). Therefore, before discovery could be permitted in such a suit, the proponent of a selective prosecution claim would have to put forth "clear evidence" of discriminatory intent. 517 U.S. at 464-65.

In *AADC*, the Supreme Court held that an even more restrictive rule was required when the claim of discriminatory motive related to immigration laws because the concerns raised by such claims are "greatly magnified in the deportation context."

25

*AADC*, 525 U.S. at 489. The Court recognized that heightened separation of powers concerns arise in this context because discovery may intrude into the conduct of foreign affairs and safeguarding of national security by the Executive Branch. Requests for information could lead to disclosure of not only "normal domestic law enforcement priorities and techniques," but also "disclosure of foreign-policy objective and [in some cases, like *AADC* itself,] foreign-intelligence products and techniques." *Id.* at 490. The Court dismissed "[t]he contention that a violation [of federal law] must be allowed to continue because it has been improperly selected" as "not powerfully appealing." *Id.* at 491. For these reasons, the Court held that "[w]hen an alien's continuing presence in this country is in violation of the immigration laws," the government did not violate the Constitution by basing its deportation decision in part on activity protected by the First Amendment. *Id.* at 491-92. This "general rule" was subject only to the "possibility of a rare case in which the alleged basis of discrimination was so outrageous that the foregoing considerations can be overcome." *Id.* at 491.

Nor is discovery any more justified with respect to plaintiffs' other claims. For example, the district court's October 17 order noted that one of plaintiffs' claims is "that Defendants violated the Due Process Clause of the Fifth Amendment by failing to provide individualized notice to DACA recipients who were eligible to renew their deferred action and work authorization that they needed to do so prior to October 5, 2017, not just 'as soon as possible.'" Add. 3. On its face, this allegation presents a legal

issue that can be addressed without any discovery; the allegation certainly does not justify the intrusive discovery authorized by the district court. Indeed, the district court itself recognized that the claims such as this one "do not challenge the decision to end the DACA program, but instead challenge how Defendants communicated that decision to DACA beneficiaries." *Id.*

Similarly, the district court noted that the "State Plaintiffs also contend that Defendants violated the Fifth Amendment Due Process Clause and principles of equitable estoppel by changing the Government's policy regarding how information derived from DACA applications would be used for immigration-enforcement purposes." Add. 3-4. Even assuming that the State Plaintiffs have standing to raise this argument and that it presents a ripe controversy—matters that should be addressed at the threshold stage—this claim too provides no basis to "probe the mental processes of agency decisionmakers," *NLRB v. County Waste of Ulster*, 455 Fed. Appx. 32, 35 (2d Cir. 2012). The question whether equitable estoppel applies is a legal one that does not require further factual development.

**4.** The district court's orders had the practical effect, until this Court entered a stay, of imposing significant and intrusive burdens on a co-equal branch of government. The initial searches conducted by DHS components have resulted in the collection for potential review of over 1 million documents for these cases and those pending in California. *See* Add. 20. Every full-time lawyer on the litigation team at DHS headquarters has been assigned to review documents in the various DACA

27

cases, and lawyers have also been diverted from other legal practice areas. Add. 24-25. Customs and Border Protection had to put on hold all of its electronic discovery computer resources ordinarily used for other cases, and Immigrations and Customs Enforcement has pulled agency counsel and personnel from immigration court appearances and other regular duties, to assist with discovery in these cases. Add. 34. U.S. Citizenship and Immigration Services likewise had to shift to discovery agency personnel who normally would be providing legal guidance on a wide array of issues. Add. 27-28. These efforts are already compromising DHS's ability to meet its other legal and programmatic obligations. *See, e.g., id.* (describing delays to "other litigation obligations" and "an ongoing critical surveillance operation"). Agency officials estimate that additional burdens would be necessary to locate materials that fall within plaintiffs' expansive understanding of the administrative record. *See, e.g.*, Add. 28. Moreover, plaintiffs have conducted and requested depositions of high-level government officials that have called and would almost certainly continue to call for testimony regarding sensitive privileged matters. And the Department of Justice faces additional burdensome obligations, Add. 37, for documents the majority of which are entirely privileged.

Plaintiffs, on the other hand, suffer no harm from the delay in discovery, expansion of the administrative record, or submission of the privilege log. This Court thus correctly granted a stay. The briefing schedule for dispositive motions will not be affected, and the receipt of guidance from this Court will eliminate areas of dispute

between the parties and help to speed resolution of plaintiffs' claims. The stay that this Court entered in this case accords with routine practice while this Court considers mandamus petitions. *See, e.g., In re The City of New York*, 607 F.3d 923, 932 (2d Cir. 2010); *In re Steinhardt Partners, L.*P., 9 F.3d 230, 233 (2d Cir. 1993).

\*     \*     \*

In sum, the rulings at issue contain clear, significant, and irreparable errors that amply warrant this Court's mandamus review, errors that are symptomatic of a pervasive misunderstanding of the nature of this litigation. It will almost certainly be possible to resolve this litigation the multiple threshold legal grounds identified above, without the need for any discovery or record supplementation. But neither the district court nor this Court need assume that conclusion here. It is sufficient at this point to conclude that the district court should not countenance discovery or mandate "completion" of the record without considering the government's threshold arguments, and as necessary, reviewing the other legal issues the government has raised in response to plaintiffs' challenges. At this juncture, before any such review has taken place, discovery and record supplementation should be halted.

## CONCLUSION

For the foregoing reasons, this Court, having granted an immediate stay to permit it to consider this petition for writ of mandamus, should grant that petition

29

and stay discovery and supplementation of the administrative record (including any

privilege-log requirements).

Respectfully submitted,

CHAD A. READLER
  *Acting Assistant Attorney General*

HASHIM M. MOOPPAN
  *Deputy Assistant Attorney General*

MARK B. STERN
ABBY C. WRIGHT
THOMAS PULHAM
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2000*

OCTOBER 2017

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the word limit of Federal Rule of Appellate Procedure 21(d)(1) because the motion contains 7,492 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f). I further certify that this motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared using Microsoft Word 2013 in a proportionally spaced typeface, 14-point Garamond font.

s/ Mark B. Stern
MARK B. STERN

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2017, I electronically filed the foregoing

with the Clerk of the Court by using the appellate CM/ECF system. All counsel in

this case are participants in the district court's CM/ECF system.

s/ Mark B. Stern

MARK B. STERN