# 17-3345

## United States Court of Appeals
## for the Second Circuit

In Re: ELAINE C. DUKE, Acting Secretary of Homeland Security.

ELAINE C. DUKE, Acting Secretary of Homeland Security, JEFFERSON B. SESSIONS III, United States Attorney General, DONALD J. TRUMP, President of the United States, UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, UNITED STATES OF AMERICA,

*Petitioners*,

v.

MARTIN JONATHAN BATALLA VIDAL, MAKE THE ROAD NEW YORK, ANTONIO ALARCON, ELIANA FERNANDEZ, CARLOS VARGAS, MARIANO MONDRAGON, CAROLINA FUNG FENG, on behalf of themselves and all other similarly situated individuals, STATE OF NEW YORK, STATE OF MASSACHUSETTS, STATE OF WASHINGTON, STATE OF CONNECTICUT, STATE OF DELAWARE, DISTRICT OF COLUMBIA, STATE OF HAWAII, STATE OF ILLINOIS, STATE OF IOWA, STATE OF NEW MEXICO, STATE OF NORTH CAROLINA, STATE OF OREGON, STATE OF PENNSYLVANIA, STATE OF RHODE ISLAND, STATE OF VERMONT, STATE OF VIRGINIA, STATE OF COLORADO,

*Respondents*.

On Petition for a Writ of Mandamus to the United States District Court for the Eastern District of New York

## BRIEF FOR RESPONDENT STATES IN OPPOSITION TO PETITION FOR A WRIT OF MANDAMUS

BARBARA D. UNDERWOOD
  *Solicitor General*
ANISHA S. DASGUPTA
  *Deputy Solicitor General*
DAVID S. FRANKEL
  *Assistant Solicitor General*
    *of Counsel*

ERIC T. SCHNEIDERMAN
  *Attorney General*
  *State of New York*
120 Broadway
New York, NY 10271
(212) 416-6197

Dated: November 14, 2017

*(Counsel listing continues on signature pages.)*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................iii

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF THE CASE ................................................................. 3

    A.   Establishment and Termination of DACA ............................... 3

    B.   This Suit ...................................................................... 10

        1.   Initial proceedings in district court ................................. 10

        2.   The petition for mandamus ............................................ 12

        3.   The motion to dismiss .................................................. 13

ARGUMENT ........................................................................................ 15

POINT I

   THE PETITION SHOULD BE DISMISSED AS MOOT ................................ 15

POINT II

   ALTERNATIVELY, THE PETITION SHOULD BE DENIED ........................... 17

    A.   Petitioners Do Not Qualify for Mandamus Relief from
       the District Court's Rulings on the Record for Review. ......... 18

        1.   Courts, including this Court, have routinely ordered
           agencies to complete an incomplete administrative
           record.................................................................... 18

           a.   The district court's obligation to direct
              completion of the administrative record ................. 19

           b.   The proper scope of the record ................................ 22

**Page**

2. The requirement to produce a privilege log follows naturally from the requirement to produce a complete administrative record. .......................................28

B. The District Court's Partial Denial of Petitioners' Rule 12(b)(1) Motion Is Not a Predicate for Mandamus Relief. .....31

1. Petitioners' termination of DACA may be reviewed for compliance with the applicable constitutional and statutory limits. ..........................................34

2. 8 U.S.C. § 1252(g)'s jurisdictional bar does not apply here. ....................................................................39

CONCLUSION ......................................................41

ii

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Alfred L. Snapp & Son v. Puerto Rico ex rel. Barez,*
    458 U.S. 592 (1982) ................................................................ 34

*Amerijet Int'l, Inc. v. Pistole,*
    753 F.3d 1343 (D.C. Cir. 2014) ............................................ 6

*Balintulo v. Daimler AG,*
    727 F.3d 174 (2d Cir. 2013) ............................................ 6, 32

*Bar MK Ranches v. Yuetter,*
    994 F.2d 735 (10th Cir. 1993) ............................................ 23

*Bethlehem Steel Corp. v. United States Envtl. Protection Agency,*
    638 F.2d 994 (7th Cir. 1980) ................................................ 24

*Cheney v. United States Dist. Ct. for D.C.,*
    542 U.S. 367 (2004) ............................................................ 30

*Citizens to Preserve Overton Park v. Volpe,*
    401 U.S. 402 (1971) ............................................................ 18

*County of Suffolk v. Secretary of the Interior,*
    562 F.2d 1368 (2d Cir. 1977) .............................................. 24

*Crowley Caribbean Transp., Inc. v. Peña,*
    37 F.3d 671 (D.C. Cir. 1994) .............................................. 37

*Dinler v. City of New York (In re City of New York),*
    607 F.3d 923 (2d Cir. 2010) ..................................... 17, 30, 31

*Dopico v. Goldschmidt,*
    687 F.2d 644 (2d Cir. 1982) ...................................... passim

*FCC v. Fox Television Stations, Inc.,*
    556 U.S. 502 (2009) ............................................................ 22

iii

**Cases**                                                                        **Page(s)**

*Gill v. Department of Justice,*
No. 14-cv-120, 2015 WL 9258075 (N.D. Cal. Dec. 18, 2015) .............. 28

*Heckler v. Chaney,*
470 U.S. 821 (1985) ........................................................................... 37

*Hillsdale Envtl. Loss Prevention, Inc. v. United States Army Corps of Eng'rs,*
No. 10-cv-2008, 2011 WL 1102868 (D. Kan. Mar. 23, 2011) .............. 28

*INS v. St. Cyr,*
533 U.S. 289 (2001) ........................................................................... 33

*Judulang v. Holder,*
565 U.S. 42 (2011) ........................................................................ 22, 25

*Kenney v. Glickman,*
96 F.3d 1118 (8th Cir. 1996) ............................................................. 37

*Mach Mining, LLC v. EEOC,*
135 S. Ct. 1645 (2015) ....................................................................... 32

*McNary v. Haitian Refugee Ctr., Inc.,*
498 U.S. 479 (1991) ........................................................................... 33

*National Audubon Society v. Hoffman,*
132 F.3d 7 (2d Cir. 1997) .................................................................. 27

*National Courier Ass'n v. Board of Governors of the Fed. Reserve Sys.,*
516 F.2d 1229 (D.C. Cir. 1975) .......................................................... 24

*National Small Shipments Traffic Conf., Inc. v. Interstate Commerce Comm'n,*
725 F.2d 1442 (D.C. Cir. 1984) .......................................................... 24

*Natural Resources Defense Council, Inc. v. Train,*
519 F.2d 287 (D.C. Cir. 1975) ........................................................... 20

iv

**Cases**                                                                 **Page(s)**

*New York City Employees' Retirement Sys. v. SEC*,
    45 F.3d 7 (2d Cir. 1995) ...................................................... 36

*New York City Employees' Retirement System v. Dole Food Co.*,
    969 F.2d 1430 (2d Cir. 1992) ............................................. 16

*New York v. Salazar*,
    701 F. Supp. 2d 224 (N.D.N.Y. 2010) .................................. 28

*Portland Audubon Soc'y v. Endangered Species Comm'n*,
    984 F.2d 1534 (9th Cir. 1993) ............................................ 24

*Reno v. American-Arab Anti-Discrimination Committee*,
    525 U.S. 471 (1999) .................................................... 14, 39

