# 17-3345

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

_____

*In Re:* ELAINE C. DUKE, Acting Secretary of Homeland Security,

_____

ELAINE C. DUKE, Acting Secretary of Homeland Security; JEFFERSON B. SESSIONS III, United States Attorney General; DONALD J. TRUMP, President of the United States; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; and the UNITED STATES OF AMERICA,

*Petitioners*,

v.

MARTIN JONATHAN BATALLA VIDAL, MAKE THE ROAD NEW YORK, ANTONIO ALARCON, ELIANA FERNANDEZ, CARLOS VARGAS, MARIANO MONDRAGON, CAROLINA FUNG FENG, on behalf of themselves and all other similarly situated individuals, STATE OF NEW YORK, STATE OF MASSACHUSETTS, STATE OF WASHINGTON, STATE OF CONNECTICUT, STATE OF DELAWARE, DISTRICT OF COLUMBIA, STATE OF HAWAII, STATE OF ILLINOIS, STATE OF IOWA, STATE OF NEW MEXICO, STATE OF NORTH CAROLINA, STATE OF OREGON, STATE OF PENNSYLVANIA, STATE OF RHODE ISLAND, STATE OF VERMONT, STATE OF VIRGINIA, STATE OF COLORADO,

*Respondents*.

## AMICUS BRIEF OF NATURAL RESOURCES DEFENSE COUNCIL IN SUPPORT OF RESPONDENTS

MICHAEL E. WALL
Natural Resources Defense Council
111 Sutter Street, 21st Floor
San Francisco, CA 94104
(415) 875-6100

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, amicus curiae Natural Resources Defense Council, Inc., submits that it has no parent corporations and no publicly issued stock shares or securities. No publicly held corporation holds stock in Amicus.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT......................................................i

TABLE OF AUTHORITIES................................................................... iii

INTERESTS OF AMICUS CURIAE ...................................................1

INTRODUCTION ......................................................................1

ARGUMENT...............................................................................5

I.    Judicial review under the Administrative Procedure Act requires
courts to have access to the "whole" record of agency proceedings ....5

II.    If an agency wishes to exclude deliberative-process materials from an
administrative record, it must justify the claim of privilege................12

CONCLUSION ........................................................................19

CERTIFICATE OF COMPLIANCE ..................................................21

CERTIFICATE OF SERVICE ..........................................................22

ii

# TABLE OF AUTHORITIES

### CASES

*Aera Energy LLC v. Salazar*,
    642 F.3d 212 (D.C. Cir. 2011) ....................................................................11

*American Bioscience, Inc. v. Thompson*,
    269 F.3d 1077 (D.C. Cir. 2002) .................................................................17

*Amigos Bravos v. U.S. Bureau of Land Mgmt.*,
    No. 09- 00037, 2011 WL 7701433 (D.N.M. Aug. 3, 2011) ........................2

*Bar MK Ranches v. Yuetter*,
    994 F.2d 735 (10th Cir. 1993).............................................................. 8, 10

*Bersani v. U.S. E.P.A.*,
    674 F. Supp. 405 (N.D.N.Y. 1987)..............................................................14

*Bonnichsen v. United States*,
    217 F. Supp. 2d 1116 (D. Or. 2002)................................................ 2, 10, 13

*Burlington Truck Lines v. United States*,
    371 U.S. 156 (1962) .......................................................................................3

*Camp v. Pitts*,
    411 U.S. 138 (1973) .......................................................................................8

*Charles v. City of New York*,
    No. 11-0980, 2011 WL 5838478 (E.D.N.Y. Nov. 18, 2011)......................18

*Citizens to Preserve Overton Park v. Volpe*,
    401 U.S. 402 (1971) ......................................................................... 6, 14, 18

*City of Sausalito v. O'Neill*,
    386 F.3d 1186 (9th Cir. 2004)....................................................................13

iii

*Ctr. for Biological Diversity v. Evans*,
   No. 04-04496, 2005 WL 1514102 (N.D. Cal. June 14, 2005)....................13

*D.C. Fed'n of Civic Assocs. v. Volpe*,
   459 F.2d 1231 (D.C. Cir. 1971) ............................................................. 6, 11

*Defs. of Wildlife v. Kempthorne*,
   No. 04-1230, 2006 WL 2844232 (D.D.C. Sept. 29, 2006) ........................13