*Salazar v. King*,
    822 F.3d 61 (2d Cir. 2016) ................................................ 33

*Salomon Bros. Treas. Litig. v. Steinhardt Partners, L.P.* (*In re Steinhardt Partners, L.P.*),
    9 F.3d 230 (2d Cir. 1993) ...................................... 27, 30, 36

*San Luis Obispo Mothers for Peace v. United States Nuclear Regulatory Commission*,
    789 F.2d 26 (D.C. Cir. 1986) ............................................. 30

*Texas v. United States*,
    809 F.3d 134 (5th Cir. 2015) ..................................... passim

*Thompson v. United States Dep't of Labor*,
    885 F.2d 551 (9th Cir. 1989) ........................................ 21, 23

*United States v. Armstrong*,
    517 U.S. 456 (1996) .......................................................... 35

*United States v. Construction Prods. Research, Inc.*,
    73 F.3d 464 (2d Cir. 1996) ................................................ 28

*United States v. Sanchez*,
    517 F.3d 651 (2d Cir. 2008) .............................................. 36

**Cases**                                                    **Page(s)**

*United States v. Texas,*
136 S. Ct. 2271 (2016) ............................................................. 6

*Wade v. United States,*
504 U.S. 181 (1992) ............................................................... 36

*Walter O. Boswell Mem'l Hosp. v. Heckler,*
749 F.2d 788 (D.C. Cir. 1984) ...................................... 20, 21

*Washington v. Trump,*
847 F.3d 1151 (9th Cir. 2017) ............................................ 34

*Webster v. Doe,*
486 U.S. 592 (1988) ....................................................... 33, 35

**Laws**

5 U.S.C.
§ 701(a)(2) .......................................................................... 34
§ 706 .................................................................................... 18

8 U.S.C.
§ 1252(g) ..................................................................... passim
§ 1324a ............................................................................ 5, 37

**Miscellaneous Authorities**

Hearing on Oversight of the Justice Department, before S.
Comm. on Judiciary (Oct. 18, 2017),
https://www.judiciary.senate.gov/meetings/10/18/2017/oversig
ht-of-the-us-department-of-justice ................................ 25, 28

U.S. Dep't of Commerce, Nat'l Oceanic & Atmospheric Admin.,
Guidelines for Compiling an Administrative Record (Dec. 21,
2012), www.gc.noaa.gov/documents/2012/
AR_Guidelines_122112-Final.pdf ................................ 23, 29

**Miscellaneous Authorities** **Page(s)**

U.S. Dept' of Justice, Env't & Natural Resources Div., Guidance
to Federal Agencies on Compiling the Administrative Record
(Jan. 1999), http://environment.transportation.org/pdf/
programs/usdoj_guidance_re_admin_record_prep.pdf ................ 23, 29

U.S. Dep't of Justice, Office of Legal Counsel, "Department of
Homeland Security's Authorization to Prioritize Removal of
Certain Aliens Unlawfully Present in the United States and to
Defer Removal of Others" (Nov. 19, 2014), 2014 WL 10788677 .......... 8

U.S. Dep't of the Interior, Standardized Guidance on Compiling a
Decision File and Administrative Record (June 27, 2006),
https://www.fws.gov/policy/e1282fw5.pdf ..................................... 23, 29

United States Br., *United States v. Texas*, 136 S. Ct. 2271
(2016) (No. 15-674), 2016 WL 836758 ..................................... 4, 6, 7, 9

## PRELIMINARY STATEMENT

The respondent States—New York, fifteen other States, and the District of Columbia—brought one of the suits underlying this mandamus action to contest petitioners' termination of the nationwide program known as Deferred Action for Childhood Arrivals (DACA). Since 2012, DACA has provided protection from deportation and extended work authorization to approximately 800,000 young people who were brought to this country as children and have known no home other than the United States. Petitioners' termination of DACA had the effect of revoking those benefits, greatly injuring DACA grantees, their families, their communities, and their employers—which include respondent States.

The States seek judicial review of legal questions raised by petitioners' conduct in terminating DACA, including petitioners' failure to adequately explain their reasons for concluding that termination was required. Because some of the States' claims arise under the Administrative Procedure Act (APA), petitioners were required to provide an administrative record.

Petitioners submitted a proposed record that by their own acknowledgment contained only select public documents actually

considered by one of the agency decisionmakers that petitioners identified to the district court, as opposed to the documents that were before the relevant agencies as part of the decisional process. Accordingly—consistent with this Court's decision in *Dopico v. Goldschmidt*, 687 F.2d 644, 654 (2d Cir. 1982)—the U.S. District Court for the Eastern District of New York (Garaufis, J.) ordered petitioners to complete the record. The court also ordered them to submit a log listing the documents they were withholding as privileged. Although petitioners sought and received several orders narrowing the scope of their required production and extending their deadlines for submission of the record, they nonetheless commenced a mandamus proceeding in this Court, complaining that the relief granted by the district court was not sufficiently extensive.

The mandamus petition asked this Court to direct the district court to stay all discovery and supplementation of the record pending the resolution of certain justiciability issues that petitioners had yet to present to the district court. After entering a temporary stay, this Court deferred resolution of the petition to allow the district to receive briefing

and consider those issues. The district court did so promptly, concluding that the States' suit is justiciable.

Petitioners have thus received all the relief they requested in their mandamus petition, which should now be dismissed as moot. The Court should reject any attempt that petitioners may make on reply to obtain interlocutory review of the district court's jurisdictional ruling outside of the procedures of 28 U.S.C. § 1292(b), or belatedly recast their petition as seeking that relief.

Alternatively, the petition should be denied because the district court's rulings follow directly from governing precedents of the Supreme Court and this Court and are therefore not a predicate for mandamus relief. The district court committed no error—let alone any error so egregious as to warrant the extraordinary remedy of mandamus.

## STATEMENT OF THE CASE

### A.    Establishment and Termination of DACA

Since the 1960s, the Department of Homeland Security (DHS) and its predecessors have established more than 20 "deferred action" or "similar" programs for "large groups of individuals in defined categories,"

3

who thereby received certain protections from removal. U.S. Br. 5, *United States v. Texas* (No. 15-674 (U.S.)), 2016 WL 836758. Receipt of "work authorization has long been tied" to the grant of deferred action. *Id.* at 7. And "Congress has repeatedly enacted legislation that takes as a given DHS's authority" to grant deferred action and work authorization to those large groups of individuals. *Id.* at 6.

In June 2012, DHS issued a memorandum establishing one such program, DACA, which allowed certain undocumented individuals who were brought to the United States as children to request deferred action and work authorization for a two-year period, subject to renewal. States' First Am. Compl. ("Compl.") Ex. 13, *State of New York v. Trump*, No. 17-cv-5228 (E.D.N.Y.), ECF Nos. 54 & 55.[1] From June 2012 until September 2017, more than 800,000 individuals relied on DACA to obtain deferred action and employment authorization, including more than 100,000 individuals residing in the respondent States. Compl. ¶¶ 36, 102, 104, 107, 109, 112, 114 & Ex. 1 (U.S. Citizenship & Immigration Fact Sheet).

---

[1] Unless otherwise noted, all ECF citations refer to *State of New York v. Trump*. The cited record documents also are included in the accompanying addendum.