*Dopico v. Goldschmidt*,
   687 F.2d 644 (2d Cir. 1982)...............................................................passim

*Earth Island Inst. v. Hogarth*,
   494 F.3d 757 (9th Cir. 2007).......................................................................13

*EEOC v. BDO USA, LLP*,
   856 F.3d 356 (5th Cir. 2017).......................................................................18

*Envtl. Def. Fund, Inc. v. Blum*,
   458 F. Supp. 650 (D.D.C. 1978) ...................................................................7

*Epsilon Electronics, Inc. v. U.S. Department of the Treasury*,
   857 F.3d 913 (D.C. Cir. 2017) ....................................................................17

*FTC v. Warner Commc'ns Inc.*,
   742 F.2d 1156 (9th Cir. 1984)............................................................ 4, 5, 14

*Georgia ex rel. Olens v. McCarthy*,
   833 F.3d 1317 (11th Cir. 2016)....................................................................2

*Hughes River Watershed Conservancy v. U.S. Forest Serv.*,
   81 F.3d 437 (4th Cir. 1996).........................................................................11

iv

*Hyatt v. U.S. Patent & Trademark Office*,
146 F. Supp. 3d 771 (E.D. Va. 2015) ............................................................2

*Idaho Farm Bureau Fed'n v. Babbitt*,
58 F.3d 1392 (9th Cir. 1995)......................................................................13

*In re Franklin Nat'l Bank Sec. Litig.*,
478 F. Supp. 577 (E.D.N.Y. 1979) ......................................................... 4, 14

*In re Grand Jury Subpoena Dated Aug. 9, 2000*,
218 F. Supp. 2d 544 (S.D.N.Y. 2002) .........................................................15

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*,
643 F. Supp. 2d 439 (S.D.N.Y. 2009) ...........................................................4

*In re United States*,
No. 17-72917, 2017 WL 5505730 (9th Cir. Nov. 16, 2017) .....................16

*Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin.*,
99 F. Supp. 3d 1033 (N.D. Cal. 2015) ..........................................................2

*Landry v. FDIC*,
204 F.3d 1125 (D.C. Cir. 2000) ..................................................................14

*Marsh v. Or. Nat. Res. Council*,
490 U.S. 360 (1989) .............................................................................. 6, 12

*Miami Nation of Indians v. Babbitt*,
979 F. Supp. 771 (N.D. Ind. 1996) .............................................................14

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ............................................................................ 2, 6, 13

*Nat. Res. Def. Council v. Kempthorne*,
506 F. Supp. 2d 322 (E.D. Cal. 2007) ........................................................13

*Nat. Res. Def. Council v. Pritzker*,
    828 F.3d 1125 (9th Cir. 2016)......................................... 10, 11, 13

*Nat. Res. Def. Council v. Rodgers*,
    381 F. Supp. 2d 1212 (E.D. Cal. 2005) .......................................13

*Nat. Res. Def. Council v. U.S. E.P.A.*,
    658 F.3d 200 (2d Cir. 2011) .......................................................5, 6

*Nat. Res. Def. Council v. U.S. E.P.A.*,
    808 F.3d 556 (2d Cir. 2015) .........................................................13

*Nat. Res. Def. Council v. U.S. Forest Serv.*,
    421 F.3d 797 (9th Cir. 2005).........................................................11

*Nat. Res. Def. Council, Inc. v. SEC*,
    606 F.2d 1031 (D.C. Cir. 1979) ....................................................4

*Nat'l Council of La Raza v. Dep't of Justice*,
    411 F.3d 350 (2d Cir. 2005) .........................................................18

*Northrop Corp. v. McDonnell Douglas Corp.*,
    751 F.2d 395 (D.C. Cir. 1984) ............................................ 18, 19

*Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*,
    18 F.3d 1468 (9th Cir. 1994).......................................................10

*Ocean Advocates v. U.S. Army Corps of Eng'rs*,
    402 F.3d 846 (9th Cir. 2005).......................................................13

*Paisley v. CIA*,
    712 F.2d 686 (D.C. Cir. 1983) ....................................................18

*Phippsburg Shellfish Conservation Comm'n v. U.S. Army Corps of Eng'rs*,
    800 F. Supp. 2d 312 (D. Me. 2011) ................................................2