4

DACA allowed these individuals to pursue higher education, secure employment, and create and run businesses. *Id.* ¶ 36; Pls.' Compl. ¶¶ 52-60, *Trustees of Princeton Univ. v. United States*, No. 17-cv-2325 (D.D.C. filed Nov. 3, 2017), ECF No. 1. The respondent States significantly benefited from the DACA program, as they were able to employ grantees with special skills, tax the grantees' income and purchases, and collect tuition from grantees enrolled at public colleges and universities. Compl. ¶¶ 189-232; 8 U.S.C. § 1324a(a), (e) (imposing penalties on employers of persons who lack authorization to work).

In 2015, Texas and several other States brought a suit contending that in creating a different deferred action program for certain parents of citizens and permanent residents (DAPA)[2]—and in making certain changes to the DACA program in 2014—DHS failed to comply with the APA's procedural requirements, acted in a substantively unreasonable manner, and violated the U.S. Constitution. *See Texas v. United States*, 809 F.3d 134, 149 (5th Cir. 2015), *aff'd by an equally divided court*, *United States v. Texas*, 136 S. Ct. 2271 (2016). The Fifth Circuit held that

---

[2] The program's formal name is the Deferred Action for Parents of Americans and Lawful Permanent Residents.

the suit was justiciable because DHS's programmatic policy choices were neither "committed to agency discretion by law" within the meaning of 5 U.S.C. § 701(a)(2), nor subject to the narrow jurisdiction-stripping of 8 U.S.C. § 1252(g) of the Immigration and Nationality Act (INA). *Texas*, 809 F.3d at 163-70. The Fifth Circuit also concluded that the *Texas* plaintiffs were likely to prevail on their claim that DHS's actions violated the APA's procedural requirements, *id.* at 178, and conflicted with the INA's "specific and intricate provisions," *id.* at 186. Like the *Texas* district court, the Fifth Circuit did not address those plaintiffs' constitutional claims. *See id.* at 146.

The federal government sought and obtained Supreme Court review. In its 2016 briefs to the Supreme Court, the government vigorously defended the lawfulness—including the constitutionality—of DAPA and DHS's 2014 changes to DACA. *See* U.S. Br. 73-76, *Texas* (No. 15-674 (U.S.)). The Supreme Court affirmed the Fifth Circuit by an equally divided court. 136 S. Ct. 2271 (per curiam).

Nearly 78% of all DACA grantees are of Mexican origin. Compl. ¶ 6 & Ex. 1. While running for President in 2016, then-candidate Trump made a number of disparaging public statements about Mexicans,

6

asserting—among other things—that Mexican immigrants were "rapists" who were "bringing drugs" and "bringing crime" to the United States. *Id.* ¶ 58; *see also id.* ¶¶ 59-61. He suggested that a judge of Hispanic heritage was too "pro-Mexican" to be impartial in a case relating to Trump's private business, and referred to immigrants from Mexico as "bad hombres." *Id.* ¶¶ 60-65 & Exs. 40-42, 44.

More recently, in August 2017, President Trump pardoned former Maricopa County Sherriff Joe Arpaio, who had been convicted of contempt for failing to obey a judicial order to stop racially profiling Latinos. *Id.* Ex. 46. Prior to issuing this pardon, President Trump stated that Arpaio had been convicted "for doing his job." *Id.*

On September 5, 2017, Attorney General (AG) Sessions announced the termination of DACA at a press conference, making several claims about the program that contradicted the federal govern–ment's representations to the Supreme Court in *Texas*, and for which he offered no evidence—such as the claim that DACA resulted in American citizens losing job opportunities. *Compare id.* Ex. 75, *with* U.S. Br. 16, *Texas* (No. 15-674 (U.S.)) (deferred action "mitigates competitive harm to American workers" (quotation marks omitted)). In addition, he referenced a letter

7

from the *Texas* plaintiffs in which they threatened to challenge DACA in court unless the government revoked it. Compl. Ex. 177.

That same day, DHS issued a memorandum announcing the termination of DACA. *Id.* Ex. 74. The memorandum states that DACA was terminated based on perceived litigation risk, citing a one-page letter from AG Sessions that claimed the DACA program was not "constitutional," but provided no support for that assertion beyond a citation to the Fifth Circuit's decision in *Texas v. United States*, which did not in fact consider that issue. *Id.* The memorandum and letter entirely ignore that the leadership of DHS and the Department of Justice (DOJ) had previously concluded that DACA was lawful, defended it against multiple challenges, and maintained the program well into the current Administration. *See* Compl. Exs. 23, 74. The memorandum likewise fails to address the extensive 2014 opinion by the Office of Legal Counsel and briefs submitted by DOJ to the U.S. Supreme Court in 2016 concluding DAPA and DACA are fully lawful. *See* U.S. DOJ, Office of Legal Counsel, "Department of Homeland Security's Authorization to Prioritize Removal of Certain Aliens Unlawfully Present in the United

8

States and to Defer Removal of Others" (Nov. 19, 2014), 2014 WL 10788677; U.S. Br., *Texas* (No. 15-674 (U.S.)).

Also on September 5, DHS stopped accepting new DACA applications, and limited renewal applications only to DACA grantees whose benefits will expire before March 5, 2018, provided they applied for renewal by October 5, 2018. Compl. ¶ 5 & Ex. 74. DHS did not correct the individualized notices it had previously sent DACA grantees to reflect the new October 5 deadline. *Id.* ¶¶ 93-95, 274-280. DHS has also implemented changes to its privacy policies which permit the agency to share information about immigrants with federal, state, and local law enforcement. *Id.* ¶ 8, 89 & Exs. 51, 74, 89. And although the government had promised that information provided by DACA applicants would be affirmatively "protected from disclosure," DHS now advises only that it will not "proactively" provide such information "for the purpose of immigration enforcement proceedings." *Id.* Ex. 25-28, 89.

The termination of the DACA program will result in—among other things—a loss of work authorization for hundreds of thousands of currently employed grantees, depriving them of steady incomes and health benefits. *Id.* ¶¶ 3, 190, 195, 209, 219, 226, 231. These losses will

damage state and municipal economies, and reduce state and local tax revenues. In addition, the States will be forced to discharge the DACA grantees whom they currently employ, incurring the costs, administrative burdens, and disruptions associated with finding and training new employees.

## B.    This Suit

### 1.    Initial proceedings in district court

The States filed suit on September 7, 2017, alleging that the termination of DACA was driven by discriminatory animus, in violation of the Equal Protection Clause and the APA; failed to comply with the procedural requirements of the APA and Regulatory Flexibility Act; and was otherwise arbitrary and capricious. Compl. ¶¶ 233-239, 253-273. The States also alleged that petitioners failed to sufficiently notify DACA recipients of the program's end and the limited renewal window, in violation of the Due Process Clause, and that petitioners appeared to be no longer protecting the sensitive information that DACA grantees had been induced to provide, in violation of the Due Process Clause and common-law equitable estoppel. *Id.* ¶¶ 240-252, 274-280.

10

On September 27, 2017, the magistrate judge supervising discovery directed petitioners to promptly produce an administrative record and a privilege log documenting any record materials that petitioners were withholding as privileged. Case Mgmt. & Sched. Order at 1, ECF No. 46. The district court extended the deadline for submitting the privilege log to October 20, 2017. Order at 4 (Oct 3, 2017), ECF No. 51. The court also twice narrowed the scope of the record and the log in response to petitioners' requests, ultimately limiting those to materials considered by the heads of DHS and DOJ and their first-tier subordinates. Mem. & Order at 7 (Oct. 17, 2017), ECF No. 63; Mem. & Order at 10-11 (Oct. 19, 2017), ECF No. 66.