*Portland Audubon Soc'y v. Endangered Species Comm.*,
    984 F.2d 1534 (9th Cir. 1998) ....................................................7

*Pub. Power Council v. Johnson*,
    674 F.2d 791 (9th Cir. 1982) .....................................................12

*San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Commission*,
    789 F.2d 26 (D.C. Cir. 1986) ............................................... 15, 16

*Suffolk Cty. v. Sec'y of Interior*,
    562 F.2d 1368 (2d Cir. 1977) ............................................ passim

*Texaco P.R., Inc. v. Dep't of Consumer Affairs*,
    60 F.3d 867 (1st Cir. 1995) .......................................................5

*Thompson v. U.S. Dep't of Labor*,
    885 F.2d 551 (9th Cir. 1989) ............................................. 7, 8, 10

*Tummino v. Torti*,
    603 F. Supp. 2d 519 (E.D.N.Y. 2009) .......................................13

*United States v. Mazza-Alaluf*,
    621 F.3d 205 (2d Cir. 2010) ......................................................9

*United States v. Nixon*,
    418 U.S. 683 (1974) ................................................................18

*United States v. Reynolds*,
    345 U.S. 1 (1953) ...................................................................19

*United States v. Rozet*,
    183 F.R.D. 662 (N.D. Cal. 1998) ..............................................19

vii

*Universal Camera Corp. v. NLRB*,
    340 U.S. 474 (1951) ...................................................................3

*W. Watersheds Project v. Kraayenbrink*,
    632 F.3d 472 (9th Cir. 2011)................................................. 11, 13

*Walter O. Boswell Mem'l Hosp. v. Heckler*,
    749 F.2d 788 (D.C. Cir. 1984) ..........................................passim

*Wash. Toxics Coal. v. U.S. Dep't of Interior*,
    457 F. Supp. 2d 1158 (W.D. Wash. 2006) ..................................13

## STATUTES

5 U.S.C. § 553(c) ...........................................................................9

5 U.S.C. § 556(c) ...........................................................................9

5 U.S.C. § 556(d) ...........................................................................9

5 U.S.C. § 556(e) ...................................................................... 9, 16

5 U.S.C. § 557(d)(1)(A) .................................................................9

5 U.S.C. § 706............................................................................passim

5 U.S.C. § 706(2)(A) .....................................................................5

42 U.S.C. § 2239(a) ......................................................................15

## INTERESTS OF AMICUS CURIAE

Amicus Natural Resources Defense Council, Inc. (NRDC), a nonprofit advocacy group with hundreds of thousands of members, litigates to protect health and the environment, to vindicate its members' rights, and to ensure the lawfulness and transparency of agency actions. Because courts often review agency action on the "administrative record," NRDC seeks to ensure that the records agencies submit to the courts completely and accurately reflect the agencies' proceedings.[1]

## INTRODUCTION

Whether courts review the lawfulness of agency action based on the "whole record," 5 U.S.C. § 706, or a partial, potentially sanitized record, is a question of profound significance to the functioning of our government. The answer affects judges' ability to fairly and accurately assess agency decisions, and the public's ability to check agency excesses in court.

---

[1] No party's counsel authored any part of this brief. No party or party's counsel contributed money intended to fund the preparation or submission of this brief. No person (other than amicus curiae, its members, or its counsel) contributed money to fund any aspect of this brief.

1

NRDC has litigated many hundreds of record-review cases. Some of these have been prosecuted against federal agencies; others have been litigated alongside such agencies. The administrative records in these cases often span thousands, tens of thousands, or even more than a million, pages.[2] There are many reasons for this: The work of regulatory agencies is often nuanced, complex, and serious. Rulemakings may last years. And an administrative record, at its best, discloses all the evidence and analysis before the agency, the considerations the agency weighed, and the agency's conclusions and reasoning.