On October 6, petitioners produced a 256-page administrative record consisting of the nonprivileged documents "actually considered" by Acting Secretary Duke "as part of her decision" to rescind DACA. Response in Opp'n at 1, *Batalla Vidal v. Baran*, No. 16-cv-4756, ECF No. 85 ("DOJ Oct. 16 Ltr."). Respondents moved to complete the administrative record, arguing that a set of publicly available, hand-picked materials personally viewed by one of the two agency heads

11

responsible for the termination was not the whole record that informed the agency's decisional process.[3]

On October 19, 2017, the magistrate judge ordered petitioners to complete the record, and gave them a further extension of time—until October 27, 2017—to do so, and to produce a privilege log. Mem. & Order at 3 (Oct. 19, 2017), ECF No. 65. Also on that day, the district court denied petitioners' motion to stay discovery pending their filing of a mandamus petition,[4] and issued its second ruling narrowing the scope of the privilege log.

## 2.  The petition for mandamus

Unsatisfied with the relief provided by the district court, petitioners asked this Court for an emergency temporary stay of all discovery, pending their filing of a full petition for mandamus. CA2 No. 17-3345, ECF No. 1. The following day, a judge of this Court issued an emergency

---

[3] Petitioners have previously identified AG Sessions as a decisionmaker in this case. *Batalla Vidal* Pl.-Resps.' Add. to Answer to Pet. 144, 155, 157, CA2 ECF No. 55.

[4] In addition to seeking the complete administrative record, the States had also issued two interrogatories and associated document requests to pursue their information-protection claims.

stay, contingent on petitioners filing their full petition by October 23. Mot. Order (Oct. 20, 2017), CA2 ECF No. 23.

In the full mandamus petition, petitioners argued that the district court had improperly allowed overbroad discovery before considering whether this suit was justiciable. Pet. 29 (Oct. 23, 2017), CA2 ECF No. 33. Focusing on why discovery was "improper at this juncture," petitioners asked the Court to stay discovery "pending the resolution of threshold legal questions" that they had not yet presented to the district court. Pet. 4.

The next day, this Court held oral argument and issued an order extending the stay of discovery pending resolution of the mandamus petition. Order (Oct. 24, 2017), CA2 ECF No. 41. The Court instructed the district court to decide "expeditiously" the "issues of jurisdiction and justiciability" that petitioners had argued should precede any discovery. And the Court held disposition of the petition "until such time as the district court" resolved those issues. *Id.*

### 3. The motion to dismiss

The district court directed the parties to complete briefing on threshold jurisdictional and justiciability issues by November 1 (Order

(Oct. 24, 2017) (docket text)), and resolved those issues in a November 9 opinion (Mem. & Order on Mot. to Dismiss, ECF No. 85 ("MTD Op.")).

Consistent with the Supreme Court's decision in *Webster v. Doe*, 486 U.S. 592 (1988), the district court held that respondents could raise constitutional claims even if—as petitioners asserted—the termination was committed to agency discretion within the meaning of 5 U.S.C. § 701(a)(2). MTD Op. 26-27. And consistent with the Fifth Circuit's decision in *Texas v. United States*, the district court held that the termination did not in any event fall within § 701(a)(2) because it was a change in national policy rather than a determination to refrain from a specific enforcement measure in an individual case. *Id.* 23-26. Finally, adhering to the Supreme Court's decision in *Reno v. American-Arab Anti-Discrimination Committee* (*"AADC"*), 525 U.S. 471 (1999), the Court held that 8 U.S.C. § 1252(g) did not divest it of jurisdiction over this suit, because terminating a program affecting 800,000 persons is not a decision to "commence proceedings, adjudicate cases, or execute removal orders" against a particular alien. MTD Op. 28-31 (quoting 8 U.S.C. § 1252(g)).

The district court also determined that the States had standing to challenge the termination of DACA based on their employment of DACA grantees. *Id.* 38-40. It ruled that the States lacked standing to (i) assert information-protection claims arising from DHS's withdrawal of privacy protections, or (ii) contest the manner in which petitioners notified DACA recipients of the program's termination and the timeframe for the final permissible renewal of DACA status. *Id.* 41-46.

## ARGUMENT

### POINT I

#### THE PETITION SHOULD BE DISMISSED AS MOOT

Petitioners sought mandamus from this Court shortly after receiving relief from the district court on their discovery requests. MTD Op. 17. See *supra* at 12-13. Complaining that the relief was not sufficiently extensive, they argued that the district court had erred by permitting supposedly overbroad discovery at "this juncture" of the case, "in disregard of the existence of threshold bars" that should be briefed and decided at the outset. Pet. 4, 16; *see also id.* 17-18, 29. Petitioners asked this Court to "direct the district court to stay all discovery and supplementation of the administrative record pending the resolution of

[those] threshold legal questions," which they had not yet presented to the district court. *Id.* 4; *see also id.* 29-30; MTD Op. 16.

The Court temporarily stayed discovery and remanded this matter to give the district court an opportunity to consider and decide petitioners' "issues of jurisdiction and justiciability." Oct. 24 Order, CA2 ECF No. 41. The district court did so promptly, ordering the completion of briefing on threshold jurisdictional and justiciability issues by November 1, and issuing its decision on November 9.

The district court's resolution of the threshold dispute about its power to hear the case provides petitioners with all the relief they requested in their mandamus petition, and the petition must therefore be dismissed as moot. *See, e.g., New York City Employees' Retirement System v. Dole Food Co.,* 969 F.2d 1430, 1433 (2d Cir. 1992). To construe the October 23 petition as seeking mandamus review of the *merits* of the district court's November 9 jurisdictional ruling would be at odds with the plain terms of the petition as well as inconsistent with the settled principle that a mandamus petition may not be used to circumvent 28 U.S.C. § 1292(b)'s procedures for obtaining interlocutory review. *See, e.g., Balintulo v. Daimler AG*, 727 F.3d 174, 87 (2d Cir. 2013).

16

Accordingly, this Court should reject any attempt that petitioners may make on reply to obtain review of the district court's jurisdictional ruling, or belatedly recast their petition as seeking that relief. Nor can the well-reasoned and well-supported rulings of the court below be characterized as so plainly erroneous as to justify granting the extraordinary remedy of mandamus relief under some unarticulated theory, as demonstrated below.

## POINT II

### ALTERNATIVELY, THE PETITION SHOULD BE DENIED

Mandamus is an extraordinary remedy, reserved for "exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion." *Dinler v. City of New York* (*In re City of New York*), 607 F.3d 923, 932 (2d Cir. 2010) (quotation marks omitted). A party seeking the writ must have (1) "no other adequate means to attain the relief [it] desires," (2) the writ must be "appropriate under the circumstances," and (3) "the petitioner must demonstrate that the right to issuance of the writ is clear and indisputable." *Id.* at 932-33 (quotation marks omitted).

17

This Court has "expressed reluctance to issue writs of mandamus to overturn discovery rulings," and has done so only "when a discovery question is of extraordinary significance or there is extreme need for reversal of the district court's mandate before the case goes to judgment." *Id.* at 939 (quotation marks omitted).