These issues are, after all, precisely those that, in a record-review case, the reviewing court must evaluate. *See, e.g.*, *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("[T]he agency must examine the relevant data and articulate a satisfactory

---

[2] *See, e.g.*, *Georgia ex rel. Olens v. McCarthy*, 833 F.3d 1317, 1320 (11th Cir. 2016); *Hyatt v. U.S. Patent & Trademark Office*, 146 F. Supp. 3d 771, 774 (E.D. Va. 2015); *Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin.*, 99 F. Supp. 3d 1033, 1044 (N.D. Cal. 2015); *Amigos Bravos v. U.S. Bureau of Land Mgmt.*, No. 09- 00037, 2011 WL 7701433, at *3 n.2 (D.N.M. Aug. 3, 2011); *Phippsburg Shellfish Conservation Comm'n v. U.S. Army Corps of Eng'rs*, 800 F. Supp. 2d 312, 314 n.1 (D. Me. 2011); *Bonnichsen v. United States*, 217 F. Supp. 2d 1116, 1120 n.2 (D. Or. 2002).

explanation for its action including a 'rational connection between the facts found and the choice made.'" (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962))). Thus, in a record review case, it may be not only permissible, but essential, for the court to consider "internal deliberative memoranda communicating views of agency personnel and summarizing information" "germane to the [agency's] decision and not duplicated elsewhere in the record." *Suffolk Cty. v. Sec'y of Interior*, 562 F.2d 1368, 1384 (2d Cir. 1977).

Judicial review without this whole record would be both inadequate and ineffectual. For example, the "whole record" judicial review standard of the Administrative Procedure Act (APA) requires courts to consider evidence that contradicts as well as supports an agency's decision. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487-88 (1951). "The fact that defendants presented documents that seemed to support the rationality of their actions does not mean that the same conclusion would have been reached if the Court had been aware of other information that was before the agency." *Dopico v. Goldschmidt*, 687 F.2d 644, 654 (2d Cir. 1982). Thus, "[t]o review less than the full administrative record might allow a party to

3

withhold evidence unfavorable to its case," impeding a court's ability "to review an agency's action fairly." *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984).

Particularly given the APA's "whole record" standard, an agency that wishes to withhold documents from the record as deliberative-process privileged must justify its assertion of that privilege. The deliberative-process privilege is a *qualified*, common-law doctrine intended "to protect the quality of agency decisions." *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984); *see, e.g.*, *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 643 F. Supp. 2d 439, 442-43 (S.D.N.Y. 2009). There are competing interests, manifest in the APA, "in opening for scrutiny the government's decision making process," *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577, 582 (E.D.N.Y. 1979), and "ensuring the rationality and fairness" of agency decisions. *Nat. Res. Def. Council, Inc. v. SEC*, 606 F.2d 1031, 1048 (D.C. Cir. 1979). Thus, given the qualified nature of the deliberative process privilege, "[a] litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-

4

finding override the government's interest in non-disclosure." *Warner Commc'ns*, 742 F.2d at 1161.

If an agency wishes to exclude documents from the record on judicial review as deliberative-process privileged, the agency must show why its interest in keeping specific documents secret outweighs "society's interest in the accuracy and integrity of factfinding, and the public's interest in honest, effective government." *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995). Absent such a showing, deliberative documents remain part of the record for judicial review.

## ARGUMENT

## II. Judicial review under the Administrative Procedure Act requires courts to have access to the "whole" record of agency proceedings

The APA's arbitrary-or-capricious standard, *see* 5 U.S.C. § 706(2)(A), requires the court to decide, among other things, whether the agency based its decision on the relevant factors, explained its decision in a way that "runs counter to the evidence before [it]," or failed to offer a "rational connection between the facts found and the choice made," *Nat. Res. Def. Council v. U.S. E.P.A.*, 658 F.3d 200, 215 (2d Cir. 2011) (quoting *Motor Vehicle*

*Mfrs.*, 463 U.S. at 42-43). Courts' review of these issues should be both "searching and careful." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971). And that review must generally be conducted on "the whole record or those parts of it cited by a party." 5 U.S.C. § 706.

A court that does not have the whole record cannot "carefully review[] the record and satisfy[] [itself] that the agency has made a reasoned decision based on [the agency's] evaluation of the [evidence]." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989). A court cannot, for example, assess whether an agency decision "runs counter to the evidence," *Motor Vehicle Mfrs.*, 463 U.S. at 43, without having all the evidence before it. And, without knowing what factors the agency actually weighed, a court cannot evaluate whether the agency based its decision on the relevant factors, *see Nat. Res. Def. Council v. U.S. E.P.A.*, 658 F.3d at 216 (finding an agency decision arbitrary where it failed to explain how it effectuated a statutory factor), or on impermissible factors, *see D.C. Fed'n of Civic Assocs. v. Volpe*, 459 F.2d 1231, 1248-49 (D.C. Cir. 1971) (holding that an agency decision based on political pressure would be impermissible).