## A. Petitioners Do Not Qualify for Mandamus Relief from the District Court's Rulings on the Record for Review.

### 1. Courts, including this Court, have routinely ordered agencies to complete an incomplete administrative record.

APA claims must be "judged against the record *as a whole*." *Dopico*, 687 F.2d at 654.[5] And as this Court has made clear, when an agency fails to produce the whole record, a reviewing court must order completion of the record. *Id.*

The district court followed these well-established principles in directing petitioners to complete a deficient administrative record that they compiled based on an incorrect legal standard. Petitioners'

---

[5] *See also Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 419 (1971) (basis for review" of APA claims is "the 'whole record' compiled by the agency"); 5 U.S.C. § 706 ("court shall review the whole record").

production of only those documents they have decided are relevant (*see* Pet. 22)—as opposed to the documents that were actually before the agency decisionmakers here—does not meet their obligation under the APA to produce the whole administrative record. The district court was thus not merely authorized, but obligated, to compel completion of the administrative record.

### a. The district court's obligation to direct completion of the administrative record

In *Dopico*, this Court held that where plaintiffs bringing APA claims dispute the completeness of the administrative record produced by the agency, a district court should not decide the case on the disputed record without first verifying that the record is complete. 687 F.2d at 654 (reversing and remanding for "further consideration of the A.P.A. claim following appropriate discovery as to the completeness of the administrative record"). This Court explained that "[d]etermining what constitutes an agency's informational base is vital" and that this "determination may itself present a disputed issue of fact when there has been no formal administrative proceeding." *Id.* As the Court emphasized, "that defendants presented documents that seemed to support the

19

rationality of their actions does not mean that the same conclusion would have been reached if the Court had been aware of other information that was before the agency." *Id.*

This Court thus made clear that—contrary to the position urged by petitioners here (Pet. 2)—a district court cannot "properly grant summary judgment" on a disputed administrative record "without at least permitting plaintiffs some limited discovery to explore whether some portions of the full record were not supplied." 687 F.2d at 654. The Court underscored that an agency's claim to "have submitted the full record will not substitute for [a court's] independent consideration of that issue after some opportunity for discovery." *Id.*; *see also Natural Resources Defense Council, Inc. v. Train*, 519 F.2d 287, 292 (D.C. Cir. 1975) (same).

As the D.C. Circuit has explained when confronting the same issue, allowing an agency to selectively omit parts of the record would permit the agency to insulate its decisions by "withhold[ing] evidence unfavorable to its case." *Walter O. Boswell Mem'l Hosp. v. Heckler*,

749 F.2d 788, 792 (D.C. Cir. 1984).[6] "For review to go forward on a partial record," a reviewing court "would have to be convinced that the selection of particular portions of the record was the result of mutual agreement between the parties *after both sides had fully reviewed the complete record*." *Id.* at 793 (emphasis added). Anything else would be "fundamentally unfair" to an APA plaintiff. *Id.* This is because, in light of the "asymmetry in information" between the plaintiff and the agency, there would otherwise "be no check upon the failure of the agency to disclose information adverse to it." *Id.* at 792. Put another way, in the particular context of an APA case, "the normal pressures towards inclusion of all relevant material in the record before the court are absent." *Id.* Thus, a district court must endeavor to "obtain the full administrative record" before deciding an APA claim. *Id.* (remanding for that purpose where agency had not submitted complete record below).

---

[6] *See also Thompson v. United States Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) ("The whole administrative record, however, is not necessarily those documents that the *agency* has compiled and submitted as the administrative record." (quotation marks omitted)).

21

### b.   The proper scope of the record

Consistent with these governing precedents, the district court properly rejected petitioners' assertions that they need not provide the court with the documents that were actually before the agency decisionmakers here, but can instead withhold any documents "the deciding agency has determined are not part of the administrative record on which it rests its decision" (Pet. 22 (emphasis omitted)). As the Supreme Court has made clear, APA review encompasses consideration of whether the agency arbitrarily disregarded any items it should have considered, and this is no less true where a legal policy determination (*see* DOJ Oct. 16 Ltr. at 4, 6) is concerned. *Judulang v. Holder*, 565 U.S. 42, 58 (2011). For example, when an agency changes its position on a policy matter, there may be "serious reliance interests that must be taken into account," such that "[i]t would be arbitrary or capricious to ignore such matters." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

Perhaps for this reason, DOJ's past guidance to federal agencies on compiling the administrative record directs that the record should encompass "documents that were before the agency at the time of the

22

challenged decision, even if they were not specifically considered by the final decision-maker."[7] Similarly, appellate courts have held that "[t]he complete administrative record consists of all documents and materials *directly or indirectly* considered by the agency." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993) (emphasis added); *accord Thompson*, 885 F.2d at 555.

This standard encompasses documents developed "throughout the agency review process," including by the final decisionmaker's direct subordinates. *Bar MK Ranches,* 994 F.2d at 739. When an agency considers a complex issue, the chief decisionmaker typically will not "wade through the entire record personally," but will "delegate detailed consideration of the administrative record to [her] subordinates while retaining the final power of decision." *See National Small Shipments*

---

[7] U.S. DOJ, Env't & Natural Resources Div., Guidance to Federal Agencies on Compiling the Administrative Record 2 (Jan. 1999) (internet); *accord* U.S. Dep't of the Interior, Standardized Guidance on Compiling a Decision File and Administrative Record 5 (June 27, 2006) (internet); U.S. Dep't of Commerce, Nat'l Oceanic & Atmospheric Admin., Guidelines for Compiling an Administrative Record 4 (Dec. 21, 2012) (internet). (For authorities available on the internet, full URLs are listed in the table of authorities.)

*Traffic Conf., Inc. v. Interstate Commerce Comm'n*, 725 F.2d 1442, 1450 (D.C. Cir. 1984). Yet those underlying materials considered by subordinates should be in the administrative record because they were available to the decisionmaker and "might have influenced the agency's decision." *National Courier Ass'n v. Board of Governors of the Fed. Reserve Sys.*, 516 F.2d 1229, 1241 (D.C. Cir. 1975).[8]

The district court thus committed no error, let alone any mandamus-worthy error, in concluding that the documents "actually considered" by Acting Secretary Duke "as part of her decision to wind-down the DACA policy"—which is what defendants represent they have to date provided—do not comprise the whole administrative record. *See* DOJ Oct. 16 Ltr. at 1; *see also* Mem. & Order at 2-3, ECF No. 65. By petitioners' own admission, that set of documents excludes materials

---

[8] *See also Bethlehem Steel Corp. v. United States Envtl. Prot. Agency*, 638 F.2d 994, 1000 (7th Cir. 1980) (quoting *National Courier*); *Portland Audubon Soc'y v. Endangered Species Comm'n*, 984 F.2d 1534, 1538 (9th Cir. 1993) (administrative record includes any document that was "before the agency pertaining to the merits of its decision"); *County of Suffolk v. Secretary of the Interior*, 562 F.2d 1368, 1384 (2d Cir. 1977) (administrative record includes document that "contained information germane to the decision and not duplicated elsewhere in the record").

before Acting Secretary Duke pertaining to the rescission of DACA that the Acting Secretary chose not to "focus on" when "making her decision." DOJ Oct. 16 Ltr. at 8.[9] And by definition, it also excludes the documents developed during DHS's review process, as well the documents before AG Sessions at the time of the challenged decision. See *supra* n.3.