6

To fairly evaluate these issues, a reviewing court must "have before it neither more nor less information than did the agency when it made its decision." *Walter O. Boswell Mem'l Hosp.*, 749 F.2d at 792; *see also Dopico*, 687 F.2d at 654. Anything less "might allow a party to withhold evidence unfavorable to its case." *Walter O. Boswell Mem'l Hosp.*, 749 F.2d at 792. The agency could "skew the 'record' for review in its favor by excluding from that 'record' information in its own files which has great pertinence to the proceeding in question." *Envtl. Def. Fund, Inc. v. Blum*, 458 F. Supp. 650, 661 (D.D.C. 1978). An "incomplete record" is therefore little more than a "fictional account of the actual decisionmaking process." *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1538 (9th Cir. 1998).

Outside of formal adjudications, "[w]hat constitutes part of the administrative record may be very unclear." *Suffolk Cty.*, 562 F.2d at 1384 n.9. But this record at least includes the agency's "informational base" when it made its decision. *Dopico*, 687 F.2d at 654. That is "everything that was before the agency pertaining to the merits," *Portland Audubon Soc'y*, 984 F.2d at 1548 (citing *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555-56 (9th Cir. 1989)), or more specifically, "all documents and materials directly

7

or indirectly considered by the agency," *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993).

When *Camp v. Pitts* stated that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court," this is what it meant. 411 U.S. 138, 142 (1973) (per curiam). The record "already in existence," *id.*, is the record of the agency's full proceeding, regardless of whether the agency includes that material in the "record" it lodges with the court. *Dopico*, 687 F.2d at 654; *accord Thompson*, 885 F.2d at 556 (stating that the administrative record is "not necessarily those documents that the *agency* has compiled and submitted as 'the' administrative record" (emphasis in original) (citation omitted)).[3]

Petitioners' contrary suggestion, *see* Pet. at 20 (ECF No. 33), that the administrative record in informal agency rulemakings includes only

---

[3] At least when an agency explains to the court that the record it lodged includes only a subset of the material that was before the agency, the court need not find bad faith to determine that the record is incomplete. The agency's own explanation establishes the record's incompleteness. This may occur, for example, when the agency misapprehends what a record must include.

materials that would be included in the record of a *formal* APA adjudication, *see* 5 U.S.C. § 556(c), makes neither legal nor practical sense. Formal adjudications include procedural safeguards — including a prohibition on *ex parte* communications, 5 U.S.C. § 557(d)(1)(A); a right to call and cross-examine witnesses, *id.* § 556(d); and transcribed hearings, *id.* § 556(e) — that do not apply to informal proceedings. Consistent with these trial-like procedures, the APA provides that the "record" for formal adjudications includes only the transcript, exhibits, and materials "filed in the proceeding." *Id*. But Congress chose not to apply this definition to informal agency actions, *see id*. § 553(c), which include none of these safeguards. Petitioners cite no court that has applied the APA formal adjudication provision's narrow definition of "record" to an informal agency proceeding, like that at issue here. And there is no authority for doing so. *Cf. United States v. Mazza-Alaluf*, 621 F.3d 205, 210 (2d Cir. 2010) (refusing to apply a statutory definition that expressly applies only to one statutory provision to a different statutory provision).

In informal proceedings, the administrative record encompasses information and documents "indirectly" considered by the ultimate

decisionmaker. *See, e.g.*, *Bar MK Ranches*, 994 F.2d at 739; *Thompson*, 885 F.2d at 555. Before making recommendations to the decisionmaker, agency staff often review and assess material that is important to the agency's ultimate decision, but that—while available to the decisionmaker—may not be directly presented to or reviewed by her. If a reviewing court could not consider this broader body of documents and analysis considered by agency staff, then much of the basis for the agency's decision would be hidden from judicial view.

Informal agency proceedings, including most rulemakings, may take months or years to complete. Vast administrative records are often collected, *see supra* note 2, potentially including public comments,[4] communications among or concerns voiced by the agency's own staff,[5]

---

[4] *See, e.g.*, *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1474 (9th Cir. 1994).