Petitioners' hand-picked administrative record also includes no materials detailing the consideration of "litigation risk" that petitioners have presented as the rationale for their decision. *See* DOJ Oct. 16 Ltr. at 4. Such materials would show, for example, how petitioners determined that terminating a program of crucial importance to hundreds of thousands of individuals and employers throughout the country would result in *fewer litigation burdens* than defending the program against a single challenge brought in a single court.[10] It would

---

[9] Petitioners' justification for that exclusion highlights their disregard of the proper legal standard. As they assert: "Plaintiffs may wish that the Acting Secretary had considered" a particular letter she received when "making her decision, but her focus on other documents is the *reason* it was not included." DOJ Oct. 16 Ltr. at 8. *But see Judulang*, 565 U.S. at 58.

[10] AG Sessions has suggested that he may have had out-of-court communications with Texas before deciding to terminate DACA. Hr'g on Oversight of the Justice Department, before S. Comm. on Judiciary,

also include some explanation of the reasons for AG Sessions's determination that DACA is unconstitutional—a dramatic reversal in position for DOJ, which has previously identified abundant legal authority supporting DACA and related programs (see *supra* at 8-9).[11] A reviewing court must assess the "agency's informational base" underlying its decision. *Dopico*, 687 F.2d at 654. And an agency cannot justify its actions with "conclusory statements." *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014).

\* \* \*

To obtain mandamus relief, defendants must establish not merely that the district court "was wrong" or even "very wrong," but that the

---

Video 1:33:44 (Oct. 18, 2017) (internet) (unofficial transcript at 2017 WL 4677754). Any such communications would be central to an assessment of litigation risk and should be made part of the administrative record. *See Dopico*, 687 F.2d at 654.

[11] Although AG Sessions's letter to DHS asserts that the Attorney General sees "the same legal and constitutional defects" with DACA "that the courts recognized as to DAPA," no court has ever concluded that DAPA or DACA is *unconstitutional. See, e.g.*, *Texas v. United States*, 809 F.3d 134. Moreover, the Fifth Circuit's DAPA opinion expressly notes that "DACA and DAPA are not identical" and thus "[f]or a number of reasons, any extrapolation" from one to the other "must be done carefully." *Id.* at 173.

court exceeded the clear limits of its judicial power. *Salomon Bros. Treas. Litig. v. Steinhardt Partners, L.P.* (*In re Steinhardt Partners, L.P.*), 9 F.3d 230, 234 (2d Cir. 1993) (quotation marks omitted). Defendants cannot meet that high burden where, as here, the district court's approach hews to governing precedents that (i) dictate a court's obligations when agencies submit incomplete records, and (ii) define the scope of an adequate record.

Contrary to petitioners' assertions, the respondent States were not required to show "bad faith or improper behavior on the part of the agency decisionmakers" (Pet. 20 (quotation marks omitted)) in order to obtain "some limited discovery to explore whether some portions of the full record were not supplied," *Dopico*, 687 F.2d at 654 (requiring no such showing). The request for a complete administrative record is not the same as a demand for "'extra-record'" materials (Pet. 20 (quoting *National Audubon Society v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997)).[12]

---

[12] *See also National Audubon Soc'y*, 132 F.3d at 15 (identifying post-decisional "affidavits" and "testimony" as among the typical types of extra-record evidence).

### 2. The requirement to produce a privilege log follows naturally from the requirement to produce a complete administrative record.

It is well-settled that where a litigant asserts that privilege doctrines justify its withholding of documents germane to the litigation— as DHS and DOJ do here (Pet. 2)—a court may direct the production of "an adequately detailed privilege log" in order "[t]o facilitate its determination" of that issue.[13] *United States v. Construction Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (quotation marks omitted). This is equally true where the litigant is an agency, and the legal claims implicated by the document arise under the APA.[14] Indeed, the ordinary practice of various federal agencies refutes petitioners' contention (Pet.

---

[13] Here, for example, a privilege log would permit the district court to test AG Sessions's claim that any communications with Texas that influenced his decision to rescind DACA are privileged work-product and thus need not be disclosed. Hr'g on Oversight of the Justice Department, *supra*, n.10.

[14] *See, e.g.*, *Gill v. Department of Justice*, No. 14-cv-120, 2015 WL 9258075, at *7 (N.D. Cal. Dec. 18, 2015); *Hillsdale Envtl. Loss Prevention, Inc. v. United States Army Corps of Eng'rs*, No. 10-cv-2008, 2011 WL 1102868, at *3 (D. Kan. Mar. 23, 2011); *New York v. Salazar*, 701 F. Supp. 2d 224, 235 (N.D.N.Y. 2010) (magistrate's decision & order), *aff'd*, 2011 WL 1938232 (N.D.N.Y. 2011).

13-14, 27-28) that producing a privilege log in an APA case is either unusual or excessively burdensome.

Guidance issued by the Department of the Interior in 2006 instructs that agency to create and file "a privilege index" with an administrative record, identifying "the nature of any privilege" asserted. U.S. Dep't of the Interior Guidance, *supra*, at 12-13. A 2012 guidance document issued by a division of the Department of Commerce recognizes that "[d]ocuments on the Privilege Log are considered part of the Administrative Record," and should be provided to the court and parties to allow resolution of "any disputes about whether such documents must be made available." U.S. Dep't of Commerce Guidelines, *supra*, at 14. And a past guidance document issued to federal agencies by the DOJ itself provides that where "the administrative record includes privileged documents and materials," an "index of record must identify the documents and materials . . . and state on what basis they are being withheld." DOJ Guidance, *supra*, at 2.

Petitioners identify no appellate precedent supporting their assertion (*see* Pet. 3, 16) that a court lacks the power to require an indexing of the supposedly privileged documents being withheld from an

29

administrative record. Although they attempt to rely (*see* Pet. at 3) on *San Luis Obispo Mothers for Peace v. United States Nuclear Regulatory Commission*, that case concerned whether the court was "warranted in examining the deliberative proceedings of the agency," not whether the agency could *refuse to document* assertions of privilege in a log. 789 F.2d 26, 44 (D.C. Cir. 1986).

Accordingly, petitioners cannot show that the district court committed any error in ordering a privilege log—much less a "clear and indisputable" error, *Dinler*, 607 F.3d at 932-33, 939. Nor can petitioners establish the other exceptional circumstances that must be present to obtain mandamus relief from a discovery ruling. This Court has explained that it "rarely use[s] the extraordinary writ of mandamus to overturn a discovery order involving a claim of privilege," *Salomon Bros.*, 9 F.3d at 233 (quotation marks omitted), and the present case does not even involve any claim that a "privilege will be lost" if mandamus relief were denied, *id.*

Indeed, petitioners have more than "adequate means" short of mandamus to protect documents that they believe are subject to a valid claim of privilege. *See Cheney v. United States Dist. Ct. for D.C.*, 542 U.S.