[5] *See, e.g.*, *Bonnichsen*, 217 F. Supp. 2d at 1130; *Nat. Res. Def. Council v. Pritzker*, 828 F.3d 1125, 1136 (9th Cir. 2016).

10

sister agencies' viewpoints,[6] scientific evaluations,[7] and economic studies.[8] The heads of federal agencies cannot practicably review and evaluate all this material themselves. Yet, under Petitioners' theory, unless such material was provided directly to the final decisionmaker, it would be omitted from the record before a reviewing court. That cannot be squared with the courts' routine reliance on such material in their decisions. *See supra* notes 4-8; *infra* note 9.

Courts need "a full-scale administrative record" to "dispel any doubts about the true basis of [the agency's] action." *D.C. Fed'n of Civic Assocs.*, 459 F.2d at 1249; *accord Aera Energy LLC v. Salazar*, 642 F.3d 212, 221 (D.C. Cir. 2011). A "contrary approach" would "render judicial review generally meaningless" and contravene "the demand that courts ensure that agency decisions are founded on a reasoned evaluation 'of the relevant

---

[6] *See Pritzker*, 828 F.3d at 1136-37 (referring to concern voiced by Marine Mammal Commission).

[7] *See, e.g.*, *id.* at 1136-40; *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 479, 497-98 (9th Cir. 2011).

[8] *See Nat. Res. Def. Council v. U.S. Forest Serv.*, 421 F.3d 797, 801-02, 807 (9th Cir. 2005); *Hughes River Watershed Conservancy v. U.S. Forest Serv.*, 81 F.3d 437, 446-47 (4th Cir. 1996).

11

factors.'" *Marsh*, 490 U.S. at 378. Accordingly, if the record lodged by the agency does not include all that material, the court may order the record completed. *See Dopico*, 687 F.2d at 654; *Pub. Power Council v. Johnson*, 674 F.2d 791, 793-94 (9th Cir. 1982) (Kennedy, J.).

## II.  If an agency wishes to exclude deliberative-process materials from an administrative record, it must justify the claim of privilege

Contrary to Petitioners' assertions, internal agency documents disclosing the agency's deliberations are not automatically excluded from the administrative record. The deliberative-process privilege is a qualified, common-law privilege that must be justified on a document-by-document basis. A federal agency's unilateral determination that this qualified privilege applies is not enough to trump Congress's decision that judicial review of agency action proceed on the "whole record." 5 U.S.C. § 706.

Judicial review under the APA almost invariably examines the agency's deliberative process. The reviewing court is called to determine whether the agency "failed to consider an important aspect of the problem," "offered an explanation for its decision that runs counter to the

evidence before the agency," or made no "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs.*, 463 U.S. at 43-44.

In answering these questions, courts often consider internal agency documents that evaluate evidence, make recommendations, reveal disagreements among staff, and otherwise disclose candid agency deliberations.[9] Candid, internal agency documents are a core part of the

---

[9] *See, e.g.*, *Pritzker*, 828 F.3d at 1136-40 (agency scientists' analysis and recommendation); *Nat. Res. Def. Council v. U.S. E.P.A.*, 808 F.3d 556, 570 (2d Cir. 2015) (agency advisory committee reports); *W. Watersheds Project*, 632 F.3d at 479, 497 (agency scientists' analyses); *Earth Island Inst. v. Hogarth*, 494 F.3d 757, 768-69 (9th Cir. 2007) (agency "internal memoranda," "briefing packet," and "talking points")*; Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 862-63 & n.4 (9th Cir. 2005) (agency emails)*; City of Sausalito v. O'Neill*, 386 F.3d 1186, 1218 (9th Cir. 2004) (internal agency memo); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1396 (9th Cir. 1995) (provisional draft); *Suffolk Cty.*, 562 F.2d at 1385 (internal decision options document); *Tummino v. Torti*, 603 F. Supp. 2d 519, 547-48 (E.D.N.Y. 2009) (draft minutes of internal agency meeting); *Nat. Res. Def. Council v. Kempthorne*, 506 F. Supp. 2d 322, 372 (E.D. Cal. 2007) (interagency emails); *Wash. Toxics Coal. v. U.S. Dep't of Interior*, 457 F. Supp. 2d 1158, 1183-85 & n.19, 1190-93 & n.28 (W.D. Wash. 2006) (agency staff emails, draft letters, meeting minutes, and notes); *Defs. of Wildlife v. Kempthorne*, No. 04-1230, 2006 WL 2844232, at *11 n.8 (D.D.C. Sept. 29, 2006) (agency staff email); *Nat. Res. Def. Council v. Rodgers*, 381 F. Supp. 2d 1212, 1236 n.41, 1239-40 & nn.47, 52, 1244-45 (E.D. Cal. 2005) (agency staff emails and similar internal correspondence); *Ctr. for Biological Diversity v. Evans*, No. 04-04496, 2005 WL 1514102, at *5 (N.D. Cal. June 14, 2005) (agency memos and draft rule never released to public); *Bonnichsen*, 217 F. Supp. 2d at 1130 (internal