367, 380 (2004). Petitioners may obtain judicial consideration of any specific claim of privilege by listing any assertedly privileged documents in the log that the district court has provided multiple extensions to produce. And if petitioners neglect to list a particular document, they may, on a showing of good cause, continue to seek the document's exclusion. Case Mgmt. & Sched. Order at 2, ECF No. 46. There is no basis to assume either that the district court will err in its future rulings, or that it will fail to provide reasonable accommodations as necessary for petitioners to comply with their obligations.[15]

## B. The District Court's Partial Denial of Petitioners' Rule 12(b)(1) Motion Is Not a Predicate for Mandamus Relief.

As discussed above (*supra* Point I), the mandamus petition does not seek dismissal of this suit on jurisdictional grounds, nor could petitioners have requested that relief on October 23 because they had not yet sought dismissal in the district court. *See Dinler*, 607 F.3d at 932 (predicate for

---

[15] The States have no other pending discovery requests outside of the district court's direction that petitioners must complete the administrative record and file a privilege log. Petitioners' arguments about the discovery-related burdens they are confronting (Pet. 27) concern the discovery requests in several lawsuits in the Northern District of California and are thus outside the purview of this Court.

mandamus relief is some "judicial usurpation of power or a clear abuse of discretion" (quotation marks omitted)). If petitioners now disagree with the district court's subsequent resolution of their jurisdictional challenges, they can seek interlocutory review under the procedures provided by 28 U.S.C. § 1292(b). Mandamus relief is not available where § 1292(b) certification is an option. *See, e.g.*, *Balintulo*, 727 F.3d at 186-87.

Petitioners also cannot obtain mandamus relief from the district court's Rule 12(b)(1) ruling for yet another independent reason: their jurisdictional arguments are inconsistent with clear, governing law.

As the district court correctly recognized (MTD Op. 19-32), settled law directly contradicts petitioners' suggestion (Pet. 1, 3-4, 18, 29) that the APA and INA may bar courts from hearing legal challenges to the termination of a program affecting the rights of hundreds of thousands of individuals and employers—including state institutions that employ DACA grantees (*see* MTD Op. 39-40).

The Supreme Court and this Court have repeatedly recognized that there is "a strong presumption favoring judicial review of agency action," and that an agency "bears a heavy burden" when seeking to overcome that presumption. *See, e.g.*, *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645,

32

1651 (2015) (quotation marks omitted); *Salazar v. King*, 822 F.3d 61, 75 (2d Cir. 2016) (listing additional cases). This is true even in the immigration context. *See, e.g., INS v. St. Cyr*, 533 U.S. 289, 298 (2001); *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 483-84 (1991).

The district court properly applied controlling precedent when concluding that petitioners' actions—even if "'committed to agency discretion by law'"—were not immune from review "'to determine if the Constitution has been violated.'" MTD Op. 26 (quoting *Padula v. Webster*, 822 F.2d 97, 101 (D.C. Cir. 1987) (quoting 5 U.S.C. § 701(a)(2)); *see also Webster*, 486 U.S. at 603. And the district court likewise correctly recognized (MTD Op. 23-25) that, in any event, decisions from this Court and several sister circuits have rejected agency claims that a programmatic action like the termination of DACA constitutes "an unreviewable exercise of prosecutorial discretion that is 'committed to agency discretion by law'" (Pet. 18 (quoting 5 U.S.C. § 701(a)(2)). Finally, the court faithfully followed guidance from the Supreme Court and the

Fifth Circuit when ruling that judicial review of plaintiffs' claims is entirely consistent with 8 U.S.C. § 1252(g).[16]

### 1. Petitioners' termination of DACA may be reviewed for compliance with the applicable constitutional and statutory limits.

As the district court noted (MTD Op. 26-27), it is well-established that even actions "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), are subject to certain constitutional limits, and may be reviewed for transgression of those limits unless Congress has deprived

---

[16] The court also acted consistently with case law from the Supreme Court and several courts of appeals when holding that the States possess standing to challenge the termination of DACA because—among other things—"the rescission of DACA would harm the states' proprietary interests as employers and in the operation of state-run colleges and universities." MTD Op. 39; *see also Alfred L. Snapp & Son v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601-02 (1982) (describing States' proprietary interests); *Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017) (recognizing these types of proprietary interests as sufficient to support standing to sue). *Cf. Texas*, 809 F.3d at 150-62 (state standing based on the likely costs of having to issue driver's licenses to DAPA grantees).

The States do not repeat here our showing of standing (*see* MTD Op. 18-24) because the mandamus petition does not dispute it. But we reserve the right to challenge in future stages of this case the district court's ruling (*id.* 41-43) that we lack standing to contest the defective notice given to certain DACA grantees, and DHS's proposed changes to its information-use policy. We also may seek to amend our complaint to more fully address the district court's concerns.

the courts of jurisdiction over constitutional claims *specifically*. In *Webster*, for example, the Supreme Court held that the plaintiff's equal protection and due process challenges to his firing were judicially reviewable, notwithstanding a statute giving the agency's director "absolute discretion" over employment termination decisions. 486 U.S. at 603. The Court emphasized that Congress's general intention to "preclude[] judicial review" of employee terminations, *id.* at 601, should not "be read to exclude review of constitutional claims" where Congress did not make any "clear" provision for that result, *id.* at 603 (listing additional cases).[17]

The district court was directly following this guidance from the Supreme Court when it concluded that DHS's enforcement discretion was "insufficient to preclude review of Plaintiffs' constitutional claims." MTD

---

[17] Similarly, in *Wade v. United States*, the Supreme Court recognized that a quintessential exercise of enforcement discretion—a prosecutor's decision not to move for a sentence below the statutory minimum—was "subject to constitutional limitations that district courts can enforce." 504 U.S. 181, 185-86 (1992). The Court again affirmed that principle in *United States v. Armstrong*, declaring that "[o]f course, a prosecutor's discretion is subject to constitutional constraints," such as that imposed "by the equal protection component of the Due Process Clause." 517 U.S. 456, 455 (1996) (quotation marks omitted); *accord United States v. Sanchez*, 517 F.3d 651, 671 (2d Cir. 2008).

Op. 27. Petitioners thus cannot show that the district court's ruling is an appropriate predicate for mandamus. As this Court has observed, for a writ of mandamus to issue, "[i]t is not enough that the court of appeals might disagree with the district judge's decision were it a conventional appeal from a final judgment. 'Even if the judge was wrong, indeed very wrong . . . that is not enough.'" *Salomon Bros.*, 9 F.3d at 234 (quoting *In re Weisman*, 835 F.2d 23, 27 (2d Cir. 1987)).

The same analysis applies to the district court's conclusion that petitioners' termination of DACA was not in any event the type of "exercise of prosecutorial discretion" (Pet. 18) that courts have found nonreviewable under the APA. *See* MTD Op. 23-26. The termination was a dramatic and abrupt change in national policy that affected the substantive rights of hundreds of thousands of DACA grantees. And as this Court and other circuits have repeatedly recognized, the APA permits review of challenges to enforcement (or nonenforcement) *policies*.[18]

---

[18] *See, e.g.*, *New York City Employees' Retirement Sys.* (*NYCERS*) *v. SEC*, 45 F.3d 7, 11 (2d Cir. 1995) (APA permitted review of claim that SEC no-action letter amounted to announcement of a new rule without

Consistent with those decisions, the district court noted (MTD Op. 24-26) that no contrary outcome is mandated by *Heckler v. Chaney*, 470 U.S. 821 (1985)—a case relied upon by petitioners here (*see* Pet. 18) and addressed by those courts finding agency policies reviewable (see *supra* n.18). *Chaney* explained that agency *inaction* is generally unreviewable because inaction does not involve an agency's "exercise [of] its *coercive* power over an individual's liberty or property rights, and thus does not infringe upon areas that courts often are called upon to protect." 470 U.S. at 832. By contrast, when an agency does act, "that action itself provides a focus for judicial review*." See id.* Here, petitioners' termination of DACA unquestionably exerts "coercive power" over the liberty and property interests of (i) the hundreds of thousands of DACA grantees who will lose work authorization, and (ii) the many employers—including respondent States—that will be unable to continue employing such persons. *See* 8 U.S.C. § 1324a(a), (e).