13

"whole record," 5 U.S.C. § 706, and critical to a "searching and careful" judicial inquiry. *Citizens to Preserve Overton Park*, 401 U.S. at 416. Yet much of this internal material arguably falls within what an agency might deem deliberative-process privileged. Petitioners' theory that the administrative record never includes any predecisional, deliberative material would thus require a sharp departure from past practice and precedent.

Nothing in the APA suggests that Congress intended the enfeebled judicial review that would flow from Petitioners' approach. The deliberative-process privilege is a qualified privilege, and one created by the courts. *Landry v. FDIC*, 204 F.3d 1125, 1135 (D.C. Cir. 2000); *Warner Commc'ns*, 742 F.2d at 1161. The doctrine protects agency documents from discovery "so that the public will benefit from more effective government." *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. at 582.

That justification is "attenuated," however, when "the public's interest in effective government would be furthered by disclosure," *id.*,

---

agency communications and meeting minutes); *Miami Nation of Indians v. Babbitt*, 979 F. Supp. 771, 778 (N.D. Ind. 1996) (draft reports and agency notes and logs); *Bersani v. U.S. E.P.A.*, 674 F. Supp. 405, 410 (N.D.N.Y. 1987) (internal agency recommendation).

14

such as where a court reviews the agency action for lawfulness. After all, Congress thought that the public interest would be best served by judicial review on the "whole" record, 5 U.S.C. § 706—that is, "neither more nor less information than . . . the agency [had] when it made its decision." *Walter O. Boswell Mem'l Hosp.*, 749 F.2d at 792. While the deliberative-process privilege has its place, this Court has recognized that the interests the privilege serves do not inevitably outweigh a court's need to consider materials "germane to the [agency] decision and not duplicated elsewhere in the record." *Suffolk Cty.*, 562 F.2d at 1384; *see also, e.g.*, *In re Grand Jury Subpoena Dated Aug. 9, 2000*, 218 F. Supp. 2d 544, 553 (S.D.N.Y. 2002) ("The deliberative process privilege is qualified; it may be overcome by a showing of need . . . .").

The divided decision in *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Commission*, 789 F.2d 26 (D.C. Cir. 1986) (en banc), provides no persuasive argument to the contrary. That case arose from a formal Nuclear Regulatory Commission adjudication. *See id.* at 29 (citing 42 U.S.C. § 2239(a)). To protect the "frank deliberations of Commission members," the court refused to supplement the record with a transcript of

15

the Commissioners' closed-door deliberations. 789 F.2d at 44; *see also id.* at 45-46 (Mikva, J., concurring). That refusal is best understood as a particularized determination that the deliberative-process concerns that would flow from disclosure of that transcript—which the Ninth Circuit has aptly described as revealing deliberations "analogous to the internal mental processes of the sole head of an agency," *In re United States*, No. 17-72917, 2017 WL 5505730, at *5 (9th Cir. Nov. 16, 2017)—outweighed the need for disclosure in that case. But *San Luis Obispo Mothers* did not address the contents of administrative records in *informal* agency proceedings, which do not afford similar procedural safeguards, *see supra* p. 9, or the same narrow definition of "record," 5 U.S.C. § 556(e). And *San Luis Obispo Mothers* certainly did not hold that agencies may exclude deliberative-process materials from administrative records on their own say-so, without providing a privilege log and justifying the exclusion.