---

notice and comment); *see also Kenney v. Glickman*, 96 F.3d 1118, 1122-24 (8th Cir. 1996) (recognizing APA reviewability of agency's adoption of certain "general policies"); *Crowley Caribbean Transp., Inc. v. Peña*, 37 F.3d 671, 677 (D.C. Cir. 1994) (agency "expressions of broad enforcement policies" are judicially reviewable).

As the district court correctly observed, the "deference [owed] to the Executive Branch on immigration matters does not counsel a different result." MTD Op. 27 (capitalization removed). Indeed, in analyzing essentially the same justiciability question presented here, the Fifth Circuit found that the APA authorized review of DHS's implementation of DAPA, because that action affected the substantive rights of a large group of individuals. *Texas*, 809 F.3d at 166-67; *see also* MTD Op. 25 (noting Fifth Circuit's ruling that the creation of DAPA was a reviewable agency action).

Finally, the district court broke no new ground in noting that where a plaintiff challenges the adequacy of the procedures that an agency followed when announcing a new policy, "there is law to apply, permitting meaningful judicial review" of those claims. MTD Op. 21 (quotation marks omitted) (citing *Lincoln v. Vigil*, 508 U.S. 182, 195-96 (1993); *NYCERS*, 45 F.3d at 11; *American Med. Ass'n v. Reno*, 57 F.3d 1129, 1134 (D.C. Cir. 1995)).

### 2. 8 U.S.C. § 1252(g)'s jurisdictional bar does not apply here.

The Supreme Court has made clear that § 1252(g) applies to *only* "three discrete actions" in the immigration context: decisions to "commence proceedings, adjudicate cases, or execute removal orders." *AADC*, 525 U.S. at 482 (emphasis omitted). As the Court explained, "[i]t is implausible that" Congress intended to use "the mention of three discrete events along the road to deportation [as] a shorthand way of referring to all claims arising from deportation proceedings." *Id*. Congress instead focused on these three discrete acts because at each of those stages, "the Executive has discretion to abandon the endeavor." *Id*. at 483. At the time § 1252(g) was enacted, the "INS had been engaging in a regular practice . . . of exercising that discretion for humanitarian purposes or simply for its own convenience" for specific individuals. *Id*. at 483-84. Section 1252(g) was enacted to insulate those choices from judicial review. *Id*. at 484-85.

Consistent with this guidance, the district court determined that § 1252(g) did not divest it of jurisdiction to hear the States' claims. MTD Op. 31-32. As the court observed, the termination of DACA does not fit within any of the three enumerated actions in the statute. *Id*. 29-30.

39

Notably, the Fifth Circuit has similarly held that § 1252(g) does not preclude judicial review of a decision to change the "classification of millions of illegal aliens," *Texas*, 809 F.3d at 163; *see id.* at 155-63. The district court's ruling was thus neither novel nor unreasonable. Accordingly, petitioners cannot obtain mandamus relief from that ruling.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the petition as moot or, alternatively, deny the petition.

Dated: New York, NY
November 14, 2017

Respectfully submitted,

ERIC T. SCHNEIDERMAN
*Attorney General*
*State of New York*

By:   */s/ Barbara D. Underwood*

| | |
|---|---|
| LOURDES M. ROSADO<br> *Bureau Chief*<br> *Civil Rights Bureau*<br> SANIA KHAN<br> DIANE LUCAS<br> AJAY SAINI<br> *Assistant Attorneys General* | BARBARA D. UNDERWOOD<br> *Solicitor General*<br> ANISHA S. DASGUPTA<br> *Assistant Solicitor General*<br> DAVID S. FRANKEL<br> *Assistant Solicitor General*<br><br> 120 Broadway, 25th Fl.<br> New York, NY 10271<br> (212) 416-8921 |
| MAURA HEALEY<br> *Attorney General*<br> *Commonwealth of Massachusetts*<br> One Ashburton Place<br> Boston, MA 02108<br> (617) 727-2200 | BOB FERGUSON<br> *Attorney General*<br> *State of Washington*<br> 800 Fifth Avenue, Suite 2000<br> Seattle, WA 98104<br> (206) 464-7744 |

(*Counsel list continues on next page.*)

GEORGE JEPSEN
  *Attorney General*
  *State of Connecticut*
55 Elm Street,
P.O. Box 120
Hartford, CT 06106
(860) 808-5020

MATTHEW DENN
  *Attorney General*
  *State of Delaware*
820 N. French St.
Wilmington, DE 19801
(302) 577-8400

DOUGLAS S. CHIN
  *Attorney General*
  *State of Hawaii*
425 Queen Street
Honolulu, HI 96813
(808) 586-1224

LISA MADIGAN
  *Attorney General*
  *State of Illinois*
100 W. Randolph Street
Chicago, IL 60601
(312) 814-3400

THOMAS J. MILLER
  *Attorney General*
  *State of Iowa*
1305 E. Walnut Street
Des Moines, IA 50319
(515) 281-4325

HECTOR H. BALDERAS
  *Attorney General*
  *State of New Mexico*
408 Galisteo St.
Santa Fe, NM 87501
(505) 490-4060

JOSH STEIN
  *Attorney General*
  *State of North Carolina*
114 W. Edenton Street
Raleigh, NC 27603
(919) 16-6400

ELLEN F. ROSENBLUM
  *Attorney General*
  *State of Oregon*
1162 Court St. N.E.
Salem, OR 97301
(971) 673-1880

JOSH SHAPIRO
  *Attorney General*
  *Commonwealth of Pennsylvania*
Strawberry Square, 16th Floor
Harrisburg, PA 17120
(717) 787-3391

PETER KILMARTIN
  *Attorney General*
  *State of Rhode Island*
150 South Main Street
Providence, RI 02903
(401) 274-4400

THOMAS J. DONOVAN, JR.
  *Attorney General*
  *State of Vermont*
109 State Street
Montpelier, VT 05609
(802) 828-5500


MARK R. HERRING
  *Attorney General*
  *Commonwealth of Virginia*
202 North Ninth Street
Richmond, VA 23219
(804) 786-7773

JOHN W. HICKENLOOPER
  *Governor*
  *State of Colorado*
JACKI COOPER MELMED
  *Special Assistant*
    *Attorney General*
136 State Capitol Building
Denver, CO 80203
(303) 866-3788


KARL A. RACINE
  *Attorney General*
  *District of Columbia*
Suite 650 North
441 4th Street, NW
Washington, DC 20001
(202) 724-6610

## CERTIFICATE OF COMPLIANCE

Pursuant to Rules 21 and 32 of the Federal Rules of Appellate Procedure, Oren L. Zeve, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this document, the document contains 7,800 words and complies with the typeface requirements and length limits of Rules 21 and 32(a)(5)-(6).

_/s/ Oren L. Zeve_____