Petitioners' contrary approach attempts to turn a qualified privilege into one that is absolute—and then to immunize agencies' reliance on that newly absolute privilege from any judicial scrutiny. The possibilities for mischief that Petitioners' approach would allow are disturbing. Federal

16

agencies often *do* include deliberative materials in their agency records, at least when they believe the materials will help them. For example, in *Epsilon Electronics, Inc. v. U.S. Department of the Treasury*, the federal agency included in the record and relied in court on an internal, predecisional agency memo analyzing the evidence before the agency. 857 F.3d 913, 928 (D.C. Cir. 2017). And in *American Bioscience, Inc. v. Thompson*, the agency included in the administrative record a declaration of its decisionmaker intended to explain his otherwise inadequately explained decision. 269 F.3d 1077, 1082-83 (D.C. Cir. 2002). Allowing an agency to pick when deliberative materials are included or excluded from the record for judicial review would allow the agency to withhold only that evidence "unfavorable to its case," *Walter O. Boswell Mem'l Hosp.*, 749 F.2d at 792, rendering judicial review ineffective, *see Dopico*, 687 F.2d at 654.

Privilege determinations are not so self-evident that an agency, defending a lawsuit, should be trusted to make the determination on its own, without disclosing to the parties or the court what is being withheld and why. Courts not infrequently overrule agency deliberative-process privilege claims. *See, e.g.*, *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d

17

350, 358 (2d Cir. 2005); *Charles v. City of New York*, No. 11-0980, 2011 WL 5838478, at *2-3 (E.D.N.Y. Nov. 18, 2011). Therefore, if an agency seeks to withhold a document (or part of a document[10]) as privileged, the court should require the agency to assert the privilege as to each document. A privilege log is essential to let the opposing party and the court "determine whether specific items on the log are actually privileged." *EEOC v. BDO USA, LLP*, 856 F.3d 356, 364 (5th Cir. 2017).

Because the deliberative-process privilege is qualified, a privilege log alone is not enough. The agency must also show that "the consequences of disclosure of the information," *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 405 n.11 (D.C. Cir. 1984), outweigh the public interest in searching and accurate judicial review. *See Citizens to Preserve Overton Park*, 401 U.S. at 416; *Walter O. Boswell Mem'l Hosp.*, 749 F.2d at 792; *Suffolk Cty.*, 562 F.2d at 1384; *see also United States v. Nixon*, 418 U.S. 683, 706 (1974) (rejecting executive privilege claim based "solely on the broad,

---

[10] The deliberative-process privilege does not protect reasonably segregable factual information. *See Paisley v. CIA*, 712 F.2d 686, 698 (D.C. Cir. 1983).

18

undifferentiated claim of public interest in the confidentiality of . . .
conversations" between presidents and advisors). The agency must make
this showing through an affidavit of "the head of the department after
actual personal consideration." *United States v. Rozet*, 183 F.R.D. 662, 665
(N.D. Cal. 1998) (holding that staff attorneys may not invoke the privilege);
*see Northrop Corp.*, 751 F.2d at 405 n.11; *United States v. Reynolds*, 345 U.S. 1,
7-8 (1953).

If an agency does not make that showing, its deliberative materials
must remain available to the reviewing court as part of the "whole record"
on which Congress directed that judicial review should proceed.

## CONCLUSION

The "whole record," 5 U.S.C § 706, for judicial review includes all
material considered directly or indirectly by the agency decisionmaker,
including material considered by subordinates. If an agency wishes to
exclude a document from an administrative record as deliberative-process
privileged, it must justify that assertion by producing a privilege log and
showing, with respect to each document, that the interests the privilege
serves outweigh the need for accurate and meaningful judicial review.

19

November 21, 2017                    Respectfully submitted,

                                     /s/ Michael E. Wall
                                     MICHAEL E. WALL
                                     Natural Resources Defense Council
                                     111 Sutter Street, 21st Floor
                                     San Francisco, CA 94104
                                     mwall@nrdc.org
                                     (415) 875-6100

## CERTIFICATE OF COMPLIANCE

This amicus brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5), to the extent that rule applies in mandamus proceedings, because the amicus brief contains 3873 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 and 14-point Book Antiqua font.

November 21, 2017        /s/ Michael E. Wall_____
                                    Michael E. Wall

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system on November 21, 2017. All counsel in this case are registered CM/ECF users.

Dated: November 21, 2017          /s/ Michael E. Wall                    
                                              Michael E. Wall